## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0727 (RMC) |
| | ) | |
| ALPHONSO JACKSON, Secretary | ) | |
| of the Department of Housing | ) | |
| and Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Alphonso Jackson, Secretary of the United States Department of Housing and
Urban Development, by and through undersigned counsel, hereby moves, pursuant to Fed. R.
Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6), to dismiss this action.  In the alternative, this Court
should enter summary judgment in favor of Defendant, pursuant to Fed. R. Civ. P. 56, because
there is no genuine issue as to any material fact and the Defendant is entitled to judgment as a
matter of law.  In support of his motion, Defendant submits a Memorandum of Points and
Authorities, a Statement of Material Facts Not In Dispute, the Declarations of Franklin
Montgomery, Virginia Ackerman, Turner Russell, Jocelyn Gibson, and Chris Opfer, and copies
of relevant pieces of correspondence and other relevant documents as Exhibits 1-14.

Plaintiff should take notice that any factual assertions contained in the accompanying
affidavits and other attachments in support of Defendant's motion will be accepted by the Court
as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the

assertions in Defendant's attachments.  See, e.g., Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir.

1992); Local Civil Rule 7(h); Fed. R. Civ. P. 56(e).  Specifically, Rule 56(e) of the Federal Rules

of Civil Procedure provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If the
> adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).[1]

The grounds for the motion are set forth in more detail in the accompanying

memorandum of points and authorities in support of the motion.  A proposed Order consistent

with this motion is attached hereto.

---

[1] Consistent with the guidance of the Court of Appeals in Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Defendant reminds this pro se litigant that his failure to respond or contest Defendant's motion may lead to an entry of adverse judgment against him.  In Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988), the Court of Appeals noted that a pro se party may lose if he fails to respond to a dispositive motion.  See also Ham v. Smith, 653 F.2d 628, 629-30 (D.C. Cir. 1981).  Failure to respond to Defendant's motion may result in the district court granting the motion and dismissing the case.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07-0727 (RMC) |
| | ) |
| ALPHONSO JACKSON, Secretary | ) |
| of the Department of Housing | ) |
| and Urban Development, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HIS MOTION TO DISMISS, OR**
**IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The above captioned action by Plaintiff, Michael West, has three counts. Counts One and

Two of Plaintiff's Complaint arise under the Freedom of Information Act, 5 U.S.C. § 552

("FOIA"), and HUD's implementing FOIA regulations, 24 C.F.R. §§ 15.1-15.112, and pertain to

the processing of two separate FOIA requests which Plaintiff sent to a HUD official based in

Washington, D.C., on or about January 24, 2007. See Docket Entry No. 3, Complaint

("Compl.") at 2-5, §§ 4-22. In each of those counts, Plaintiff alleges that he mailed a FOIA

request to HUD "[o]n or about January 24, 2007," that HUD "did not reply and denied [his]

request for information with regards to the specified materials in his possession," that "[n]o

control number was assigned to this FOIA request," that "[o]n or about February 12, 2007, [he]

appealed this denial," and that "[m]ore than twenty working days have passed since [HUD's]

receipt of [his] request." See id. at ¶¶ 4-11, 15-19. He argues that HUD's "failure and refusal to

furnish the requested material information is arbitrary and capricious, and irreparably injure[d] [him] by depriving him of public information to which he is entitled access." Id. at ¶¶ 13, 21.  In those counts, Plaintiff seeks: (1) a declaratory judgment stating that information requested by Plaintiff under the FOIA constitutes "public information" under the Act; (2) an injunction prohibiting HUD from "withholding the requested information" and expediting the proceedings in this action; (3) an award of Plaintiff's costs and attorneys' fees, in the amounts of not less than $10,000; and (4) further relief as the Court deems just and proper.  Id. at ¶¶ 14.A-F., 22.A.-G.

        In Count Three, Plaintiff complains about HUD's response to an administrative (fair housing) complaint he filed with the agency alleging discrimination on the part of another entity, the Northeast Community Action Corporation ("NECAC").  He contends that HUD's investigation of that complaint, subsequent administrative hearing, final decision that there was no probable cause for a finding of discrimination, and denial of his reconsideration request were all legally defective.  See Compl. ¶¶ 23-36 (alleging violations of the Mandamus Act, 28 U.S.C. § 1291; Administrative Procedure Act, 5 U.S.C. § 701 et. seq.; 28 C.F.R. Part 35; and Fourteenth Amendment to the United States Constitution).[2]  In count three, Plaintiff seeks damages and all

_____

[2]  Specifically, he argues: (1) that HUD violated its "non-discretionary" and "ministerial"duty to investigate "incoming allegations and complaints of discrimination" under 28 C.F.R. § 35.171; (2) that HUD had violated his rights under the Fourteenth Amendment to the U.S. Constitution by conducting an "ex parte hearing" without giving him prior notice and a fair opportunity to attend; (3) that the final report in which HUD found that there was no probable cause for a finding of discrimination was unsupported by substantial evidence on the record; (4) that HUD's "report's premises were based, in whole or part, on false, perjured, or misleading information"; (5) that HUD's report inaccurately "stated that "'[e]fforts to voluntarily conciliate the complaint . . . were unsuccessful'" when no such attempts were made; (6) that HUD's report "did not fairly address or mention the alleged investigated 'reasonable accomodations' request that was submitted to . . . NECAC."; and (7) that HUD's reconsideration action and purported "failure to investigate allegations of fraud and deception of interviewed witnesses" were each "arbitrary and capricious and constituted an abuse of discretion."  See Compl. ¶¶ 25, 35, 36A.-G,

manner of declaratory and injunctive relief.  Id. at ¶ 41.[3]

For the reasons set forth below, this suit should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  In the alternative, summary judgment should be granted for Defendant because there are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **An Introduction to the Section 8 Housing Program and the Participation of the North East Community Action Corporation in that Program**

In 1974, Congress amended the United States Housing Act of 1937 (Housing Act) to create what is known as the Section 8 housing program.  See, e.g., Cisneros v. Alpine Ridge Group, 508 U.S. 10, 12 (1993).  Through the Section 8 program, Congress hoped to "ai[d] low-income families in obtaining a decent place to live," by subsidizing private landlords who would rent to low-income tenants.  Id. (citing 42 U.S.C. § 1437f(a)).  Under the program, tenants make rental payments based on their income and ability to pay; HUD then makes "assistance payments" to the private landlords in an amount calculated to make up the difference between the tenant's contribution and a "contract rent" agreed upon by the landlord and HUD.  Id.  As

_____

37, 38A.-C., 39-40.

[3]  In count three, Plaintiff seeks: (1) An order compelling HUD to "perform its ministerial duties," reversing HUD's "no cause" determination with respect Plaintiff's fair housing complaint, and "setting aside the order denying [his] housing assistance payments"; (2) an award of the greater of triple his actual damages or $150,000 plus interest; (3) an injunction requiring HUD to "follow and apply the standards and requirements of 28 C.F.R. Part 35"; (4) a declaratory judgment stating that HUD applied incorrect standards and requirements and/or incorrectly applied those standards and requirements in its investigation and resolution of Plaintiff's fair housing complaint, and in its finding that "'equal' is the correct standard in investigating, monitoring and closing discrimination claims under 28 C.F.R. Part 35"; and (5) attorney fees and costs.  Id. at ¶ 41.

3

required by the statute, this contract rent is, in turn, to be based upon "the fair market rental" value of the dwelling, allowing for some modest increase over market rates to account for the additional expense of participating in the Section 8 program.  Id. (citing 42 U.S.C. § 1437f(a)).

The North East Community Action Corporation ("NECAC") is "a not-for-profit Community Action Agency" which delivers "a variety of social service programs to low income elderly, youth, handicapped and disadvantaged individuals and families through grants and contractual agreements with Federal, state, county and local governments, other not-for-profit organizations and private businesses."  See http://www.necac.org/ (home page of the official website of the NECAC.)  The "NECAC is not a government agency."  Id. (emphasis added). Rarther, the NECAC has been described as "a section 8 rental assistance program," see West v. Jackson, 448 F. Supp. 2d 207, 209 (D.D.C. 2007), and as a community action corporation that functions as "the administrative agency" for section 8 housing in 12 counties in Missouri.  See St. Charles County v. A Joint Bd. or Commission and NECAC, 184 S.W.3d 161, 163-64 (Mo. App. E.D. 2006)).

## II.    The Filing and Disposition of Plaintiff's Fair Housing Complaint

On or about July 27, 2004, Plaintiff filed an administrative complaint with HUD's Office of Fair Housing and Equal Opportunity ("FHEO"), in which he claimed that the NECAC had unlawfully "discriminated against him by refusing to process his application for participation in the [s]ection 8 [p]rogram," and had done so based on his disability.  See Compl. ¶ 24; see also Exhibit ("Ex.") 1 (Plaintiff's July 27, 2004 Fair Housing Discrimination Complaint). Specifically, Plaintiff asserted that "on or around January 2004, he applied for the [s]ection 8 [p]rogram," that "on or about March 15, 2004, [the NECAC] informed him that they had

evidence that he had committed fraud," that "he had made three requests for documentation to support their allegation that he had committed fraud," but that the NECAC had failed to respond to these requests, and he contended that this was due to his disability. <u>See</u> Ex. 1 at 2.

Franklin Montgomery, an Equal Opportunity Specialist in the FHEO at HUD's St. Louis, Missouri field office, was assigned to investigate Plaintiff's July 2004 fair housing complaint against the NECAC. <u>See</u> Ex. 10, Declaration of Franklin Montgomery ("Montgomery Decl.") ¶¶ 1-2.  During the course of his investigation of Plaintiff's fair housing complaint, on September 12, 2005, Mr. Montgomery was informed by a NECAC employee, Nelva Owens, that NECAC had held a hearing regarding the termination of housing assistance for a Ms. Julie Stephens. <u>Id</u>. at ¶ 3.  At issue in the hearing was whether Ms. Stephens had defrauded NECAC by allowing Plaintiff to live at her home without notifying NECAC.  <u>Id</u>. at ¶ 3.  To the best of Mr. Montgomery's knowledge, no HUD employees or officials were present at the NECAC hearing and HUD was in no way involved with the administration of the hearing or the rendering of a decision or findings regarding the matter at issue in the hearing.  <u>Id</u>. at ¶ 4.

In a letter dated November 9, 2005, HUD informed Plaintiff that, following an in depth investigation of his allegations, HUD had "determined that no reasonable cause exists to believe that a discriminatory housing practice ha[d] occurred" and accordingly had "completed its administrative processing of this complaint" and was dismissing the complaint. <u>See</u> Ex. 2 (November 9, 2005 letter from HUD to Plaintiff transmitting agency's final decision) at 1.  HUD enclosed with its November 9, 2005 letter a copy of the Determination of No Reasonable Cause, which contained a summary of the factual evidence supporting this dismissal. <u>Id</u>. at 1.  The letter advised Plaintiff that "[n]otwithstanding HUD's dismissal of this complaint," he had a legal right

to "file a civil lawsuit in an appropriate federal district court or state court within two (2) years of the date on which the alleged discriminatory housing practice occurred or ended," with this two year period not including the time during which the administrative proceeding was pending with HUD.  <u>Id</u>. at 2.  The letter also indicated that Plaintiff could ask HUD to reconsider its determination by submitting a request in writing which set forth the specific reasons why he believed the determination to be erroneous.  <u>See</u> Ex. 2 at 2.

All requests for reconsideration of HUD determinations in fair housing complaints filed with HUD are filed with the Enforcement Support Division of the FHEO at HUD, in Washington, D.C..  <u>See</u> Ex. 12, Declaration of Turner Russell ("Russell Decl.") ¶ 8.  Beginning sometime in December 2004, and continuing through mid 2005, the Enforcement Support Division of the FHEO at HUD received requests for reconsideration from Plaintiff which related to the FHEO Region VII Office's closing of a complaint or complaints filed by Plaintiff because of Plaintiff's failure to cooperate in the administrative processing of his complaint.  <u>Id</u>. at ¶ 9.  The Enforcement Support Division of the FHEO at HUD has not received any other requests for reconsideration from Plaintiff.  <u>See id</u>. at ¶ 10.

**III.    The Two FOIA Requests which Plaintiff Submitted to the HUD's Headquarters, HUD's Initial Response, and Plaintiff's Filing of his Complaint in this Action**

On January 24, 2007, Plaintiff sent a FOIA request via email to Mr. Turner Russell, Director of FHEO's Enforcement Support Division, at HUD headquarters.  <u>See</u> Ex. 3 (Plaintiff's first January 24, 2007 FOIA Request, submitted at 15:50:43 -0800 PST).  In this email, Plaintiff requested that HUD provide:

6

> . . . [a]ll communications originated by or dispatched to this HUD Enforcement
> Support Division enumerated above pertaining to:
>
> a.      this instant requestor, Michael West;
> b.      the Mraz investigation; and
> c.      the Montgomery investigation.

See Ex. 3.  Plaintiff sent Mr. Russell a second FOIA request via email on January 24, 2007, in

which he requested:

> . . . all policies, or the like, that allow this federal agency:
>
> a.      to use false or perjured evidence [to] close an investigation without
>         providing a full and fair investigation into the merits of a complaint. . . .
> b.      to base its investigative findings of fact and conclusions of law on false or
>         perjured evidence . . .
> c.      to ignore its statutory duty by not providing a full and fair agency review
>         action upon this Director's office receiving [a]ppeal materials . . . .
>         pertaining to underlying investigations, in which it violates administrative
>         due process under Administrative Procedure Act, 28 C.F.R. Part 35, and
>         Fourteenth Amendment to the United States Constitution.

See Ex. 4 (Plaintiff's second January 24, 2007 FOIA Request, submitted at 15:55:59 -0800 PST).

In a letter to Mr. Russell dated February 12, 2007, which was received on February 21,

2007, Plaintiff stated that "[t]his is a Freedom of Information Act Appeal."  See Ex. 5 (February

12, 2007 letter from Plaintiff to Mr. Turner Russell of HUD).  In this letter, Plaintiff complained

that, despite mailing two FOIA requests to Mr. Turner, he had "not received HUD's cooperation

in this matter or the specific requested materials" and declared that "the requested FOIA

materials must be released."  Id.  Plaintiff asked that any fees be waived, requested  that Mr.

Russell forward the request to the appropriate office if necessary, and warned that "[a] Federal

lawsuit will follow if these materials are not provided within the statutory time frame."  Id.

Plaintiff attached copies of his January 24, 2007 FOIA requests to his February 12, 2007 letter.

Id.; see also Ex. 12, ¶ 4.  HUD had not received copies of Plaintiff's January 24, 2007 FOIA

requests until they arrived in HUD's offices as attachments to his February 12, 2007 letter.  See

Ex. 12, ¶ 4.

In a letter dated February 23, 2007, HUD's Executive Secretary, Cynthia O'Connor,

notified Plaintiff that HUD had received Plaintiff's February 12, 2007 FOIA request on February

21, 2007, and had assigned it FOIA Control No. FI-461783.  See Ex. 6 (February 23, 2007 letter

from Cynthia O'Connor of HUD to Plaintiff).  Ms. O'Connor further advised Plaintiff

that "[u]nder unusual circumstances, such as an agency's backlog, or the need to examine a

voluminous amount of records required by the request," HUD can extend [the generally

applicable] 20-day time limit for processing a [FOIA] request."  Id. at 1.  She indicated that "[a]s

of February 16, 2007, HUD's FOIA Office has 394 open FOIA requests" and that "[b]ased on

HUD's experience and current inventory, it is estimated that it may take approximately 45 days

to complete the processing of your request."  Id. at 1.  The February 23, 2007 letter further

explained that

> HUD's policy is to process FOIA requests using 'multi-track processing,' which
> allows [HUD] to process FOIA requests on a first-in/first-out basis, within each
> track.  HUD places FOIA requests in its routine or complex track based on the
> amount of work and time involved in processing the request.  The criteria for
> assignment to a specific track are found at in HUD's FOIA regulations, 24 CFR
> Part 15 § 105(a), which were published in the Federal Register on January 22,
> 2001, at 66 FR 6964.

Id.  at 1.  The letter informed Plaintiff that his request was being processed on a "routine track,"

and provided him with the name of the person responsible for processing his FOIA request and

her contact information.  Id. at 1-2.

The Enforcement Support Division of HUD's Office of FHEO regularly reviews various,

but not all, fair housing investigations performed by FHEO staff in one or more of its field

offices. <u>See</u> Ex. 12, Russell Decl. ¶ 2. A "Chron File" is maintained by the Enforcement

Support Division of HUD's Office of FHEO and contains any and all correspondence or copies

of other documents concerning a particular FHEO fair housing investigation which may have

been submitted to the Division in connection with its review of that particular investigation. <u>See</u>

<u>id</u>. at ¶ 2. FHEO's Title Eight Automated Paperless Office Tracking System ("TEAPOTS") is

designed to maintain relevant and detailed tracking information for all the fair housing

complaints filed with FHEO, including information concerning the type of complaint, the date

the complaint was received by FHEO, the names of the relevant parties, and the status of the

complaint. <u>See</u> <u>id</u>. at ¶ 3. TEAPOTS also allows the FHEO investigator assigned to a fair

housing complaint to upload electronic copies of documents, interviews, and other evidence to

the system. <u>See</u> <u>id</u>. at ¶ 3.

On or about February 21, 2007, Mr. Russell, the Director of the Enforcement Support

Division of the FHEO at HUD's Washington, D.C. headquarters, received Plaintiff's first FOIA

request for "communications originated by or dispatched to this HUD Enforcement Support

Division enumerated above pertaining to" himself, "the Mraz investigation" and "the

Montgomery investigation." <u>See</u> <u>id</u>. at ¶ 4. In response to this FOIA request, Mr. Russell

ultimately conducted a thorough search of both the Enforcement Support Division's CHRON file

and TEAPOTS for any and all information regarding a fair housing complaint filed by or

otherwise involving Plaintiff, and a Mraz investigation and/or a Montgomery investigation and

any other documentation "originated by or dispatched to" the Enforcement Support Division

concerning those investigations. <u>See</u> <u>id</u>. at ¶ 6. Mr. Russell did not however locate any

9

document or record meeting that criteria.  See id. at ¶ 7.

On April 23, 2007, Plaintiff filed the present Complaint.  See Compl. *generally*.

By letter dated April 24, 2007, Cynthia O'Connor of HUD notified Plaintiff that a records search at HUD Headquarters failed to locate any documents responsive to Plaintiff's first January 24, 2007 FOIA request, Plaintiff's request for "communications originated by or dispatched to this HUD Enforcement Support Division enumerated above pertaining to" himself, "the Mraz investigation" and "the Montgomery investigation."  See Ex. 7 (April 24, 2007 letter from Cynthia O'Connor of HUD to Plaintiff).   The letter advised Plaintiff that he was free to appeal this determination by HUD within 30 days, and proceeded to identify the required elements of such an appeal, and the address to which such an appeal should be sent.  Id.  HUD was not aware of the fact that Plaintiff had filed a Complaint in Court at the time it sent its April 23, 2007 letter.

## IV.    HUD's Subsequent Responses to Accommodate Plaintiff and Supplement Its Initial Response to Plaintiff's Two FOIA Requests

In the interest of good customer service, and notwithstanding the fact that Plaintiff's first FOIA request had been limited to communications "originated by or dispatched to this HUD Enforcement Support Division," Chris Opfer, an attorney in HUD's Office of Litigation, subsequently contacted HUD's Office of FHEO and asked them to determine whether any office of HUD possessed any documents relevant to Plaintiff's two FOIA requests.  See Ex. 3; Ex. 14, Declaration of Chris Opfer ("Opfer Decl.") at ¶¶ 3.  Mr. Opfer was informed by HUD's FHEO staff that if HUD possessed any documents relevant to the complaints at issue in Plaintiff's FOIA requests, they would be archived in HUD's FHEO Kansas City, Kansas Regional office.  See Ex.

10

14, Opfer Decl. ¶ 4.

Because Plaintiff had been in contact with FHEO's Region VII Office in Kansas City, Kansas, attempting to file a fair housing complaint, that office had responsibility to process and where appropriate investigate fair housing complaints occurring in the State of Missouri. See Ex. 12, Russell Decl. ¶ 5. Accordingly, any and all documents concerning an investigation of a fair housing complaint filed by Plaintiff would be located in the Region VII FHEO Office in Kansas City, Kansas. Id.

Accordingly, on June 6, 2007, Mr. Opfer requested that HUD's FHEO's St. Louis and Kansas City's offices search for any and all documents responsive to Plaintiff's FOIA requests. See Ex. 14, Opfer Decl. ¶ 5. In response to Mr. Opfer's request, Jocelyn Gibson, and Equal Opportunity Specialist at HUD's FHEO in HUD's Kansas City Regional Office conducted a thorough search of the Regional Office's fair housing investigation files for any and all information regarding a fair housing complaint filed by Plaintiff. See Ex. 13, Declaration of Jocelyn Gibson ("Gibson Decl.") ¶¶ 1, 5. No documents concerning Plaintiff were found in HUD's Kansas City Regional Office. See Ex. 13, Gibson Decl. ¶ 6. Ms. Gibson then contacted the National Records Center and requested all files and/or documents relating to Plaintiff. See Ex. 13, Gibson Decl. ¶ 7. Ms. Gibson was able to locate responsive files and documents at the National Records Center, and they were mailed to her at the Regional Office See Ex. 13, Gibson Decl. ¶ 7. Ms. Gibson mailed them to Mr. Opfer, and on or about August 7, 2007, Mr. Opfer received this package of documents from Ms. Gibson. See Ex. 13, Gibson Decl. ¶ 7; Ex. 14, Opfer Decl. ¶ 6. Ms. Gibson indicated that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests. See Ex. 14, Opfer Decl. ¶ 6. On

August 17, 2007, Mr. Opfer mailed a copy of these responsive documents to Plaintiff at his last known address.  <u>See</u> Ex. 14, Opfer Decl. ¶¶ 7-8.  Plaintiff received this delivery on August 20, 2007.  <u>See</u> Ex. 14 (attached U.S. mail delivery confirmation receipt and 2 page printout of United States Postal Service Track and Confirm search results for this delivery).

## V.    There is No Evidence that Plaintiff Ever Filed a FOIA Appeal with HUD's Office of General Counsel

During the relevant period, an individual wishing to file an appeal of HUD's response to a FOIA request was required to submit the appeal to HUD's Office of General Counsel in Washington, D.C..  <u>See</u> Ex. 11, Declaration of Virginia Ackerman ("Ackerman Decl.") ¶¶ 1-2.  When a FOIA appeal was improperly sent to some other office, the receiving office generally would forward the appeal to that office.  <u>See id</u>. at ¶ 2.  Upon receipt of a FOIA appeal letter by HUD's Office of General Counsel, the appeal is assigned to a staff attorney in that office, and an administrative employee within the office is directed to process the appeal letter and enter pertinent information into two computer systems which contain tracking information and work status information concerning such requests: Microsoft ACCESS Database 2000 ("ACCESS") and the Legal Assessment Workload System ("LAWS").  <u>See id</u>. at ¶¶ 3-5.

As of June 19, 2007, HUD's Office of General Counsel had no record of having ever receiving any FOIA appeal from Plaintiff concerning HUD's response to the FOIA request which it designated as FI-461783.  <u>See id</u>. at ¶¶ 6-7.  Nor does HUD's Office of General Counsel have any record of having received any FOIA appeal from Plaintiff between February 23, 2007 (the date of HUD's notification of its receipt of Plaintiff's FOIA request) and April 23, 2007 (the date

of Plaintiff's filing of a Complaint in this Court.)  See id. at ¶ 8.  To confirm that it has received

no such FOIA appeal, HUD's Office of General Counsel searched its ACCESS and LAWS

computer files.  See id. at ¶ 6.

## ARGUMENT

I.    **STANDARD OF REVIEW**

    A.    **Motion to Dismiss (Fed. R. Civ. P. 12(b)(1) and 12(b)(6))**

        Defendant moves for dismissal under Rule 12(b)(1), as the Court arguably lacks

jurisdiction over Plaintiff's claims, and Rule 12(b)(6), as Plaintiff fails to state any claim upon

which relief can be granted.  Plaintiff bears the burden of establishing subject matter jurisdiction.

See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Oppermann v. U.S., 2007

W.L. 1748920, *2 (D.D.C. 2007); A.N.S.W.E.R. Coal. v. Kempthorne, 2007 W.L. 1703431, *4

(D.D.C. 2007); Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F.Supp.2d 68, 72

(D.D.C. 2004); Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C.

Cir. 2003); Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000) (observing

that "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of

persuasion to establish subject-matter jurisdiction by a preponderance of the evidence.")

        A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.

See, e.g., Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to

determine the existence of jurisdiction, a court may look beyond the allegations of the complaint,

consider affidavits and other extrinsic information, and ultimately weigh the conflicting

evidence.  Id.; Rann, 154 F. Supp.2d at 64 ("[t]he court is not required . . . to accept inferences

unsupported by the facts alleged or legal conclusions that are cast as factual allegations.")

Furthermore, a motion to dismiss brought pursuant to Rule 12(b)(6) may be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim entitling him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir.2002) (observing that "[a] [r]ule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint"); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000). The Court must treat the Complaint's factual allegations as true, and must grant Plaintiff "the benefit of all inferences that can be derived from the facts alleged." See Browning, 292 F.3d at 242 (internal quotations and citations omitted). However, the court need not accept inferences that are not supported by the facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions, even if they are cast in the form of factual assertions. See, e.g., Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1965 (2007) (noting that a plaintiff must make sufficiently detailed factual allegations in his complaint "to raise a right to relief above the speculative level"); Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Holman v. Williams, 436 F.Supp. 2d 68, 73 (D.D.C. 2006).

While a complaint filed by a pro se litigant such as Mr. West is held to a less stringent standard than a pleading drafted by a lawyer, pro se litigants still must comply with the Federal Rules of Civil Procedure and must present a claim on which the Court can grant relief. See, e.g., McNeil v. United States, 508 U.S. 106, 113 (1993) (stating that the Supreme Court "[has] never suggested that procedural rules in ordinary civil litigation should be interpreted as to [wholly] excuse mistakes by those who proceed without counsel") (footnote omitted); Crisafi v. Holland,

14

665 F.2d 1305, 1308 (D.C. Cir.1981) (observing that "[a] pro se complaint, like any other, must

present a claim upon which relief can be granted by the court"); Clements v. Gonzales, 2007

W.L. 2137786, *3, n. 4 (D.D.C. 2007); Chandler v. Roche, 215 F.Supp.2d 166, 168 (D.D.C.

2002).  Applying these standards, the Court should dismiss Plaintiff's Complaint in its entirety.

### B.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where

"there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment

as a matter of law."  See, e.g., Termorio S.A. E.S.P. v. Electranta S.P., 2007 W.L. 1515069, *12

(D.C. Cir. 2007); Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1041 (D.C. Cir. 2003);

Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir.

1989).  As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded

not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed to secure the just, speedy and inexpensive determination of every

action." See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (emphasis added).

### II.    This Courts Should Dismiss Counts I and II of Plaintiff's Complaint

### A.    Counts I and II Should be Dismissed Because Plaintiff Failed to Exhaust His Administrative Remedies

It is well-established in administrative law "'that no one is entitled to judicial relief for a

supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"

See McKart v. United States, 395 U.S. 185, 193 (1969) (internal citation omitted); see also

15

United States v. Tucker Truck Lines, 344 U.S. 33, 36-37 (1952) (observing that "orderly procedure and good administration" as well as "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants" require that "objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts").  A FOIA requester, in particular, must exhaust his or her administrative remedies before seeking judicial review, and absent exhaustion, a FOIA suit is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]  The purpose of this requirement is to give the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision," as well as to allow "the top managers of an agency to correct mistakes made at lower levels and thereby obviate[] unnecessary judicial review."  See Oglesby, 920 F.2d at 61 (internal citation omitted); Greenberg

---

[4]  See, e.g., Thompson v. Drug Enforcement Admin., 2007 W.L. 1814949, *9 (D.C. Cir. 2007); Wilbur v. C.I.A., 355 F.3d 675, 677 (D.C. Cir. 2004) (observing that "[e]xhaustion of administrative remedies is generally required before seeking judicial review"); Hidalgo v. F.B.I., 344 F.3d 1256, 1258-60 (D.C. Cir. 2003) (noting that "the FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review," and remanding with instruction for district court to dismiss under Fed. R.Civ. P. 12(b)(6) for failure to exhaust under the FOIA); Sinto v. Dep't of Justice, 176 F.3d 512, 516 (D.C. Cir. 1999); Oglesby v. United States Dep't of the Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (noting that "[c]ourts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts," finding that "[e]xhaustion of administrative remedies is generally required before filing suit in federal court and holding that failure to exhaust precludes judicial review if "the purposes of exhaustion" and the "particular administrative scheme" support such a bar); id. at 64 (explaining that Congress "did not mean for the court to take over the agency's decisionmaking role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding"); see also Citizens for Responsibility and Ethics in Washington v. Dep't of Interior, 2007 W.L. 2206905, *7 (D.D.C. 2007); Clemmons v. U.S. Dep't of Justice, 2007 W.L. 1020796, *5 (D.D.C. 2007); Lowe v. Drug Enforcement Admin., 2007 W.L. 2104309, *3 (D.D.C. 2007); Anderson v. U.S. Dep't of Justice, 2007 W.L. 915221, *3 (D.D.C. 2007); Melville v. U.S. Dep't of Justice, 2006 W.L. 2927575, *3 (D.D.C. 2006).

16

v. U.S. Dep't of Treasury, 10 F.Supp.2d 3, *22 (D.D.C. 1998.) (explaining that "[t]he possibility that administrative review may obviate the need for judicial review is particularly important in FOIA cases, because FOIA cases require district judges to take time out of their busy schedules to 'acquire access to reams of paper, make intensive review of that material, and reach document-specific conclusions.'") (internal citation omitted).

FOIA requests must be filed in accordance with published agency regulations. See, e.g., 5 U.S.C. § 552(a)(3) (requests must be made "in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to be followed . . . ."); West v. Jackson, 448 F.Supp.2d 207, 211 (D.D.C. 2006) (noting that "[a] requester must comply with an agency's published regulations for filing a proper FOIA request"); Ivey v. Snow, 2006 W.L. 2051339, *3 (D.D.C. 2006); Dale v. Internal Revenue Serv., 238 F.Supp.2d 99, 103 (D.D.C. 2002) ( "[f]ailure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal.")  HUD's FOIA regulations can be found in 24 C.F.R. §§ 15.101-112.

The FOIA establishes an administrative process.  Under that act, except in certain specified "unusual circumstances," see 5 U.S.C. § 552(a)(6)(B)(i), an agency receiving a request for information is required to:

> . . . determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

See 5 U.S.C. § 552(a)(6)(A)(i).

However, the FOIA statute provides that this normally applicable twenty-day time period does not run until the request is received by the appropriate office in the agency.  See 5 U.S.C.

17

§ 552(a)(3).  Moreover, as mentioned, the FOIA specifies certain "unusual circumstances," in which the normally applicable 20 day time frame for responses to FOIA requests "may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched"  Id. at § 552(a)(6)(B)(i).  In such a circumstance, the agency "shall provide the person [making the request with] an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request" and "[r]efusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist."  Id. at § 552(a)(6)(B)(ii).  The FOIA instructs that the term "unusual circumstances" means:

> . . . only to the extent reasonably necessary to the proper processing of the particular requests--
> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or
> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

Id. at § 552(a)(6)(B)(iii).

In similar fashion, HUD's FOIA regulations provide that "HUD, in general, will respond within 20 working days after the correct office receives [a FOIA] request," but that where a requester has "sent [his or her] request to the wrong office, that office will send it to the correct office within 10 working days and will send [the requester] an acknowledgment letter." See 24

18

C.F.R. § 15.104(a).[5]  Moreover, HUD's FOIA regulations advise FOIA requesters that

> If you have requested an especially large number of records, the records are not located in the office handling the request, or HUD needs to consult with another government office, HUD will notify you that extra time is required and provide an estimate of that time.  If the extra time needed is more than 10 working days beyond the general [20 working day] time limit set out in paragraph (a) of this section, HUD will offer you any opportunity to limit the scope of your request so that HUD may process it within the extra 10 working day period.

See 24 C.F.R. § 15.104(c).  HUD's FOIA regulations further advise requesters that

> (1) HUD places each request in one of two tracks. HUD places requests in its simple or complex track based on the amount of work and time involved in processing the request. Factors HUD will consider in assigning a request in the simple or complex track will include whether the request involves the processing of voluminous documents and/or whether the request involves responsive documents from three or more organizational units. Within each track, HUD processes requests in the order in which they are received.
>
> (2) For requests that have been sent to the wrong office, HUD will assign the request within each track using the earlier of either:
> (i) The date on which the request was referred to the appropriate office; or,
> (ii) The end of the 10 working day period in which the request should have been referred to the appropriate office under § 15.104(a).

See 24 C.F.R. §§ 15.105(a)(1), (a)(2).

---

[5]  Section 15.103 of HUD's regulations address the issue of which office is the "correct" office for purposes of 42 C.F.R. § 15.104.  Because of the timing of Plaintiff's FOIA's requests, it is the 2006 version of section 15.103 which applied to Plaintiff's FOIA requests.  See 72 Fed. Reg. 12541, *12540 (March 15, 2007) (indicating that the 2007 version of the regulation is only effective beginning on April 16, 2007).  The 2006 version of section 15.103 instructed that a request for records located in a HUD field office is to be directed to the FOIA liason in that field office, but that "[i]f you are submitting a request for records located in HUD Headquarters, you should deliver or mail your request to the FOIA Division, Office of the General Counsel."  See 24 C.F.R. § 15.103(a), (c) (2006).  While the 2007 version of this provision also provides that a request for records located in a HUD field office is to be directed to the FOIA liason in that field office, it provides slightly different guidance concerning searches for records located at HUD headquarters.  See 24 C.F.R. § 15.103(b), (c) (2007) (instructing that "a request for records located in HUD Headquarters" should be delivered or mailed to "the FOIA Office, Office of the Executive Secretariat in the Office of Administration.").

Where HUD denies an individual's FOIA request, the requester may appeal the denial by submitting a written appeal to the address specified in HUD's response to the FOIA request. See 24 C.F.R. § 15.111(a). The written appeal must be postmarked within 30 calendar days of the date of the HUD determination. Id. at § 15.111(b). The FOIA statute requires a requester to appeal an agency's denial of a FOIA request denial and wait at least 20 working days for the Agency to adjudicate that appeal before seeking judicial review. See 5 U.S.C. § 552(a)(6)(A)(ii).

If an agency does not respond to a FOIA appeal within 20 workdays, a requester may treat the failure as a constructive exhaustion of administrative remedies. See 5 U.S.C. § 552(a)(6)(C). However, even in the event that an agency fails to initially respond to the initial FOIA request within the 20-day period, "an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed." See, e.g., Oglesby, 920 F.2d at 63; see also id. at 64 (reiterating that "once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review" and noting that "[a]llowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors"); id. at 65 (holding that "in future cases foregoing an administrative appeal will preclude the requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies"). If the denial of a FOIA request is upheld on appeal, the agency must "notify the person making such request of the provisions for judicial review of that determination." See 5 U.S.C. § 552(a)(6)(A)(ii); 24 C.F.R. §§ 15.112(b)(ii), (b)(iii) (HUD regulations, explaining that if HUD denies a FOIA appeal in whole or in part, it will "tell you how to obtain judicial review of HUD's decision).

20

In this case, Plaintiff failed to properly exhaust his FOIA claims in several ways.

First, Plaintiff addressed and mailed his January 24, 2007 FOIA requests to the wrong office.  As mentioned, during the relevant period, HUD's FOIA regulations made it plain that a request for records located in a HUD field office is to be directed to the FOIA liason in that field office, and a "request for records located in HUD Headquarters" should be delivered or mailed "to the FOIA Division, Office of the General Counsel."  See 24 C.F.R. § 15.103(b), (c) (2006). Plaintiff sent his FOIA requests to neither of these two locations.  See Ex. 3; Ex. 4.  Instead, he mailed them to Mr. Turner Russell, the Director of FHEO's Enforcement Support Division in HUD's headquarters in Washington, D.C..  See Ex. 3; Ex. 4.  However, Mr. Russell neither works in a field office nor in HUD's Office of the General Counsel.  See Ex. 12, Russell Decl.[6] Plaintiff's failure to send his FOIA request to the correct office is one of at least two reasons that his FOIA claims are subject to dismissal for failure to exhaust, and that the HUD is entitled to summary judgment on those claims against that agency.  See Fed. R. Civ. P. 12(b)(6), 56.[7]

---

[6]  Nor were  Plaintiff's FOIA requests sent to the proper address under the 2007 version of HUD's FOIA regulations which instructs requesters to mail request for records located in a HUD field office to the FOIA liason in that field office, and requests for records located in HUD Headquarters" to "the FOIA Office, Office of the Executive Secretariat in the Office of Administration.  See 24 C.F.R. § 15.103(b), (c) (2007).  Mr. Russell neither works in a field office nor in HUD's Office of the Executive Secretariat in the Office of Administration.

[7]  See also West v. Jackson, 448 F. Supp.2d 207, 212, n. 1 (D.D.C. 2007) (noting that Plaintiff "failed to comply with HUD's regulations because he did not submit his request to the proper HUD office"); see also Lowe v. Drug Enforcement Admin., 2007 W.L. 2104309, *5 (D.D.C. 2007) (finding that Plaintiff's FOIA request was not properly submitted because it was sent to the wrong address, and thus that Plaintiff failed to properly exhaust his administrative remedies); Kessler v. United States, 899 F.Supp. 644, 645 (D.D.C. 1995) (when a plaintiff "did not address and mail his FOIA request to the office of the official who [was] responsible for the control of the records requested," he "failed to follow the procedures set forth in the [agency] regulations" and "failed to make a proper request under the FOIA and therefore [ ] failed to exhaust his administrative remedies" such that "his complaint must be dismissed."); Thorn v.

Rather than allowing HUD to respond to his misaddressed FOIA requests within the default twenty working day period set forth in the FOIA and HUD's regulations, Plaintiff sent a letter which he characterized as an "appeal" to HUD on February 12, 2007, a mere 13 working days after the original request.  <u>See</u> Ex. 5; 5 U.S.C. § 552(a)(6)(A)(i); 24 C.F.R. § 15.104(a).  This request, which was also not addressed to the appropriate HUD office, was received by HUD on February 21, 2007.  <u>See</u> Ex. 5; 24 C.F.R. § 15.111(a).  HUD responded to Plaintiff's FOIA requests on February 23, 2007, 21 working days after receiving the first two requests and nine working days after receiving the second "appeal" request.  <u>See</u> Ex. 6.  This response was well within the prescribed time period governing misdirected FOIA requests.  <u>See</u> 24 C.F.R. § 15.104(a).  In its response, HUD informed Plaintiff that, due to its backlogged inventory, it would take approximately 45 days to complete the processing of Plaintiff's request, a procedure which was authorized by HUD's FOIA regulations.  <u>See</u> 24 C.F.R. §§ 15.105(a)(1), (a)(2).

Once he received this response, the relevant FOIA provisions and implementing regulations allowed Plaintiff to file an appeal regarding the expected delay in processing his request.  <u>See</u> 24 C.F.R. § 15.111(a).  In addition, Plaintiff could have waited to receive HUD's substantive response to his FOIA request and then filed an appeal, if necessary.  <u>Id</u>.  Plaintiff, however, chose to skip a step.  Instead of filing the requisite appeal, Plaintiff brought the present suit on April 23, 2007.  <u>See</u> Ex. 11, Ackerman Decl.; Compl. *generally*.  Plaintiff's failure to

---

Soc. Security Admin., Civ. No. 04-1282, 2005 U.S. Dist. LEXIS 11895 at *9 (D.D.C. June 11, 2005) ("A FOIA request sent to the wrong office is subject to dismissal for the requester's failure to exhaust administrative remedies."); <u>see also</u> <u>Flowers v. I.R.S.</u>, 307 F. Supp.2d 60 (D.D.C. 2004) (observing that "the plaintiff's failure to file a request that comports with agency FOIA regulations constitutes failure to exhaust administrative remedies").

exhaust his administrative remedies by filing a FOIA appeal with HUD prior to filing this action

is one more reason that his FOIA claims are subject to dismissal for failure to exhaust, and that

the HUD is entitled to summary judgment on those claims against that agency.  See Fed. R. Civ.

P. 12(b)(6), 56.

**B.      Counts I and II Should be Dismissed as HUD Conducted an Adequate Search and Responded Reasonably to Plaintiff's FOIA Requests**

Even if Plaintiff is deemed to have exhausted his administrative remedies under FOIA,

HUD conducted an adequate search in response to Plaintiff's request.

A plaintiff in a FOIA case must show that an agency has "(1) 'improperly' (2) 'withheld'

(3) 'agency records.'"  See  United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142

(1989) (quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980));

see also 5 U.S.C. § 552(a)(4)(B).  In responding to a FOIA/Privacy Act request, an agency is

under a duty to conduct a reasonable search for responsive records: no more and no less.  See,

e.g., Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Meeropol v.

Meese, 790 F.2d 942, 952-53 (D.C. Cir.1986) (search is not presumed unreasonable simply

because it fails to produce all relevant material); Weisberg v. United States Dep't of Justice, 745

F.2d 1476, 1485 (D.C. Cir.1984); Weisberg v. United States Dep't of Justice, 705 F.2d 1344,

1351-52 (D.C. Cir. 1983); Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not

demonstrate that all responsive documents were found and that no other relevant documents

could possibly exist); Weisberg v. United States Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir.

1980); Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978) (no

requirement that an agency search every division or field office on its own initiative in response

23

to a FOIA request when the agency believes responsive documents are likely to be located in one place); Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs., 844 F. Supp. 770, 776 (D.D.C. 1993). The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'" See, e.g., Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Weisberg, 705 F. 2d at 1351; Kronberg v. Dep't of Justice, 875 F. Supp. 861, 869 (D.D.C. 1995). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." See Meeropol, 790 F.2d at 956.

Indeed, an agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. See, e.g., Oglesby, 920 F.2d at 68. Additionally, the search standards under the FOIA and the Privacy Act do not place upon the agency a requirement that it prove that all responsive documents have been located. See Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892, n.7 (D.C. Cir. 1995); Perry, 684 F.2d at 128 . Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Id. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. See, e.g., Maynard v. CIA, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." See, e.g., Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006); Oglesby, 920 F.2d at 68. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the

24

affidavits are relatively detailed, non-conclusory and submitted in good faith." See Miller, 779

F.2d at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1987).  Once

the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts

to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  See

Miller, 779 F.2d at 1383.  It is insufficient, however, for a requester to attempt to rebut the

agency affidavit with purely speculative claims.  See Carney v. U.S. Dep't of Justice, 19 F.3d

807, 813 (2d Cir. 1994); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991)

(explaining that "[a]gency affidavits are accorded a presumption of good faith, which cannot be

rebutted by "purely speculative claims about the existence and discoverability of other

documents"); Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir.1981).

        Thus, summary judgment is available to a defendant agency in a FOIA litigation upon

proof that it has fully discharged its obligations under the FOIA and the Privacy Act.  See, e.g.,

Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994); Weisberg v. Dep't. of

Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344,

1350 (D.C. Cir. 1983); Snyder, 230 F. Supp. 2d at19-20.  An agency satisfies the summary

judgment requirements in a FOIA or Privacy Act case by showing that "each document that falls

within the class requested either has been produced, is unidentifiable or is wholly exempt from

the Act's inspection requirements."  See Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368

(D.C. Cir. 1980) (quoting Nat'l Cable Television Ass'n v. FCC, 479 F. 2d 183, 186 (D.C. Cir.

1973)).  Under the FOIA, "'[s]ummary judgment may be granted on the basis of agency

affidavits if they contain reasonable specificity of detail rather than merely conclusory

statements, and if they are not called into question by contradictory evidence in the record or by

25

evidence of agency bad faith.'"  See, e.g., Consumer Fed'n of America v. Dep't of Agric., 455

F.3d 283, 287 (D.C. Cir. 2006) (citing Gallant v. NLRB, 26 F.3d 168, 171 (D.C. Cir.1994));

Negley v. F.B.I., 2006 W.L. 593032, **3 (D.C. Cir. 2006) ("[a]gency affidavits are accorded a

presumption of good faith which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents") (citing SafeCard Services, Inc. v. SEC, 926

F.2d 1197, 1200 (D.C. Cir.1991)); McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1102

(D.C. Cir. 1983); Perry v. Block, 684 F.2d 121, 125-27 (D.C. Cir. 1982); Goland v. CIA, 607

F.2d 339, 352 (D.C. Cir.1978); Snyder v. C.I.A., 230 F. Supp. 2d 17, 19-20 (D.D.C. 2002)

(quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).

          The Russell Declaration demonstrates through detailed, non-conclusory averments that, in

this case, HUD engaged in a "good faith effort to conduct a search for the requested records,

using methods which [were] reasonably expected to produce the information requested."  See,

e.g., Oglesby, 920 F. 2d at 68.  The declaration describes in detail the type of search that was

conducted to locate documents responsive to Plaintiff's request. See Ex. 12, Russell Decl. ¶¶ 2-6.

This included a thorough search of the relevant HUD databases: the Enforcement Support

Division's CHRON file and TEAPOTS for any and all information regarding a fair housing

complaint filed by or otherwise involving Plaintiff, and a Mraz investigation and/or a

Montgomery investigation and any other documentation "originated by or dispatched to" the

Enforcement Support Division concerning those investigations.  See id. at ¶¶ 2-3, 6.  The Russell

Declaration explains in detail how information is organized in the CHRON file and in the

TEAPOTS.  See id. at ¶¶ 2-3.  HUD accurately determined that the Enforcement Support

Division did not possess responsive documents.  See id. at ¶¶ 6-7.

Inasmuch as the Plaintiff mailed his FOIA requests to HUD's headquarters, the HUD was

under no obligation to guess that a HUD field office or the National Records Center might have

responsive documents and to have those other offices search for responsive documents as well.[8]

Despite this fact, and notwithstanding the fact that Plaintiff's first FOIA request had been limited

to communications "originated by or dispatched to this HUD Enforcement Support Division," in

the interest of good customer service, HUD broadened its search for documents responsive to

Plaintiff's FOIA requests on its own initiative. As mentioned, Chris Opfer, an attorney in HUD's

Office of Litigation, contacted HUD's Office of FHEO and asked them to determine whether any

office of HUD possessed any documents relevant to Plaintiff's two FOIA requests. See Ex. 3;

Ex. 14, Opfer Decl. at ¶ 3. Mr. Opfer was informed by HUD's FHEO staff that if HUD

possessed any documents relevant to the complaints at issue in Plaintiff's FOIA requests, they

would be archived in HUD's FHEO Kansas City, Kansas Regional office. See Ex. 14, Opfer

Decl. ¶ 4.

---

[8] See, e.g., Kowalczyk v. Dep't of Justice, 73 F.3d 386 (D.C. Cir. 1996) (holding, in a case arising under analogous circumstances, that a prisoner's FOIA request for all records in agency files, including but not limited to a specific federal case number which had been sent to FBI headquarters in Washington, D.C. and made no reference to a field office did not enable the FBI to determine that its New York field office had responsive records and thus, FBI reasonably limited its search to files located at its headquarters); Kidder v. F.B.I., 2007 W.L. 1020784, *5 (D.D.C. 2007) (observing that "[g]enerally, the FBI is not obligated to undertake a search of its field office's records where a plaintiff's request is submitted directly to FBIHQ"); Servicemembers Legal Def. Network v. Dep't of Def. and Dep't of Justice, 471 F.Supp.2d 78, 85 (D.D.C. 2007) ("The FBI is not required to search its field offices when a requester has submitted its FOIA request only to FBI headquarters"); Ray v. F.B.I., 441 F.Supp.2d 27, 32 (D.D.C. 2006) (same); Tooley v. Bush, 2006 W.L. 3783142, *13 (D.D.C. 2006); Marrera v. United States Dep't of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985) (noting that agency not required to "search every division or field office in response to a FOIA request, especially where the requester has indicated specific areas where responsive documents might be located").

27

Accordingly, on June 6, 2007, Mr. Opfer requested that HUD's FHEO's St. Louis and Kansas City's offices search for any and all documents responsive to Plaintiff's FOIA requests. See Ex. 14, Opfer Decl. ¶ 5. In response to Mr. Opfer's request, Jocelyn Gibson, and Equal Opportunity Specialist at HUD's FHEO in HUD's Kansas City Regional Office conducted a thorough search of the Regional Office's fair housing investigation files for any and all information regarding a fair housing complaint filed by Plaintiff. See Ex. 13, Gibson Decl. ¶¶ 1, 5. No documents concerning Plaintiff were found in HUD's Kansas City Regional Office. See Ex. 13, Gibson Decl. ¶ 6.

Ms. Gibson then contacted the National Records Center and requested all files and/or documents relating to Plaintiff. See Ex. 13, Gibson Decl. ¶ 7. Ms. Gibson was able to locate responsive files and documents at the National Records Center, and they were mailed to her at the Regional Office  See Ex. 13, Gibson Decl. ¶ 7. Ms. Gibson mailed them to Mr. Opfer, and on or about August 7, 2007, Mr. Opfer received this package of documents from Ms. Gibson. See Ex. 13, Gibson Decl. ¶ 7; Ex. 14, Opfer Decl. ¶ 6. Ms. Gibson indicated that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests. See Ex. 14, Opfer Decl. ¶ 6. On August 17, 2007, Mr. Opfer mailed a copy of these responsive documents to Plaintiff at his last known address. See Ex. 14, Opfer Decl. ¶¶ 7-8. Plaintiff received this delivery on August 20, 2007. See Ex. 14, attached U.S. mail delivery confirmation receipt and 2 page printout of United States Postal Service Track and Confirm search results for this delivery.

A Court has jurisdiction over a FOIA or a Privacy action only where an agency has improperly withheld agency records. See 5 U.S.C. § 552(a)(4)(B). Here the record not only

28

reflects that HUD has carried its burden to show that it conducted a search reasonably calculated to uncover all responsive records, it further establishes that HUD went well beyond its legal duties under the FOIA by broadening its search for documents responsive to Plaintiff's FOIA request beyond the parameters of those requests, in an effort to accommodate Plaintiff.  See Weisberg, 745 F. 2d at 1485; Perry v. Block, 684 F.2d at126.  This is substantially more than is required.  Thus, the HUD is entitled to judgment as a matter of law on Plaintiff's FOIA claims against that agency.

C.    **Counts I and II are Moot Inasmuch as HUD Found and Sent Plaintiff Documents Responsive to His FOIA Requests After the Complaint was Filed**

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  See Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); DeFunis v. Odegaard, 416 U.S. 312, 316 (1974).  To satisfy the constitutional case or controversy requirement, "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"  See, e.g., Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (quoting from Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (internal quotation marks omitted).  "'Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  See, e.g., Lepelletier v. Federal Deposit Ins. Corp., 2001 WL 1491398, *5 (D.C. Cir.2001) (citing  Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir.1990) and Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C.Cir.1990)).  Whenever an action loses its character as a present live controversy during the course of the

29

litigation, federal courts are required to dismiss the action as moot because "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."  See, e.g., North Carolina v. Rice, 404 U.S. 244, 246 (1971).

The present matter no longer presents a "live controversy" because HUD has provided Plaintiff with all of the documents in HUD's possession which may be responsive to Plaintiff's FOIA requests.  While Plaintiff limited his request to documents "originated by or dispatched to" the Enforcement Support Division, HUD located documents outside of the Enforcement Support Division which are responsive to Plaintiff's request.  See Ex. 13, Gibson Decl. ¶¶ 5-7.  These documents were sent to Plaintiff via standard mail on August 17, 2007, which Plaintiff received on August 20, 2007.  See Ex. 14, Opfer Decl.  HUD possesses no other documents which are responsive to Plaintiff's FOIA requests and, therefore, Plaintiff's FOIA-related counts, counts I and II are moot.  See, e.g., Students Against Genocide v. Department of State, 257 F.3d 828, 841 (D.C. Cir. 2001) (finding that the "pre-argument transmittal of all documents responsive to the Category Four request moots the litigation over the merits of that category" and that "if the government produces all responsive records, FOIA provides no further production-related relief"); Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ("however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform"); Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir.1980) ("[o]nce the records are produced, the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.")

30

**III.    Venue in this Jurisdiction is Improper as to Count III of Plaintiff's Complaint**

In Count III of Plaintiff's Complaint, Plaintiff argues that HUD's investigation of Plaintiff's fair housing discrimination complaint and final determination that Plaintiff had not established discrimination in that matter were improper. See Compl. ¶¶ 23-40. As the D.C. Circuit has noted, venue in Fair Housing Act cases lies "in the judicial district in which the discriminatory housing practice is alleged to have occurred." See 42 U.S.C. § 3612(i)(2); Godwin v. Sect'y of HUD, 356 F. 3d 310, 311 (D.C. Cir. 2004). Plaintiff cannot reasonably argue that this is "the judicial district in which the discriminatory housing practice is alleged to have occurred." Id. Plaintiff lives in St. Charles, Missouri, in the St. Louis, Missouri metropolitan area. See Compl. *caption*; id. at ¶ 1. He has alleged discrimination on the part of the NECAC, whose property and officers are located in Bowling Green, Missouri. See Ex. 1 (Plaintiff's Housing Discrimination Complaint). As such, venue lies in the Eastern District of Missouri. Nor for many of the same reasons, is venue proper in this district under the general venue statute. See 28 U.S.C. 1391(e) (stating in relevant part that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.")

31

IV.    **The Court Lacks Subject Matter Jurisdiction Over Count III, and Plaintiff's Allegations in that Count Fail to State a Claim Upon Which Relief can be Granted**

In the third Count of Plaintiff's Complaint, Plaintiff seeks to challenge HUD's investigation of Plaintiff's fair housing complaint and its ultimate "no cause" determination.  See Compl. ¶¶ 23-41.  He claims that this Court has jurisdiction over the third count of his Complaint under (1) the Mandamus Act, 42 U.S.C. § 1921, (2) the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (3) 28 C.F.R. Part 35, and (4) the Fourteenth Amendment.  See Compl. ¶ 23.  As is explained below, none of these provides the Court with jurisdiction over Count III, and these allegations fail to state a claim upon which relief can be granted.

As mentioned, the Plaintiff bears the burden of proving subject-matter jurisdiction of this Court.  See, e.g., McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182 (1936); Dist. Of Columbia Ret. Bd. v. United States, 657 F. Supp. 428 431 (D.D.C. 1987).  Absent an explicit waiver, the doctrine of sovereign immunity shields the federal government from suit.[9]  Because sovereign immunity is jurisdictional in nature, see Meyer, 510 U.S. at 475, "the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit."  See, e.g., United States v. Mitchell, 445 U.S. 535, 538 (1980).  As the Supreme Court has often observed, waiver of sovereign immunity must be "unequivocally expressed in the statutory

_____

[9]  See, e.g., FDIC v. Meyer, 510 U.S. 471, 475 (1994); Ardestani v. INS, 502 U.S. 129, 137 (1991); Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. Nordic Village, Inc., 503 U.S. 30, 32-34 (1990) ("[w]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed'") (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990)); United States v. Mitchell, 463 U.S. 206, 211 & n.9 (1983) (noting that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan,  424 U.S. 392, 399 (1976); Tri-State Hospital Supply Corp. v. U.S., 341 F.3d 571, 575 (D.C. Cir. 2003).

text" and "strictly construed, in terms of its scope, in favor of the sovereign." <u>See</u>, <u>e.g.</u>, <u>Dep't of Army v. Blue Fox, Inc.</u>, 525 U.S. 255, 261 (1999) (internal quotations omitted); <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996). A party bringing suit against the United States bears the burden of proving that the government has unequivocally waived its immunity. <u>See</u>, <u>e.g.</u>, <u>Tri-State Hospital Supply Corp.</u>, 341 F.3d at 575. Thus, HUD is immune from suit, unless Congress has consented for HUD to be sued by enacting a waiver of sovereign immunity. In the present matter, the Court lacks subject matter jurisdiction over Plaintiff's claims in Count III because Congress has not waived sovereign immunity with respect to them.

It is well established that neither the Mandamus Act nor the APA provides an independent basis of subject matter jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Your Home Visiting Nurse Services, Inc. v. Shalala</u>, 525 U.S. 449, 456 (1999) (observing, with respect to 5 U.S.C. § 706, that "we have long held that this provision is not an independent grant of subject-matter jurisdiction"); <u>Califano v. Sanders</u>, 430 U.S. 99, (1977) (concluding that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action"); <u>In re Asemani</u>, 455 F.3d 296, 299 (D.C. Cir. 2006) (observing that "[b]efore considering whether mandamus relief is appropriate, however, we must be certain of our jurisdiction"); <u>In re: Executive Office of the President</u>, 215 F.3d 20, 25 (D.C. Cir.2000) (dismissing mandamus petition because jurisdiction lacking); <u>Swan v. Clinton</u>, 100 F.3d 973, 981 (D.C. Cir. 1996) (noting that "[n]either the general federal question statute nor the mandamus statute by itself waives sovereign immunity"); <u>Mead Corp. v. United States</u>, 652 F.2d 1050, 1052 (D.C. Cir. 1981) (observing that the mandamus act does not provide "an independent basis of federal jurisdiction"). Thus, Plaintiff must establish that he has some independent statutory right to the

33

relief he seeks, which gives this Court jurisdiction to review the claims set forth in Count III.

      **A.**     **Neither the Fair Housing Act nor the APA provides this Court with Jurisdiction over Count III**

      This Circuit has ruled that although the Fair Housing Act "authorizes judicial review when the Secretary charges discriminatory housing practices, . . . it confers no right to review when . . . the Secretary declines to issue a charge." See Godwin v. Sect'y of HUD, 356 F. 3d 310, 312 (D.C. Cir. 2004) (finding that the Fair Housing Act neither creates an explicit cause of action or an implicit right of action in that circumstance).

      APA review is limited to an action in which the relief sought is not expressly or impliedly forbidden by any other statute, for which there is "no other adequate remedy in a court," and for which the agency action at issue is not "committed to agency discretion by law." See 5 U.S.C. §§ 701(a)(2), 704; Bennett v. Spear, 520 U.S. 154, 161-62 (1997); id. at 175; see also Darby v. Cisneros, 509 U.S. 137, 143 (1993). Here, the APA's limited waiver of sovereign immunity is inapplicable to Plaintiff's claims in count III because (1) another adequate remedy is available, namely an action against NECAC, and (2) because HUD's investigation of fair housing complaints is committed to agency discretion by law. See, e.g., Godwin v. HUD, 356 F.3d 310, 312 (D.C. Cir. 2004) (noting that "[w]e agree with the Secretary that the private action authorized by FHA section 813 [codified at 42 U.S.C. § 3613] constitutes an adequate alternative remedy, rendering judicial review unavailable under the APA"); see also American Disabled for Attendant Programs Today v. HUD, 170 F.3d 381, 387 (3rd Cir. 1999) (finding that HUD's prosecution and investigation of fair housing complaints is discretionary); see also Heckler v. Chaney, 470 U.S. 821 (1985) (finding that there is a presumption of unreviewability of decisions

by an agency to not undertake enforcement action).

**B.     The Mandamus Act does not Give this Court Jurisdiction Over Count III, as Plaintiff has not Established that He is Entitled to Such Extraordinary Relief**

Essentially, Plaintiff contends that he is entitled to relief under the Mandamus Act because HUD "failed to perform [its] ministerial duties" in investigating Plaintiff's fair housing complaint. See Compl. ¶ 35. Apparently, Plaintiff alleges that, over the course of the investigation, HUD failed to consider certain evidence, to pursue conciliation of the complaint, and to allow the investigation to be reopened based on newly discovered evidence. See Compl. ¶¶ 27-35. The basis of Plaintiff's mandamus claim is, essentially, that HUD wrongfully issued a "no cause" determination concerning Plaintiff's fair housing complaint against NECAC. See Compl. ¶¶ 27-35.

The Mandamus Act, provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

See 28 U.S.C. § 1361. The courts have recognized that a writ of mandamus is an extraordinary remedy, which is rarely appropriate, and only in special circumstances. See, e.g., Kerr v. United States District Court for Northern District of Cal., 426 U.S. 394, 402 (1976); Will v. U.S., 88 S.Ct. 269 (1967); Williams-Bey v. U.S. Parole Comm'n, 2002 WL 31045306, **1 (D.C. Cir. 2002) (noting that"[i]ssuance of a writ of mandamus is a 'drastic' remedy to be used in 'extraordinary situations'" where the petitioner can show a "clear and indisputable right to the relief sought") (internal citations omitted); In re Bluewater Network, 234 F.3d 1305, 1315 (D.C.

35

Cir. 2000) (observing that "[o]ur consideration of any and all mandamus actions starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act"); Gonzalez v. Hawk, 1995 W.L. 479722, *1 (D.C. Cir. 1995) ("[m]andamus is an extraordinary remedy to be granted only where essential to the interests of justice") (citing Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc) ("Starnes")); Caldwell v. U.S. Parole Comm'n, 1995 WL 117985, *1 (D.C. Cir. 1995); Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 86, n. 6 (D.D.C. 2006).

    Three elements must exist before a writ of mandamus may issue: (1) the plaintiff must have "a clear right to relief"; (2) the defendant must have "a clear duty to act"; and (3) there must be "no other adequate remedy available to plaintiff."  See Heckler v. Ringer, 466 U.S. 602, 616 (1984); Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir.2002) (citations omitted); Miller v. U.S. Bureau of Prisons, 1997 WL 135713, *2 (D.D.C. 1997); Muhammad v. United States Bureau of Prisons, 789 F. Supp. 449 (D.D.C. 1992).  A court will only consider issuing a writ of mandamus if "the party seeking issuance of the writ [has] no other adequate means to attain the desired relief, and [can] demonstrate that his 'right to issuance of the writ is 'clear and indisputable." See In re Blodgett, 502 U.S. 236, 241, n. 1 (1992); see also In re Asemani, 455 F.3d 296, 299 (D.C. Cir. 2006); Williams-Bey, 2002 WL at **1; In re Sealed Case, 151 F.3d 1059, 1063 (D.C. Cir. 1998).  Thus, where a party seeks relief that may be remedied by other means, mandamus is not the appropriate remedy.  See, e.g., Heckler v. Ringer, 466 U.S. 602, 616 (1984); (mandamus is "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief . . ."); Kerr, 426 U.S. at 403 (1976).  These requirements are properly understood as prerequisites to mandamus jurisdiction. See, e.g., Heckler v. Ringer, 466 U.S. at  616; Swan v. Clinton, 100

36

F.3d 973, 977, n.1 (D.C. Cir. 1996).

Even if a plaintiff satisfies all three elements, a court still has discretion to not grant a writ of mandamus.  See, e.g., In re Cheney, 406 F.3d 723, 729 (D.C. Cir.2005) (en banc); Ross v. United States, 460 F.Supp.2d 139, 150, n. 7 (D.D.C. 2006); United Mine Workers of America, Intern. Union v. Dye, 2006 WL 2460717, *5 (D.D.C. 2006).  Mandamus relief is extraordinary and remains in the discretion of the court when it finds "compelling" equitable grounds.  See In re Medicare Reimbursement Litig. Baystate Health Sys., 414 F.3d 7, 8-10 (D.C. Cir. 2005).

Plaintiff has failed to establish that HUD owes him a clear, nondiscretionary duty regarding its investigation of his fair housing complaint.  Rather, HUD's investigation of such complaints is discretionary.  See ADAPT, 170 F.3d at 387; Heckler, 470 U.S. 821.  Moreover, as mentioned, there is an "other adequate remedy available to plaintiff," namely an action against NECAC based on the allegations in his fair housing complaint in the appropriate district court. See, e.g., 42 U.S.C. 3613(a)(1)(A);  Godwin, 356 F.3d at 312; see also American Disabled for Attendant Programs Today v. HUD, 170 F.3d 381, 390 (3rd Cir. 1999). ("Plaintiff is free to pursue his discrimination claim directly against the alleged discriminating party in federal court.").  As a result, plaintiff has failed to exhaust all other avenues of relief and, therefore, is not entitled to mandamus relief.  Thus, Plaintiff does not satisfy any of the preconditions to the extraordinary relief of mandamus, his claim under the Mandamus Act fails to state a claim upon which relief can be granted, and this Court does not have jurisdiction under that Act.  See, e.g., Power, 292 F.3d at 784; Miller, 1997 W.L. 135713, *2; Muhammad, 789 F. Supp. 449.  Thus, Count III must be dismissed to the extent it is based on an alleged violation of the Mandamus Act and invokes that Act as a basis for jurisdiction.  See Fed. R. Civ. P. 12(b)(1), 12(b)(6).

**C.    Plaintiff's Allegations Respecting 28 C.F.R. Part 35 Fail to State a Claim Upon Which Relief May be Granted**

Plaintiff inaccurately asserts that 28 C.F.R. Part 35 creates a non-discretionary duty for HUD to investigate all incoming allegations and complaints of discrimination, and alleges that HUD failed to comply with those regulations.  See Compl. ¶¶ 25, 35.

Part 35 implements subtitle A of Title II of the Americans with Disabilities Act of 1990 ("ADA").  See 28 C.F.R. § 35.101.  Subtitle A of Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  See 42 U.S.C. § 12132.  Using nearly identical language, Part 35 provides that "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."  See 28 C.F.R. § 35.130(a).  The term "public entity" is defined both in the statute and implementing regulations in terms that exclude the federal government.  See 42 U.S.C. 12131(1) ("[t]he term 'public entity' means . . . any State or local government" or "any department, agency, special purpose district, or other instrumentality" thereof); 28 C.F.R. § 35.104 (defining the term in the same manner).

28 C.F.R. Part 35 does not create any affirmative duties with respect to HUD's investigation of fair housing complaints such as Plaintiff's.  See 28 C.F.R. Part 35 *generally*. Moreover, even if Plaintiff were to assert that HUD's alleged unlawful behavior was based on an alleged disability, Title II and its implementing regulations do not apply to the federal

38

government.  See, e.g., 42 U.S.C. 12131(1); Cellular Phone Taskforce v. FCC, 217 F.3d 72, 73

(2nd  Cir. 2000) (explaining that "Title II of the ADA is not applicable to the federal

government") (ciring 42 U.S.C. § 12131(1))

### D.      The Fourteenth Amendment to the U.S. Constitution is Inapplicable to this Case, and Does Not Provide this Court with Jurisdiction Over Count III

The Fourteenth Amendment to the U.S. Constitution is not a basis for jurisdiction in this

case, as the Defendant is a federal agency.  See, e.g., San Francisco Arts & Athletics, Inc. v. U.S.

Olympic Comm., 483 U.S. 522, 543 & n. 21 (1987) (holding that "[t]he Fourteenth Amendment

applies to actions by a State," that "[t]he claimed association in this case is between the

[defendant] and the Federal Government," and that "[t]herefore, the Fourteenth Amendment does

not apply."); Powers-Bunce v. District of Columbia, 479 F.Supp.2d 146, 153 (D.D.C. 2007)

(observing that "the Fourteenth Amendment applies only to the States; it does not apply to the

Federal Government . . ."); Johnson v. Ashcroft, 1993 W.L. 13143874, *2 (D.D.C. 1993) (noting

that "the FBI is a federal agency and as such is not subject to the equal protection clause of the

Fourteenth Amendment").  Thus, Count III must be dismissed to the extent it is based on an

alleged violation of the Fourteenth Amendment and invokes that Amendment as a basis for

jurisdiction.  See Fed. R. Civ. P. 12(b)(1), 12(b)(6).

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss

Plaintiff's action.

Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

A
# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
MICHAEL WEST,                               )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )      Civil Action No. 07-0727 (RMC)
                                            )
ALPHONSO JACKSON, Secretary                 )
  of the Department of Housing              )
  and Urban Development,                     )
                                            )
            Defendant.                      )
                                            )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Defendant submits this statement of material facts as to which there

is no genuine issue:

1.  The North East Community Action Corporation ("NECAC") is "a not-for-profit Community

Action Agency" which delivers "a variety of social service programs to low income elderly, youth,

handicapped and disadvantaged individuals and families through grants and contractual agreements with

Federal, state, county and local governments, other not-for-profit organizations and private businesses."

See http://www.necac.org/ (home page of the official website of the NECAC.)  The "NECAC is not a

government agency."  Id. (emphasis added); West v. Jackson, 448 F. Supp. 2d 207, 209 (D.D.C. 2007);

St. Charles County v. A Joint Bd. or Commission and NECAC, 184 S.W.3d 161, 163-64 (Mo. App. E.D.

2006)).

2.  On or about July 27, 2004, Plaintiff filed an administrative complaint with HUD's Office of

Fair Housing and Equal Opportunity ("FHEO"), in which he claimed that the NECAC had unlawfully "discriminated against him by refusing to process his application for participation in the [s]ection 8 [p]rogram," and had done so based on his disability.  See Compl. ¶ 24; see also Exhibit ("Ex.") 1 (Plaintiff's July 27, 2004 Fair Housing Discrimination Complaint).  Specifically, Plaintiff asserted that "on or around January 2004, he applied for the [s]ection 8 [p]rogram," that "on or about March 15, 2004, [the NECAC] informed him that they had evidence that he had committed fraud," that "he had made three requests for documentation to support their allegation that he had committed fraud," but that the NECAC had failed to respond to these requests, and he contended that this was due to his disability.  See Ex. 1 at 2.

2.  Franklin Montgomery, an Equal Opportunity Specialist in the FHEO at HUD's St. Louis, Missouri field office, was assigned to investigate Plaintiff's July 2004 fair housing complaint against the NECAC.  See Ex. 10, Declaration of Franklin Montgomery ("Montgomery Decl.") ¶¶ 1-2.  During the course of his investigation of Plaintiff's fair housing complaint, on September 12, 2005, Mr. Montgomery was informed by a NECAC employee, Nelva Owens, that NECAC had held a hearing regarding the termination of housing assistance for a Ms. Julie Stephens.  Id. at ¶ 3.  At issue in the hearing was whether Ms. Stephens had defrauded NECAC by allowing Plaintiff to live at her home without notifying NECAC.  Id. at ¶ 3.  To the best of Mr. Montgomery's knowledge, no HUD employees or officials were present at the NECAC hearing and HUD was in no way involved with the administration of the hearing or the rendering of a decision or findings regarding the matter at issue in the hearing.  Id. at ¶ 4.

3.  In a letter dated November 9, 2005, HUD informed Plaintiff that, following an in depth investigation of his allegations, HUD had "determined that no reasonable cause exists to believe that a discriminatory housing practice ha[d] occurred" and accordingly had "completed its administrative

processing of this complaint" and was dismissing the complaint.  See Ex. 2 (November 9, 2005 letter from HUD to Plaintiff transmitting agency's final decision) at 1.  HUD enclosed with its November 9, 2005 letter a copy of the Determination of No Reasonable Cause, which contained a summary of the factual evidence supporting this dismissal.  Id. at 1.

4.  The letter advised Plaintiff that "[n]otwithstanding HUD's dismissal of this complaint," he had a legal right to "file a civil lawsuit in an appropriate federal district court or state court within two (2) years of the date on which the alleged discriminatory housing practice occurred or ended," with this two year period not including the time during which the administrative proceeding was pending with HUD. Id. at 2.  The letter also indicated that Plaintiff could ask HUD to reconsider its determination by submitting a request in writing which set forth the specific reasons why he believed the determination to be erroneous.  See Ex. 2 at 2.

5.  All requests for reconsideration of HUD determinations in fair housing complaints filed with HUD are filed with the Enforcement Support Division of the FHEO at HUD, in Washington, D.C..  See Ex. 12, Declaration of Turner Russell ("Russell Decl.") ¶ 8.  Beginning sometime in December 2004, and continuing through mid 2005, the Enforcement Support Division of the FHEO at HUD received requests for reconsideration from Plaintiff which related to the FHEO Region VII Office's closing of a complaint or complaints filed by Plaintiff because of Plaintiff's failure to cooperate in the administrative processing of his complaint.  Id. at ¶ 9.  The Enforcement Support Division of the FHEO at HUD has not received any other requests for reconsideration from Plaintiff.  See id. at ¶ 10.

6.  On January 24, 2007, Plaintiff sent a FOIA request via email to Mr. Turner Russell, Director of FHEO's Enforcement Support Division, at HUD headquarters.  See Ex. 3 (Plaintiff's first January 24,

2007 FOIA Request, submitted at 15:50:43 -0800 PST).  In this email, Plaintiff requested that HUD

provide:

> . . . [a]ll communications originated by or dispatched to this HUD Enforcement Support
> Division enumerated above pertaining to:
>
> a.    this instant requestor, Michael West;
> b.    the Mraz investigation; and
> c.    the Montgomery investigation.

See Ex. 3.

7.  Plaintiff sent Mr. Russell a second FOIA request via email on January 24, 2007, in which he

requested:

> . . . all policies, or the like, that allow this federal agency:
>
> a.    to use false or perjured evidence [to] close an investigation without providing a full
>       and fair investigation into the merits of a complaint. . . .
> b.    to base its investigative findings of fact and conclusions of law on false or perjured
>       evidence . . .
> c.    to ignore its statutory duty by not providing a full and fair agency review action
>       upon this Director's office receiving [a]ppeal materials . . . . pertaining to
>       underlying investigations, in which it violates administrative due process under
>       Administrative Procedure Act, 28 C.F.R. Part 35, and Fourteenth Amendment to
>       the United States Constitution.

See Ex. 4 (Plaintiff's second January 24, 2007 FOIA Request, submitted at 15:55:59 -0800 PST).

8.  In a letter to Mr. Russell dated February 12, 2007, which was received on February 21, 2007,

Plaintiff stated that "[t]his is a Freedom of Information Act Appeal."  See Ex. 5 (February 12, 2007 letter

from Plaintiff to Mr. Turner Russell of HUD).  In this letter, Plaintiff complained that, despite mailing

two FOIA requests to Mr. Turner, he had "not received HUD's cooperation in this matter or the specific

4

requested materials" and declared that "the requested FOIA materials must be released." Id.  Plaintiff

asked that any fees be waived, requested that Mr. Russell forward the request to the appropriate office if

necessary, and warned that "[a] Federal lawsuit will follow if these materials are not provided within the

statutory time frame."  Id.  Plaintiff attached copies of his January 24, 2007 FOIA requests to his

February 12, 2007 letter.  Id.; see also Ex. 12, ¶ 4.  HUD had not received copies of Plaintiff's January 24,

2007 FOIA requests until they arrived in HUD's offices as attachments to Plaintiff's February 12, 2007

letter.  See Ex. 12, ¶ 4.

9.  In a letter dated February 23, 2007, HUD's Executive Secretary, Cynthia O'Connor, notified

Plaintiff that HUD had received Plaintiff's February 12, 2007 FOIA request on February 21, 2007, and

had assigned it FOIA Control No. FI-461783.  See Ex. 6 (February 23, 2007 letter from Cynthia

O'Connor of HUD to Plaintiff).  Ms. O'Connor further advised Plaintiff that"[u]nder unusual

circumstances, such as an agency's backlog, or the need to examine a voluminous amount of records

required by the request," HUD can extend [the generally applicable] 20-day time limit for processing a

[FOIA] request."  Id. at 1.  She indicated that "[a]s of February 16, 2007, HUD's FOIA Office has 394

open FOIA requests" and that "[b]ased on HUD's experience and current inventory, it is estimated that it

may take approximately 45 days to complete the processing of your request."  Id. at 1.  The letter

informed Plaintiff that his request was being processed on a "routine track," and provided him with the

name of the person responsible for processing his FOIA request and her contact information.  Id. at 1-2.

10.  The Enforcement Support Division of HUD's Office of FHEO regularly reviews various, but

not all, fair housing investigations performed by FHEO staff in one or more of its field offices.  See Ex.

12, Russell Decl. ¶ 2.  A "Chron File" is maintained by the Enforcement Support Division of HUD's

Office of FHEO and contains any and all correspondence or copies of other documents concerning a

5

particular FHEO fair housing investigation which may have been submitted to the Division in connection with its review of that particular investigation.  See id. at ¶ 2.  FHEO's Title Eight Automated Paperless Office Tracking System ("TEAPOTS") is designed to maintain relevant and detailed tracking information for all the fair housing complaints filed with FHEO, including information concerning the type of complaint, the date the complaint was received by FHEO, the names of the relevant parties, and the status of the complaint.  See id. at ¶ 3.  TEAPOTS also allows the FHEO investigator assigned to a fair housing complaint to upload electronic copies of documents, interviews, and other evidence to the system.  See id. at ¶ 3.

11.  In response to Plaintiff's first FOIA request dated January 24, 2007, Mr. Russell conducted a thorough search of both the Enforcement Support Division's CHRON file and TEAPOTS for any and all information regarding a fair housing complaint filed by or otherwise involving Plaintiff, and a Mraz investigation and/or a Montgomery investigation and any other documentation "originated by or dispatched to" the Enforcement Support Division concerning those investigations.  See id. at ¶ 4, 6.  Mr. Russell did not however locate any document or record meeting that criteria.  See id. at ¶ 7.

12.  By letter dated April 24, 2007, Cynthia O'Connor of HUD notified Plaintiff that a records search at HUD Headquarters failed to locate any documents responsive to Plaintiff's first January 24, 2007 FOIA request, Plaintiff's request for "communications originated by or dispatched to this HUD Enforcement Support Division enumerated above pertaining to" himself, "the Mraz investigation" and "the Montgomery investigation."  See Ex. 7 (April 24, 2007 letter from Cynthia O'Connor of HUD to Plaintiff).  The letter advised Plaintiff that he was free to appeal this determination by HUD within 30 days, and proceeded to identify the required elements of such an appeal, and the address to which such an appeal should be sent.  Id.  HUD was not aware of the fact that Plaintiff had filed a Complaint in Court at

6

the time it sent its April 23, 2007 letter.

13. Chris Opfer, an attorney in HUD's Office of Litigation, subsequently contacted HUD's Office of FHEO and asked them to determine whether any office of HUD possessed any documents relevant to Plaintiff's two FOIA requests.  See Ex. 3; Ex. 14, Declaration of Chris Opfer ("Opfer Decl.") at ¶¶ 3.  Mr. Opfer was informed by HUD's FHEO staff that if HUD possessed any documents relevant to the complaints at issue in Plaintiff's FOIA requests, they would be archived in HUD's FHEO Kansas City, Kansas Regional office.  See Ex. 14, Opfer Decl. ¶ 4.

14. On June 6, 2007, Mr. Opfer requested that HUD's FHEO's St. Louis and Kansas City's offices search for any and all documents responsive to Plaintiff's FOIA requests.  See Ex. 14, Opfer Decl. ¶ 5.  In response to Mr. Opfer's request, Jocelyn Gibson, and Equal Opportunity Specialist at HUD's FHEO in HUD's Kansas City Regional Office conducted a thorough search of the Regional Office's fair housing investigation files for any and all information regarding a fair housing complaint filed by Plaintiff.  See Ex. 13, Declaration of Jocelyn Gibson ("Gibson Decl.") ¶¶ 1, 5.  No documents concerning Plaintiff were found in HUD's Kansas City Regional Office.  See Ex. 13, Gibson Decl. ¶ 6.

15. Ms. Gibson then contacted the National Records Center and requested all files and/or documents relating to Plaintiff.  See Ex. 13, Gibson Decl. ¶ 7.  Ms. Gibson was able to locate responsive files and documents at the National Records Center, and they were mailed to her at the Regional Office See Ex. 13, Gibson Decl. ¶ 7.  Ms. Gibson mailed them to Mr. Opfer, and on or about August 7, 2007, Mr. Opfer received this package of documents from Ms. Gibson.  See Ex. 13, Gibson Decl. ¶ 7; Ex. 14, Opfer Decl. ¶ 6.  Ms. Gibson indicated that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests.  See Ex. 14, Opfer Decl. ¶ 6.

16.  On August 17, 2007, Mr. Opfer mailed a copy of these responsive documents to Plaintiff at his last known address.  See Ex. 14, Opfer Decl. ¶¶ 7-8.  Plaintiff received this delivery on August 20, 2007.  See Ex. 14 (attached U.S. mail delivery confirmation receipt and 2 page printout of United States Postal Service Track and Confirm search results for this delivery).

17.  During the relevant period, an individual wishing to file an appeal of HUD's response to a FOIA request was required to submit the appeal to HUD's Office of General Counsel in Washington, D.C..  See Ex. 11, Declaration of Virginia Ackerman ("Ackerman Decl.") ¶¶ 1-2.  When a FOIA appeal was improperly sent to some other office, the receiving office generally would forward the appeal to that office.  See id. at ¶ 2.  Upon receipt of a FOIA appeal letter by HUD's Office of General Counsel, the appeal is assigned to a staff attorney in that office, and an administrative employee within the office is directed to process the appeal letter and enter pertinent information into two computer systems which contain tracking information and work status information concerning such requests: Microsoft ACCESS Database 2000 ("ACCESS") and the Legal Assessment Workload System ("LAWS").  See id. at ¶¶ 3-5.

18.  As of June 19, 2007, HUD's Office of General Counsel had no record of having ever receiving any FOIA appeal from Plaintiff concerning HUD's response to the FOIA request which it designated as FI-461783.  See id. at ¶¶ 6-7.  Nor does HUD's Office of General Counsel have any record of having received any FOIA appeal from Plaintiff between February 23, 2007 (the date of HUD's notification of its receipt of Plaintiff's FOIA request) and April 23, 2007 (the date of Plaintiff's filing of a Complaint in this Court.)  See id. at ¶ 8.  To confirm that it has received no such FOIA appeal, HUD's Office of General Counsel searched its ACCESS and LAWS computer files.  See id. at ¶ 6.

8

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney



___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 4th day of September, 2007, the foregoing Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, and Defendant's Statement of Material Facts Not in Dispute, and the accompanying Exhibits, were served upon the *pro se* Plaintiff by first class mail, postage prepaid mail addressed as follows:

> Michael West
> P.O. Box 1935
> St. Charles, MO 63302

> __/s/_____
> JONATHAN C. BRUMER, D.C. BAR # 463328
> Special Assistant United States Attorney
> 555 Fourth Street, N.W., Room E4815
> Washington, D.C. 20530
> (202) 514-7431
> (202) 514-8780 (facsimile)

# EXHIBIT   1

Plaintiff's July 27, 2004 Fair Housing Discrimination Complaint

July 27, 2004

<u>HOUSING DISCRIMINATION COMPLAINT</u>

CASE NUMBER:   07-04-0872-8

1.     Complainants

       Michael West
       P O Box 1935
       St. Charles, MO  63302-1935

2.     Other Aggrieved Persons

       None.

3.     The following is alleged to have occurred or is about to occur:

       Discriminatory refusal to rent.

4.     The alleged violation occurred because of:

       Handicap.

5.     Address and location of the property in question (or if no
       property is involved, the city and state where the discrimination
       occurred):

       Bowling Green, MO

6.     Respondent(s)

       Donald Patrick, Executive Director
       North East Community Action Corporation
       16 North Court Street
       Bowling Green, MO  63334-0470

       Nelda Owens, Housing-Rent Assistance Director
       North East Community Action Corporation
       16 North Court Street
       Bowling Green, MO  63334-0470

       North East Community Action Corporation
       16 North Court Street
       Bowling Green, MO  63334-0470

7.   The following is a brief and concise statement of the facts
     regarding the alleged violation:

     Section:  804(f)(2)(A)
     Issue:  Refusal to Rent
     Basis:  Handicap
     Allegation:  Refusal to Process Application

     The complainant alleges the respondents discriminated against him
     by refusing to process his application for participation in the
     Section 8 Program.  He alleges that in or around January 2004, he
     applied for the Section 8 Program and on or around March 15,
     2004, the respondents informed him that they had evidence that he
     had committed fraud.  The complainant alleged that he made three
     written requests for documentation to support their allegation
     that he had committed fraud, and requested information about how
     to file an appeal.  He alleged, however, that the respondents
     refused to respond to his requests and contends that the
     respondents' refusals were due to his disability.

8.   The most recent date on which the alleged discrimination
     occurred:

     May 15, 2004.

9.   Types of Federal Funds identified:

     Community Development Block Grant.

10.  The acts alleged in this complaint, if proven, may constitute a
     violation of the following:

     Section 804a or f of Title VIII of the Civil Rights Act of 1968
     as amended by the Fair Housing Act of 1988.

     Section 504 of the 1973 Rehabilitation Act.


Please sign and date this form:

I declare under penalty of perjury that I have read this complaint
(including any attachments) and that it is true and correct.

_____                    8/10/2004
Michael West                                           (Date)

N O T E :  HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR
ORGANIZATION AGAINST WHOM IT IS FILED.

# EXHIBIT   2

November 9, 2005 letter from HUD to Plaintiff transmitting agency's final decision
dismissing his Housing Discrimination Complaint



U.S. Department Of Housing and Urban Development
Kansas/Missouri State Office
REGION VII
Gateway Tower II, Room 200
400 State Avenue
Kansas City, KS  66101-2406
HUD Home Page: www.hud.gov

**NOV 0 9 2005**

Michael West
P O Box 1935
St. Charles, MO 63302-1935

Dear Complainant:

Subject:  Housing Discrimination Complaint
          West v. North East Community Action Corporation, et al.
          Inquiry No.:      170989
          HUD Case No.:     070408728 and 070408724 and 07040872D

     The U.S. Department of Housing and Urban Development (HUD) administratively enforces the Fair Housing Act of 1968 (the Act).  HUD has completed its investigation of the above-referenced complaint.  Efforts to voluntarily conciliate the complaint during the course of the investigation were unsuccessful.

     Based on the evidence obtained during the investigation, HUD has determined that no reasonable cause exists to believe that a discriminatory housing practice has occurred.  Accordingly, HUD has completed its administrative processing of this complaint under the Act, and the complaint is hereby dismissed.  The enclosed Determination of No Reasonable Cause contains a summary of the factual evidence supporting this dismissal.

     <u>Retaliation is a violation of the Fair Housing Act</u>.  Section 818 of the Act makes it unlawful to retaliate against any person because he or she has filed a housing discrimination complaint; is associated with a complainant; has counseled or otherwise assisted any person to file such a complaint; or has provided information to HUD during a complaint investigation.  Section 818 also protects complainants against retaliatory acts that occur after a complainant has withdrawn, settled, or conciliated a housing discrimination complaint.  Section 818 protects complainants against retaliatory acts that occur after a finding of no reasonable cause.  Any person who believes that he or she has been a victim of retaliation for any of the reasons listed above may file a housing discrimination complaint with HUD within one (1) year of the date on which the most recent alleged retaliatory act(s) occurred or ended.

**Right to file a civil lawsuit**. Notwithstanding HUD's dismissal of this complaint, under Section 813(a) of the Act, the complainant may file a civil lawsuit in an appropriate federal district court or state court within two (2) years of the date on which the alleged discriminatory housing practice occurred or ended. The computation of this two-year period does not include the time during which this administrative proceeding was pending with HUD. If, upon the application of either party, the court determines that the party is financially unable to bear the costs of the civil lawsuit, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil lawsuit without the payment of fees, costs, or security.

**Reconsideration**. A complainant may ask HUD to reconsider its Determination of No Reasonable Cause. Requests for reconsideration must be in writing and must set forth the specific reasons why the complainant believes that the Determination of No Reasonable Cause is in error. Reconsideration requests must be limited to the allegations and issues in the complaint. The complainant must identify the relevant information that he or she believes is incorrect, or that was omitted from the complaint investigation. The request must include all new and material evidence that the complainant believes supports the reconsideration request.

Please direct all reconsideration requests to: Director, Office of Enforcement, FHEO, U.S. Department of Housing and Urban Development, Room 5226, 451-7th Street, SW, Washington, DC 20410-2000. Before requesting reconsideration, please review the Final Investigative Report. The enclosed Determination provides instructions for obtaining a copy of the Report.

**Public Disclosure**. Section 103.400(a)(2)(ii) of HUD's regulation implementing the Act requires that HUD shall publicly disclose the dismissal of this complaint, unless a complainant or a respondent requests in writing that no such disclosure shall be made. Requests for nondisclosure must be made within thirty (30) days after receipt of this Determination. Nondisclosure requests should be submitted to the same HUD Office that issued the Determination. Notwithstanding such a request, the fact of this dismissal, including the names of all parties to the complaint, is public information and is available upon request.

If you have any questions regarding this closure, please contact FRANK MONTGOMERY, Investigator, at (800) 743-5323 or 913-551-6993, for assistance.

Sincerely,

Bobbie Herndon
FHEO Region VII Director
Office of Fair Housing and
Equal Opportunity

Enclosure

070408728

# EXHIBIT   3

Plaintiff's first January 24, 2007 FOIA Request, submitted at 15:50:43 -0800 PST

07/05/2007    09:54    HUD-OFFICE OF LITIGATION → 202 514 8780          NO.329    P04
Case 1:07-cv-00727-RMC    Document 15-4    Filed 09/04/2007    Page 2 of 2

FI 461783

HUD FOIA Jan 07
Yahoo! Mail - harleyd_ok4u@yahoo.com Print - Close Window
    Date:Wed, 24 Jan 2007 15:50:43 -0800 (PST)
    From:"j s" <harleyd_ok4u@yahoo.com>
    Subject:Freedom of Information Act Request
    To:Turner_Russell@hud.gov
Michael West
P.O. Box 1935
St. Charles , MO 63302

VIA EMAIL AND FIRST CLASS U.S. MAIL

Mr. Turner Russell
Director, Enforcement Support Division
U.S. Department of Housing and Urban Development
Washington , D.C. 20410-2000

Re:     Freedom of Information Act Request

Dear Mr. Russell:

Thank you for this opportunity to submit this instant Freedom of Information Act
request under 5 U.S.C. § 552 and 24 C.F.R. 15.104. Previously, as you are
aware, the underlying Mraz investigation filed against your administering
agency, NECAC, was closed based on false or perjured evidence. See Request for
Reconsideration Letter to Russell from West ("Appeal") (2005). Subsequently,
after the Mraz investigation's finding of fact and conclusions of law was set
aside or vacated, the disability discrimination complaint investigation was
assigned to Montgomery . Similar to the Mraz investigation, the Montgomery
investigation's findings of fact and conclusions of law rest on false or
perjured evidence. See Appeal Letter, Feb. 2006.

In light of HUD regulation 24 C.F.R. § 103.230, a final report can and should be
amended if it rest on false or perjured evidence "when additional evidence is
discovered." 24 C.F.R. § 103.230(b). However, to date, it appears that this
office does not follow its own controlling regulations. For example, here this
HUD director's office has not provided its written response to the Feb. 2006
appeal after nearly one year in violation of 24 C.F.R. § 103.230(c), et al.

In light of this background information, it is respectfully requested under
FOIA, that HUD provide a true and complete copy of the following:

1.              All communications originated by or dispatched to this HUD
Enforcement Support Division enumerated above pertaining to:

a.      this instant requestor, Michael West;
b.      the Mraz investigation; and
c.      the Montgomery investigation.

If any of these materials are stored in a computer database or by other
electronic means, it is respectfully requested that those materials be converted
into a hardcopy printed format.

I look forward to hearing from this federal agency within the statutory period
of time provided for with respect to FOIA requests.

Sincerely,


    /s/
Michael West


Cheap Talk? Check out Yahoo! Messenger's low PC-to-Phone call rates.

                        Page 1

# EXHIBIT    4

Plaintiff's second January 24, 2007 FOIA Request, submitted at 15:55:59 -0800 PST

ol Mail - harleyd_ok4u@yahoo.com Print - Close Window
    Date:Wed, 24 Jan 2007 15:55:59 -0800 (PST)
    From:"j s" <harleyd_ok4u@yahoo.com>
    Subject:Freedom of Information Act Request
    To:"Turner Russell" <turner_russell@hud.gov>
Michael West
P.O. Box 1935
St. Charles , MO 63302

VIA EMAIL AND FIRST CLASS U.S. MAIL

Mr. Turner Russell
Director, Enforcement Support Division
U.S. Department of Housing and Urban Development
Washington , D.C. 20410-2000

Re:        Freedom of Information Act Request

Dear Mr. Russell:

Thank you for this opportunity to submit this instant Freedom of Information Act
request under 5 U.S.C. § 552 and 24 C.F.R. 15.104. Previously, as you are
aware, the underlying Mraz investigation filed against your administering
agency, NECAC, was closed based on false or perjured evidence. See Request for
Reconsideration Letter to Russell from West ("Appeal") (2005). Subsequently,
after the Mraz investigation's finding of fact and conclusions of law was set
aside or vacated, the disability discrimination complaint investigation was
assigned to Montgomery . Similar to the Mraz investigation, the Montgomery
investigation's findings of fact and conclusions of law were rested on false or
perjured evidence. See Appeal Letter, Feb. 2006.
Now, after one year having nearly passed, this Director's Office fails to
process and provide a written reply to the Appeal materials (Feb. 2006) for this
matter.

In light of this background information, it is respectfully requested under
FOIA, that the appropriate HUD office provide a true and complete copy of the
following:

1.          All policies, or the like, that allow this federal agency:

a.       to use false or perjured evidence close an investigation without
providing a full and fair investigation into the merits of a complaint. See
Mraz investigation;

b.       to base its investigative findings of fact and conclusions of law on
false or perjured evidence. See Montgomery investigation; and

c.       to ignore its statutory duty by not providing a full and fair agency
review action upon this Director's office receiving Appeal materials (Feb. 2006)
pertaining to underlying investigations, in which violates administrative due
process under Administrative Procedure Act, 28 CFR Part 35, and Fourteenth
Amendment to the United States Constitution. See Final Report (Nov. 2005).

If any of these materials are stored in a computer database or by other
electronic means, it is respectfully requested that those materials be converted
into a hardcopy printed format.

I look forward to hearing from this federal agency within the statutory period
of time provided for with respect to FOIA requests.

Sincerely,

# EXHIBIT  5

February 12, 2007 letter from Plaintiff to Mr. Turner Russell of HUD

FI 461783

Michael West
PO Box 1935
St. Charles, MO 63302

2007 FEB 21  A 10: 17

February 12, 2007

Mr. Turner Russell
Director, Enforcement Support Division
U.S. Department of Housing & Urban Development
Washington, D.C. 20410-2000

Re: Freedom of Information Act Appeals

Dear Mr. Russell:

This is a Freedom of Information Act Appeal pursuant to 5 U.S.C. § 552(a). On January 24, 2007, Freedom of Information Act requests were filed with you, Mr. Russell. These requests were both forwarded *via* e-mail and first class U.S. mail. True copies are attached. To date, I have not received HUD's cooperation in this matter or the specific requested materials.

Here, the requested FOIA materials must be released. And a specific request is made for any fees to be waived as a matter of disclosure of how this agency operates or fails to provide a full and fair discrimination and/or retaliation investigation process.

I look forward to receiving your responsive materials within the statutory 20-day period. However, if this FOIA Appeal has crossed your desk by mistake, it is respectfully requested that you immediately forward it to the appropriate office pursuant to HUD's 24 C.F.R. §§ 15.104(a); 15.111.

A Federal lawsuit will follow if these materials are not provided within the unambiguous statutory time frame permitted under 5 U.S.C. § 552(a). In this event, a written demand for all costs and fees and damages to be taxed against HUD for the "arbitrary and capricious" non-compliance with FOIA will be included.

Please permit me to thank you in advance for your courtesies.

Sincerely,

Michael West

Ref: E (Rt: 45 Days)
Ct abstn

Rec'd 2/21/07
LEW

Tyson

# EXHIBIT   6

February 23, 2007 letter from Cynthia O'Connor of HUD to Plaintiff



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-3000

OFFICE OF ADMINISTRATION                        FEB 2 8 2007

Mr. Michael West
PO Box 1935
St. Charles, MO 63302 -1935

                    RE:    Freedom of Information Act Request
                           FOIA Control No.: FI-461783

Dear Mr. West:

        This letter acknowledges the Department of Housing and Urban Development's receipt
of your Freedom of Information Act (FOIA) request dated February 12, 2007. Your request
was received in the Department's FOIA Office on February 21, 2007.

        Pursuant to the FOIA, 5 USC 552(a)(6)(A)(i), once HUD properly receives a FOIA
request, the Department has 20 working days within which to make a determination on the
request unless unusual circumstances exist. Under unusual circumstances, such as an agency's
backlog, or the need to examine a voluminous amount of records required by the request, HUD
can extend the 20-day time limit for processing a request. As of February 16, 2007, HUD's
FOIA Office has 394 open FOIA requests. Based upon HUD's experience and current
inventory, it is estimated that it may take approximately 45 days to complete processing of your
request.

        HUD's policy is to process FOIA requests using "multi-track processing," which allows
the Department to process FOIA requests on a first-in/first-out basis, within each track. HUD
places FOIA requests in its routine or complex track based on the amount of work and time
involved in processing the request. The criteria for assignment to a specific track are found in
HUD's FOIA regulations, 24 CFR 15 §105(a), which were published in the Federal Register on
January 22, 2001, at 66 FR 6964. Your request is being processed on the routine track. Please
note that upon further evaluation of your request, you may be notified that your request has
been transferred to another track.

                                www.hud.gov        espanol.hud.gov

2

The Department will comply with your request to the extent permissible by law. Any records not subject to an exemption will be forwarded to you promptly upon the completion of HUD's search and review process. Your request has been assigned to Ms. Janeen Tyson for processing. If you have any questions regarding your request, please contact Ms. Tyson at (202) 402-8449.

Thank you for your interest in the Department's programs and policies.

Sincerely,

Cynthia A. O'Connor
Executive Secretary

# EXHIBIT   7

April 24, 2007 letter from Cynthia O'Connor of HUD to Plaintiff



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-3000

April 24, 2007

OFFICE OF ADMINISTRATION

Mr. Michael West
PO Box 1935
St. Charles, MO 63302-1935

RE:   Freedom of Information Act Request
      FOIA Control No.: FI-461783

Dear Mr. West:

This letter is in response to your letter dated February 12, 2007, and your January 24, 2007, Freedom of Information Act (FOIA) request addressed to Mr. Turner Russell. In your January 24, 2007, request, you asked for a complete copy of all communications originated by or dispatched to the Department of Housing and Urban Development Enforcement Support Division pertaining to the following:

1.  Michael West;

2.  The Mraz investigation; and

3.  The Montgomery investigation.

When responding to a FOIA request, HUD searches for responsive documents existing up to the date the request is received in the Department's FOIA Office. Your request was received on February 21, 2007.

A search of Headquarters' records by knowledgeable staff failed to locate any documents that would be responsive to your request. I am the official responsible for this determination based on information provided by the Office of Fair Housing and Equal Opportunity. You may appeal this determination within 30 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting the appeal. The envelope should be plainly marked to indicate that it contains a FOIA appeal. If you should decide to appeal, please send your appeal to:

> U.S. Department of Housing and Urban Development
> Freedom of Information Act Appeal
> Assistant General Counsel for
>   Procurement and Administrative Law
> 451 Seventh Street, SW, Room 10180
> Washington, DC 20410-0500
>
> Telephone: (202) 708-0622

2

For your information, your FOIA request, including your identity and any information made available, is releasable to the public under subsequent FOIA requests. In responding to these requests, the Department does not release personal privacy information, such as home address, telephone number, or social security number, all of which are protected from disclosure under FOIA Exemption 6.

Thank you for your interest in the Department's programs and policies.

Sincerely,

Cynthia A. O'Connor
Executive Secretary

# EXHIBIT   8

Not filed with the Court

# EXHIBIT   9

Not filed with the Court

# EXHIBIT   10

Declaration of Franklin Montgomery

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL WEST, | ) |
| | ) |
| PLAINTIFF, | ) |
| | )    CV 07-0727 RMC |
| V. | ) |
| | )    Declaration of Franklin |
| ALPHONSO JACKSON, Secretary | )    Montgomery |
| of the United States Department | ) |
| of Housing and Urban Development, | ) |
| | ) |
| DEFENDANT. | ) |

## DECLARATION OF FRANKLIN MONTGOMERY

I, Franklin Montgomery, declare and state as follows:

1. I am an Equal Opportunity Specialist in the Office of Fair Housing and Equal Opportunity ("FHEO") at the United States Department of Housing and Urban Development's ("HUD"'s) St. Louis, Missouri Field Office. I have been employed in this position since November 19, 2000.

2. As part of my job duties, I was assigned to investigate a fair housing complaint filed with HUD on July 26, 2004 by Mr. Michael West, P.O Box 1935, St. Charles, MO 63302-1935 against North East Community Action Corporation ("NECAC"). The complaint was titled West v. North East Community Action Corporation, et al., FHEO Case No. 07-04-0872-8.

3. On September 12, 2005, during the course of the investigation of Mr. West's fair housing complaint, I was informed by NECAC employee Nelva Owens that NECAC held a hearing regarding the termination of housing assistance for Ms. Julie Stephens. At issue in the hearing was whether Ms. Stephens had defrauded NEAC by allowing Michael West to live at her home without notifying NCEAC. I was later provided with information on the hearing.

4. To the best of my knowledge, no HUD employees or officials were present at the aforementioned NECAC hearing and HUD was in no way involved with the administration of the hearing or the rendering of a decision or findings regarding the matter at issue in the hearing.

I, Franklin Montgomery, declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

FRANKLIN MONTGOMERY
Equal Opportunity Specialist
Office of Fair Housing and Equal
Opportunity
U.S. Department of Housing &
Urban Development

# EXHIBIT    11

Declaration of Virginia Ackerman

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CV 07-0727 RMC |
| V. | ) | |
| | ) | Declaration of Virginia |
| ALPHONSO JACKSON, Secretary | ) | Ackerman |
| of the United States Department | ) | |
| of Housing and Urban Development, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DECLARATION OF VIRGINIA ACKERMAN

I, Virginia Ackerman, declare and state as follows:

1. I am the Assistant General Counsel for the Office of Procurement and Administrative Law within the Office of General Counsel of the United States Department of Housing and Urban Development ("HUD"), in Washington, D.C. I have held this position in a permanent capacity since February 2007. From May 2005 to February 2007, I held this position in an "acting" capacity. Prior to assuming these responsibilities, I worked as an Attorney-Advisor, and then as a Senior Attorney, in the Office of Procurement and Administrative Law for approximately eleven years.

2. An individual wishing to file an appeal of HUD's response to a FOIA request is required to submit the appeal to the address specified in HUD's response to the individual's initial FOIA request. My office serves as the designated HUD recipient for appeals concerning FOIA requests that are initially processed in HUD Headquarters. It has been my experience that, when a FOIA appeal is sent to the wrong office, the receiving office will forward the appeal to my office.

3. Upon receipt of a FOIA appeal letter by my office, the appeal is assigned to a staff attorney. In addition, an administrative employee within the office is directed to process the appeal letter and enter pertinent information into two computer systems: Microsoft ACCESS Database 2000 ("ACCESS") and the Legal Assessment Workload System ("LAWS").

4. ACCESS is designed to maintain relevant tracking information for all of the cases being handled by the Office of Procurement and Administrative Law, including the nature of the case, the date the case was received in the office, the name of the HUD attorney assigned to the case, the appellant's name, the identification number of the appeal, the status of the appeal, and the target date for completion of the matter.

5. LAWS is designed to maintain relevant tracking and work status information on all of the cases being handled by the Office of Procurement and Administrative Law. It contains basic case information, including the nature of the case, the HUD program involved in the case, the name of the attorney assigned to the case, the date the case was received in the office and the target date for completion of the matter.

6. In response to a request from HUD Trial Attorney, Chris Opfer, my staff conducted a thorough search of both ACCESS and LAWS, in an attempt to locate a FOIA appeal from Mr. Michael West, P.O Box 1935, St. Charles, MO 63302-1935, regarding his original FOIA request numbered by HUD as FI-461783.

7. My staff did not locate any document or record meeting those criteria.

8. Furthermore, my office has no record of having received any FOIA appeal from Mr. Michael West between February 23, 2007 (date of HUD's notification of receipt of Mr. West's FOIA request) and April 23, 2007 (date of Mr. West's filing of Complaint).

I, Virginia Ackerman, declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

_Virginia Ackerman, 6/19/2007_

VIRGINIA ACKERMAN
Assistant General Counsel
Office of Procurement and
Administrative Law
Office of General Counsel
U.S. Department of Housing
& Urban Development

# EXHIBIT   12

Declaration of Turner Russell

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL WEST, | ) |
| | ) |
| PLAINTIFF, | ) |
| | )     CV 07-0727 RMC |
| V. | ) |
| | )     Declaration of Turner |
| ALPHONSO JACKSON, Secretary | )     Russell |
| of the United States Department | ) |
| of Housing and Urban Development, | ) |
| | ) |
| DEFENDANT. | ) |

## DECLARATION OF TURNER RUSSELL

I, Turner Russell, declare and state as follows:

1. I am the Director of the Enforcement Support Division of the Office of Fair
   Housing and Equal Opportunity ("FHEO") at the United States Department of
   Housing and Urban Development ("HUD"), in Washington, D.C. I have been
   employed in this position since approximately 1999.

2. The Enforcement Support Division regularly reviews various, but not all, fair
   housing investigations performed by FHEO staff in one or more of its field
   offices. A "CHRON File" is maintained by the Enforcement Support Division
   and contains any and all correspondence or copies of other documents
   concerning a particular FHEO fair housing investigation which have been
   submitted to the Division in concert with its review of that particular
   investigation.

3. FHEO's Title Eight Automated Paperless Office Tracking System
   (TEAPOTS) is designed to maintain relevant tracking information for all of
   the fair housing complaints filed with FHEO, including the type of complaint,
   the date the complaint was received by FHEO, the names of the relevant
   parties and the status of the complaint. In addition, TEAPOTS allows the
   FHEO investigator assigned to the complaint to upload electronic copies of
   documents, interviews and other evidence onto the system.

4.  On or about February 21, 2007, I received a FOIA request in the form of a letter from Mr. Michael West. In this FOIA request Plaintiff attached a copy of a previous email dated January 24, 2007 that I did not receive also requesting that HUD provide,

> All communications originated by or dispatched to this HUD Enforcement Support Division enumerated above pertaining to:
> a.  this instant requestor, Michael West;
> b.  the Mraz investigation; and
> c.  the Montgomery investigation.

5.  Beginning sometime in 2004, the Enforcement Support Division became aware that Mr. West was in contact with FHEO's Region VII Office in Kansas City, Kansas, attempting to file a fair housing complaint. That Office has the responsibility to process and, where appropriate, investigate fair housing complaints occurring in the state of Missouri. Any and all documents concerning an investigation of a complaint filed by Mr. West would be located in the Region VII FHEO Office in Kansas City, Kansas.

6.  In response to the FOIA identified in Number 4 above, I conducted a thorough search of both the "Enforcement Support Division CHRON File" and TEAPOTS for any and all information regarding a fair housing complaint filed by or otherwise involving Mr. Michael West, P.O Box 1935, St. Charles, Missouri 63302-1935, and a Mraz Investigation and/or a Montgomery Investigation and any other documentation "originated by or dispatched to" the Enforcement Support Division concerning those investigations.

7.  I did not locate any document or record meeting those criteria.

8.  All requests for a reconsideration of a HUD determination in a fair housing complaint filed with the Department are directed to my office.

9. Beginning sometime in December 2004, and continuing through mid 2005, my office received requests for reconsideration from Mr. Michael West. It appears that the requests related to FHEO's Region VII Office's closing of a complaint or complaints filed by Mr. West because of Mr. West's failure to cooperate in the administrative processing of his complaint(s).

10. My office has not received any other requests for reconsideration from Mr. Michael West.

I, Turner Russell, declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

TURNER RUSSELL
Director, Enforcement
Support Division
Office of Fair Housing and
Equal Opportunity
U.S. Department of Housing
& Urban Development

# EXHIBIT    13

Declaration of Jocelyn Gibson

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CV 07-0727 RMC |
| V. | ) | |
| | ) | Declaration of Jocelyn |
| ALPHONSO JACKSON, Secretary | ) | Gibson |
| of the United States Department | ) | |
| of Housing and Urban Development, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DECLARATION OF JOCELYN GIBSON

I, Jocelyn Gibson, declare and state as follows:

1. I am an Equal Opportunity Specialist in the Office of Fair Housing and Equal Opportunity ("FHEO") at the United States Department of Housing and Urban Development's ("HUD"'s) Kansas City Regional Office. I have been employed in this position since approximately 1993.

2. The Regional Office oversees HUD field offices in Iowa, Kansas, Missouri and Nebraska.

3. The Regional Office maintains the original case files for all fair housing investigations completed within the region for one year.

4. Each year, the case files for closed fair housing investigations are transferred to the National Record Center, located at 17501 W. 98th Street, Lenexa, Kansas 66219.

5. In response to a request from HUD Trial Attorney Chris Opfer, I conducted a thorough search of the Regional Office's fair housing investigation files for any and all information regarding a fair housing complaint filed by or otherwise involving Mr. Michael West, P.O Box 1935, St. Charles, MO 63302-1935.

6. No documents concerning Mr. West were found at the Regional Office.

7. I contacted the National Record Center and requested all files and/or documents relating to Mr. Michael West. Responsive files and documents were located and provided to me at the Regional Office. I then sent the documents to HUD Trial Attorney Chris Opfer.


I, Jocelyn Gibson, declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

JOCELYN GIBSON
Equal Opportunity Specialist
Office of Fair Housing and
Equal Opportunity
U.S. Department of Housing
& Urban Development

# EXHIBIT    14

Declaration of Chris Opfer and U.S. mail delivery confirmation receipt and 2 page printout of United States Postal Service Track and Confirm search results for this delivery

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CV 07-0727 RMC |
| V. | ) | |
| | ) | Declaration of Chris |
| ALPHONSO JACKSON, Secretary | ) | Opfer |
| of the United States Department | ) | |
| of Housing and Urban Development, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**DECLARATION OF CHRIS OPFER**

I, Chris Opfer, declare and state as follows:

1. I am a Trial Attorney in the Office of Litigation at the United States Department of Housing and Urban Development ("HUD"), in Washington, D.C. I have been employed in this position for approximately one year. Prior to taking this position, I was an Attorney Advisor in HUD's Atlanta Regional Office.

2. I currently serve as Agency Counsel for HUD in the above styled case.

3. In preparing HUD's defense to Plaintiff's Complaint, I contacted HUD's Office of Fair Housing an Equal Opportunity ("FHEO") to determine whether HUD possessed documents relevant to Plaintiff's FOIA requests at issue in Counts I and II of the Complaint.

4. The FOIA requests concern documents regarding HUD's investigation of fair housing complaints filed by Plaintiff with the Department. Each of these complaints was filed in and investigated by HUD's FHEO field office in St. Louis, Missouri. I was informed by FHEO staff that all documents in HUD's possession relevant to these complaints, if any, are archived in HUD's FHEO Kansas City, Kansas Regional Office.

5. On June 6, 2007, I requested that the HUD FHEO St. Louis and Kansas City Offices search for any and all documents responsive to Plaintiff's FOIA requests.

6.  On or about August 7, 2007, I received a package of documents from HUD Equal Opportunity Specialist Jocelyn Gibson. Ms. Gibson indicated that these are all of the documents in HUD's possession responsive to Plaintiff's FOIA request.

7.  On August 17, 2007, I mailed a copy of the responsive documents to Plaintiff at his address, P.O. Box 1935, St. Charles, MO 63302-1935. All confidential personal information contained in these documents was redacted.

8.  A copy of the U.S. mail delivery confirmation receipt is attached to this Declaration.

I, Chris Opfer, declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

CHRIS OPFER
Trial Attorney
Office of Litigation
U.S. Department of Housing
& Urban Development

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

WASHINGTON, D.C. 20410

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

POSTAGE AND FEES PAID
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
HUD-401

Mr. Michael West
P.O. Box 1935
St. Charles, MO 63302

## U.S. Postal Service™ Delivery Confirmation™ Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)

*(Please Print Clearly)*

Michael West
PO Box 1935
St. Charles, MO 63302

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access Internet web site at
www.usps.com ®
or call 1-800-222-1811

Postmark
Here

**CHECK ONE (POSTAL USE ONLY)**
☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel

*(See Reverse)*

DELIVERY CONFIRMATION NUMBER:

0306 2400 0542 1000 4540 8502

PS Form 152, May 2002


**UNITED STATES POSTAL SERVICE**®

Home | Help

**Track & Confirm**

# Track & Confirm

## Search Results

Label/Receipt Number: 0306 2400 0001 0541 8503
Status: **Delivered**

Your item was delivered at 7:24 AM on August 20, 2007 in SAINT
CHARLES, MO 63302.

( Additional Details > )  ( Return to USPS.com Home > )

| Track & Confirm |
| --- |
| Enter Label/Receipt Number. |
| |

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   ( Go > )


**POSTAL INSPECTORS**
**Preserving the Trust**     site map   contact us   government services   jobs   **National & Premier Accounts**
Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy


**UNITED STATES**
**POSTAL SERVICE®**

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: 0306 2400 0001 0541 8503
Detailed Results:

- **Delivered, August 20, 2007, 7:24 am, SAINT CHARLES, MO 63302**
- **Arrival at Unit, August 20, 2007, 5:17 am, SAINT CHARLES, MO 63301**
- **Enroute, August 19, 2007, 8:36 am, HAZELWOOD, MO 63042**
- **Enroute, August 18, 2007, 12:56 am, CAPITOL HEIGHTS, MD 20790**
- **Acceptance, August 17, 2007, 2:28 pm, WASHINGTON, DC 20026**

( < Back )          ( Return to USPS.com Home > )

**Track & Confirm**

Enter Label/Receipt Number.

_____

## Notification Options

### Track & Confirm by email

Get current event information or updates for your item sent to you or others by email. ( Go > )

---


**POSTAL INSPECTORS**    site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust    Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use   Privacy Policy

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL WEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0727 (RMC) |
| ) | |
| ALPHONSO JACKSON, Secretary ) | |
| of the Department of Housing ) | |
| and Urban Development, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**ORDER**

UPON CONSIDERATION of Defendant's Motion to Dismiss, or in the Alternative, for

Summary Judgment, Plaintiff's Opposition thereto, and the entire record herein, it is this _____

day of _____, 2007,

ORDERED that Defendant's Motion be and hereby is granted; and it is

FURTHER ORDERED that the above-captioned action should be, and hereby is

DISMISSED from the Court's docket, with prejudice.


_____
ROSEMARY M. COLLYER
United States District Court Judge

Copies of this order to:

Michael West
P.O. Box 1935
St. Charles, MO 63302

Jonathan C. Brumer
Special Assistant United States Attorney
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, N.W., Room E-4815
Washington, D.C. 20530