UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL WEST,                    )
                                 )
              Plaintiff,         )
v.                               )    Case No. 07-0727 (RMC)
                                 )
ALPHONSO JACKSON, Secretary      )
of the Department of Housing and )    **RECEIVED**
Urban Development,               )
                                 )    OCT 1 1 2007
              Defendant.         )
                                 )    NANCY MAYER WHITTINGTON, CLERK
                                      U.S. DISTRICT COURT

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Michael West, *pro se*, moves this court with plaintiff's opposition to defendant's motion to dismiss or, in the alternative, for summary judgment pursuant to Rule 56. In support of this opposition motion, Plaintiff submits a Statement of Disputed Facts; several relevant pieces of correspondences, marked as "P.'s Exhibit(s)" demonstrating Defendant's continuing material misrepresentation practice, the Declaration of Michael West, and Plaintiff's Memorandum of Points and Authorities below. The grounds for this motion in opposition to defendant's motion to dismiss, or for summary judgment are set forth more in detail as follows:

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

The Defendant concedes that in Counts One and Two of Plaintiff's Complaint arise under FOIA. Additionally, the Defendant concedes that Plaintiff filed a disability discrimination complaint. For the reasons set forth below, this suit should move forward because the Defendant has failed to provide an adequate search of FOIA materials, and the disability discrimination complaint may proceed under the Fifth Amendment in lieu of the Fourteenth Amendment of the

United States Constitution;  Rehabilitation Act of 1973, as amended; or Administrative

Procedure Act, 5 U.S.C. 702 ("A person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of the relevant statute, is

entitled to judicial review thereof.")  See e.g., West Decl. at 3, 8-9.

First, Plaintiff contends that the Defendants "Factual and Procedural Background" under "I"

and "II" is hotly contested or disputed.  See Decl. of West at p. 1; Statement of Disputed

Facts at p. 1.  In contrast to Defendant's claims, here Plaintiff filed a discrimination

complaint under DOJ's 28 CFR Part 35.  West Decl. at 1-2.  Under these premises, Plaintiff

filed his cause of action because the Defendant's procedures do not comply with

administrative due process.  Id.; Cf. Doc No. 15 at 2.  Here, Defendant provides no citations

or authorities in support of its new claim that "Plaintiff's fair housing complaint, and in its

finding that 'equal' is the correct standard in investigating, monitoring and closing

discrimination claims under 28 C.F.R. Part 35."  Doc. No. 15 at 3, n. 3.

Significantly, also, the Defendant fails to provide any casual connection or nexus as to how

the Defendant's claim that "[u]nder the program, tenants make rental payments based on their

income and ability to pay; HUD then makes 'assistance payments' to private landlords in an

amount calculated to make up the difference between the tenant's contribution and a 'contract

rent' agreed upon by the landlord and HUD" (Doc. No. 15 at 3) ... to "NECAC" (Doc. No. 15

at 4), ... or how the "Fair Housing Act" applies to a non-landlord, not-for-profit agency, HUD's

active agent "NECAC" (Doc. No. 15 at 4-6).

To date, the Defendant has failed to provide any meaningful review of the underlying

contested and adverse agency action committed by its administering agency, NECAC.  This

claim is supported by the record in this case as the Defendant's failed to attach any verified

agency records that reflect that an adequate, effective, and meaningful reconsideration action was ever conducted by Defendant HUD, as the Defendant's final decision was premised: 1.) on false or perjured evidence of NECAC's claim that Plaintiff was an active participant in "fraud" in which NECAC later recanted without proper notice sent to Plaintiff;  2.) Stephens and Kleewein's false or perjured evidence stating that Plaintiff never lived with Stephens;  3.) NECAC's failure to provide Plaintiff with materials used in support of its adverse HUD action; 4.) HUD's agency failed to make "reasonable accommodations" under federal disability law, 5.) or all of the above. West Decl. at 2-4.

Moreover, Plaintiff vehemently objects to and contests Defendant's discriminatory practice that grants NECAC permission to hold *ex parte* hearings without notifying all interested parties, in which Plaintiff maintains a property interest in receiving HUD housing benefits under its Section 8 program, which fairly states a Due Process claim against Defendant and its Government programs. West Decl. at 3. In light of these facts, a live case and controversy remains or exists under Article III of the United States Constitution.

Defendant claims that "[o]n or about July 27, 2004, Plaintiff filed an administrative complaint with HUD's Office. Doc. No. 15 at 4. However, the Defendant may have mistaken this fact and record as reflected by available correspondence, in which this Defendant failed to disclose these documents with regards to the instant FOIA request. West Decl. at 1-2; See Complaint, FOIA Request of January 24, 2007 ("All communications …pertaining to this instant requestor, Michael West.") It appears that Defendant covertly converted the instant complaint into a Fair Housing Complaint without Plaintiff's written waiver or knowledge of specific procedural rights as guaranteed under 28 CFR Part 35. West Decl. at 2; See Complaint, dated March 24, 2004 directed to HUD's Andrew Boedekker (P.'s Ex. A.)

Additionally, Defendant claims that "[t]he letter also indicated that Plaintiff could ask HUD to reconsider its determination by submitting a request in writing which set forth the specific reasons why he believed the determination to be erroneous." Doc. No. 16 at 6. In contrast, Plaintiff filed requests for reconsideration. West Decl. at 2-6; Letter to Russell, dated December 2 and 4, 2006 (P.'s Ex. B); Statement of Disputed Facts at 2, ¶ 3; at 4, ¶15. Since, to date, the Defendant has failed to take any proper action in this matter, the district court has the authority under Mandamus Act to compel a federal actor to perform a ministerial duty under applicable statutes or regulations. See 28 USC 1361.

Notwithstanding, Plaintiff should not be found at fault for Defendant's failure to file "requests for reconsideration of HUD determinations ...with the Enforcement Support Division of the FHEO at HUD." Doc. No. 15 at 6. As demonstrated, Plaintiff filed requests for reconsideration, but the Defendant failed to take any proper agency action in light of its final decision letter of November 2006. See e.g., West Decl. Therefore, Defendant's claim that "HUD has not received any other requests for reconsideration from Plaintiff" may be fairly considered as false, misleading, or untrue. Doc. No. 15 at 6.

Second, Defendant claims with regards to two FOIA requests that HUD notified Plaintiff that HUD received Plaintiff's FOIA requests on "February 21, 2007." Doc. No. 15 at 8. However, as noticed from the separate e-mail copy sent to personal attention of HUD's Mr. Russell's office, he received the January 24, 2007 FOIA requests on "January 24, 2007" and not February 21, 2007. See D.'s Ex. 3 & 4. Similarly, the Defendant received Plaintiff's second January 24, 2007 FOIA requests on "January 24, 2007." See D.'s Ex. 3 & 4. From this record, it appears that the Defendant concedes that HUD's Mr. Russell's office failed to provide a FOIA

acknowledgment letter in violation of HUD's own statute, 24 CFR § 104(a) (See Russell Decl.) and, in further violation of E-FOIA.

Significantly, to date, Plaintiff has not received any correspondence or materials from HUD's Cynthia O'Connor, despite her declaration. West Decl. at 5-6. Additionally, it is fairly noticed that the Defendant failed to attach any credible evidence that reflects that HUD sent the proffered O'Connor letter to Plaintiff *by email* or otherwise (emphasis added). Upon information and belief, the Defendant's Exhibit 6 consists of recently fabricated false or perjured documentary evidence when compared to the false, misleading, or untrue sworn declarations of Mr. Turner Russell (Ms. O'Connor's immediate supervisor). West Decl. at 3-5; Statement of Disputed Facts at 3-6; P.'s Memo of Points & Authorities at 5, below.

Similarly, as demonstrated in Plaintiff's "Statement of Disputed Facts," there was no evidence proffered by Defendant that reasonably reflects that *all* communications and documents were ever entered into a "Chron File" or "Teapots." Id. at 5 (Emphasis added).

Significantly, as demonstrated in Statement of Disputed Facts and other relevant materials, the Defendant's claims that it provided all materials responsive to the FOIA requests fail. West Decl. at 1-2, 7-8.

Similarly, both the Opfer Declaration (Doc No. 15-15) and Gibson Declaration (Doc. No. 15-13) do not even attempt to address nor reasonably mention the Defendant's unfair withholding of the *Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts* materials relevant to the Plaintiff's FOIA requests (emphasis added). West Decl. at 1-2, 7-8; Statement of Disputed Facts at 5-8; Cf. Doc. No. 15 at 10-11, 30. Landmark v. EPA, 272 F.2d 59 (DC Cir 2003) citing Weisberg v. U.S. DOJ, 745 F.2d 1476 (DC Cir. 1984). Here, the Defendant failed to conduct a thorough search. West Decl. 1-2, 7-8. Landmark ("EPA's search of its substantive and regional

components complies with exhortations that an 'agency cannot limit its search' to only one or more places if there are additional sources that are likely to turn up the information requested.") Additionally, the Defendant's affidavits do not reflect that HUD searched its paper files. West Decl. at 5. Landmark citing Campbell v. United States DOJ, 164 F3d 20, 28 (DC Cir 1998) (stating that an agency cannot limit its search to one records system if another system is likely to yield responsive information).

For similar reasons, as stated above, the Defendant has failed to proffer any credible evidence that the Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts materials were ever entered into HUD's tracking system. Cf. Doc. No. 15 at 11; D.'s Ex. 14.

Third, the Defendant claims that Plaintiff never filed FOIA appeal(s). Doc. No. 15 at 12. However, as reflected by the Plaintiff's proffered materials, Plaintiff filed appeals with HUD. As similar stated above, whether the Defendant satisfactorily entered the February 12, 2007 FOIA appeals into its tracking system is beyond Plaintiff's control or expertise. Here, the controlling statute clearly provides that after twenty-days of no response by federal agency that an appeal may be filed with that same agency under 5 USC 552(a). The Plaintiff may have fairly satisfied this administrative requirement, despite Defendant's claim. See D.'s Ex 5.

## BRIEF ARGUMENT

Summary judgment (or dismissal) in favor of Defendant and against Plaintiff is not appropriate in this case.

First, as supported by the record in this case, the Plaintiff exhausted his administrative remedies before filing suit in this Federal court. Here, it cannot be said from this record that either the Defendant did not timely receive the FOIA requests or the FOIA appeal materials, or

both. Therefore, the Defendant's citations and authorizes are misplaced or readily distinguished. Cf. Doc. No. 15 at 15-23.

For one example of several examples, Defendant does not proffer any substantial evidence that reflects that any proper notices were ever sent by Defendant to Plaintiff indicating that Plaintiff's FOIA requests and appeals were deficient in any manner. Likewise, HUD's Mr. Russell never dispatched an acknowledgement letter, much less provided any written notice that the FOIA requests were deficient. Russell Decl.; Cf. Doc. No. 15 at 18 ("[T]hat office will send it to the correct office within 10 working days and will send [the requester] an acknowledgment letter. See 24 C.F.R. § 15.104(a)") In contrast, Defendant now provides its self-serving, after-the-fact defense or claim that Plaintiff "failed to exhaust his administrative remedies." Doc. No 15 at 15-16. Of particular significance, the Defendant failed to mention the fact that HUD also failed to follow its own statutes, as illustrated above.

As may be applicable to the instant case, the Defendant waived any claim or procedural bar inasmuch that alleges that Plaintiff failed to send his FOIA requests to the appropriate HUD office, despite HUD's clear and unambiguous statute that provides in such a case that HUD would direct the FOIA materials to the appropriate office should it by chance cross the wrong desk. See FOIA Appeals of February 12, 2007 ("[I]f this FOIA Appeal has crossed your desk by mistake, it is respectfully requested that you immediately forward it to the appropriate office pursuant to HUD's 24 C.F.R. §§ 15.104(a), 15.111.") It can be said from this record that the Plaintiff's FOIA requests was reasonable in light of HUD's own regulation, 24 CFR § 15.104(a).

Most significantly, to date, Defendant never apprised the Plaintiff that he sent his FOIA materials and requests to the wrong office; therefore, effectively waived this issue with regards to the present lawsuit. Cf. Russell Decl. Moreover, Mr. Russell's office, in part, was directly

responsible for the FOIA materials that pertained to his office, such as the Plaintiff's request for reconsideration and all related correspondence. Additionally, Plaintiff did not "chose to skip a step" in light of the fact that Plaintiff did not receive any responsive materials from Defendant HUD. Doc. No. 15 at 22; West Decl. 5-6.

Second, HUD failed to conduct an adequate search and failed to reasonably respond to Plaintiff's FOIA requests. As previously demonstrated above, the Defendant has failed to proffer any credible evidence that the Defendant released the Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts materials to Plaintiff. Plaintiff relies on 5 U.S.C. § 552(a)(4)(B); see also Coastal States Gas Corp. v. Dep't of Energy, 199 U.S. App. D.C. 272, 617 F.2d 854, 861 (D.C. Cir. 1980) ("[T]he burden is on [the agency] to establish [its] right to withhold information from the public."). To date, the Defendant fails to cite any recognized exemption or right to withhold these requested materials enumerated immediately above.

Although the Defendant's affidavits could be read as suggesting that HUD uses its "Fair Housing Complaint" records to determine individual's records related to her/him, the same affidavits indicates that HUD did *not* search any records that were not themselves "responsive" to West's FOIA requests – that is, it did not search any records other than fair housing investigation files. See Gibson Decl. Needless to say, the fair housing files themselves disclose nothing on this point, other than that there were some materials found sometime. See Gibson Decl. at 2. When they were found? That question remains unanswered. See Weisberg v. United States Dep't of Justice, 745 F.2d 1476 (DC Cir 1984).

Similarly, the Russell Decl. should not be afforded much weight in this matter for same reasons stated above. See Statement of Disputed Facts at 2-5; Cf. Doc. No. 15 at 26. Despite Defendant's claim that all responsive documents were provided to Plaintiff, this claim falls on

its face because the Defendant failed to produce the *all* Turner Russell (HUD Enforcement Support Division) correspondence (emphasis added). See P.'s Exhibits; Cf. Doc. No. 15 at 27.

More disturbing to Plaintiff is the fact that Defendant then attempts to divert attention away from the improperly withheld FOIA materials with regards to withholding HUD's Turner Russell materials by claiming that "if HUD possessed any documents relevant to complaint at issue in Plaintiff's FOIA requests, they would be archived in HUD's FHEO Kansas City [ ]office. See Ex. 14, Opfer Decl. ¶4." Doc. No. 15 at 27. Remarkably, the Defendant fails to reasonably explain why the reconsideration materials may have been directed to Mr. Turner Russell and all related correspondence would be sent back to and archived at the HUD Kansas City office. See P.'s Exhibits. See e.g. McGehee v. CIA, 225 U.S. App. D.C. 205, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (describing a test for when referrals result in improper withholding). There is no mention within Mr. Russell's Decl. that stated at any time that he or his office forwarded materials sent to his attention at HUD's Washington D.C. Headquarters and then redirected these same materials back to the Midwest Regional office for official entry into HUD's tracking system(s), nor does the Defendant adduce any evidence of a policy in effect to support of this claim. As such, the Defendant(s) utilized a search method that could not help but fail in the circumstances in this case.

Here, Plaintiff's Exhibits fairly reflect that if the Defendant did indeed perform an adequate search of HUD's Kansas City Office, then that same office failed to reasonably enter Plaintiff's files or documents into its tracking system. See P.'s Exhibits.

Under these facts, the Defendant failed to provide an adequate search and respond to Plaintiff's FOIA requests. As a result, the Defendant's conclusory affidavit(s) and without

providing specificity may not be not be proper to grant Defendant's motion to dismiss or summary judgment.

Accordingly, we cannot conclude that HUD's search method(s) was reasonably calculated to determine whether the Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts materials were available or not available.

Third, the Defendant's claim that this case is moot is not supported by this record. Cf. Doc. No. 15 at 29. To date, "the Defendant has failed to proffer any credible evidence that the Defendant released the Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts materials to Plaintiff." West Decl. at 1-2, 6-8.

Fourth, the Defendant continues to misrepresent Plaintiff disability discrimination complaint under 28 CFR Part 35. West Decl. at 8-9; Cf. Doc. No. 15 at 31. As partially shown within Plaintiff's original complaint filed with HUD on March 24, 2004, the complaint(s) is not solely limited to HUD's administering agency, NECAC...but pertains to HUD itself and its discriminatory procedures in violation of Due Process. Mathews v. Eldrige, 424 U.S. 319 (1976), and its progeny. West Decl. at 1-2; See P.'s Ex. A. The United States Supreme Court has consistently held "that some form of hearing is required before an individual is finally deprived of a [protectable] interest" because "the right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society.'" Mathews, 424 U.S. at 333 (internal quotation omitted).

The Federal Rules govern here. Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. "The U.S. Supreme Court has recognized that the denial of benefits on the basis of gender stigmatizes members of the disfavored class." Complaint at 7, ¶ ¶ 39-40. "This recognition may be

reasonably applied for denial of benefits on the basis of disability." Id. Nowhere does HUD contend that West's statement of this disability claim is inadequate or that HUD has insufficient information from which to prepare an adequate defense. See Fed. R. Civ. P. 12(e).  In contrast, the Defendant's Russell declaration partially describes the procedural status of every West administrative complaint that could possibly serve as the basis for this action, thereby demonstrating that HUD already has sufficient information to raise affirmative defenses with respect to this claim.

Nevertheless, it is irrefutable that HUD's Headquarters and Mr. Turner Russell's office are situated within the venue of this district court, in which this court has close access to direct his release of improperly withheld FOIA materials directed to his attention. See 28 U.S.C. § 1391(e).  In contrast, the Defendant does not cite any authorities for investigating HUD employee(s) discriminatory practices against Plaintiff/applicant. Under these facts, Plaintiff does not have an adequate remedy, in which the APA may be invoked.

Fifth, Plaintiff concedes that the Fourteenth Amendment may not necessarily apply to HUD. Cf. Doc. No. 15 at 32. However, the Fifth Amendment does apply to this federal agency and the court should grant leave to amend the complaint to reflect this fact. 28 CFR Part 35 prescribes HUD's duties once a charge is filed.  Here, the Defendant's duty is both mandatory and unqualified. Therefore, mandamus may be appropriate under 28 U.S.C. § 1361.

In United States v. Gaubert, the Supreme Court set forth a two-part test for determining whether a challenged government action is protected as a discretionary function.  First, the exception "covers only acts that are discretionary in nature, acts that 'involve an element of judgment or choice.' " Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536). This "requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy

specifically prescribes a course of action for an employee to follow.' " <u>Gaubert</u>, 499 U.S. at 322 (<u>quoting</u> <u>Berkovitz</u>, 486 U.S. at 536).

Second, even if "the challenged conduct involves an element of judgment," that judgment must be "of the kind that the discretionary function exception was designed to shield." <u>Gaubert</u>, 499 U.S. at 322-23 (<u>quoting</u> <u>Berkovitz</u>, 486 U.S. at 536). Because the exception was designed to " 'prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort,' " the Court concluded that "the exception 'protects only governmental actions and decisions based on considerations of public policy.' " <u>Gaubert</u>, 499 U.S. at 323 (<u>quoting</u> <u>Berkovitz</u>, 486 U.S. at 537).

Similarly, since Defendant has an affirmative duty to perform a ministerial acts under 28 CFR Part 35, and the Defendant's failure to comply with the controlling statute(s) may be review as arbitrary and capricious, or otherwise not in accordance with law under APA. And, therefore, "ripe for review" by this district court under 5 U.S.C. §702; <u>Cf.</u> Doc. No. 15 at 33.

In further support, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." <u>Chevron</u>, 467 U.S. 837, 843 n. 9 (1984).

Moreover, since HUD has the authority to sue, it likewise should have the ability to be sued. Defendant fails to provide any citations to the contrary.

Sixth, the Defendant contends that the Fair Housing Act controls this case. Doc. No. 15 at 34. However, Plaintiff may rely on 28 CFR Part 35, Rehab Act of 1973, Fifth Amend., and APA. Here, as relevant to the instant case, these statutes enumerated do not appear to confer upon Defendant "agency discretionary." <u>Id.</u>; <u>See</u> <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971). In Bivens, the victim of such a deprivation could sue for the violation of the

Amendment itself, despite the lack of any federal statute authorizing such a suit. The existence of a remedy for the violation was implied from the importance of the right violated.

Therefore, Defendant's authorities relied upon are misplaced or distinguished from the instant case.

Seventh, in light of the original "disability discrimination" complaints filed against HUD employee(s) and its agents, Fifth Amendment Due Process and the enumerated statutes cited above confers a clear statutory right. See e.g. 28 CFR Part 35.

Additionally, the procedures employed by HUD and its agents are questionable at a minimum as they do not comport with Due Process as guaranteed by the Fifth Amendment to the United States Constitution.

Additionally, as an applicant qualified for Section 8 rental assistance, Plaintiff has a clear right to Due Process with respect to access to and review of the evidence used in support of HUD program adverse agency actions under the Fifth Amendment. To date, despite several requests, both HUD and its administering agency (NECAC) failed to provide all materials and evidence used in support of its adverse agency action denying Plaintiff West's application for housing benefits. West Decl. at 7; See P.'s Exhibits. A favorable ruling from this court may redress this injury and issue.

Additionally, HUD's failure to provide "reasonable accommodations" with regards to its application process states a claim that a favorable decision by this court can redress. In contrast, the Defendant fails to adduce any evidence that reflects that he had not presented and fairly exhausted his disability discrimination claims against HUD, and its agents, before filing the instant lawsuit. Cf. Doc. No. 15 at 36-37. Plaintiff has no other adequate remedy.

Therefore, Defendant's authorities relied upon are misplaced or distinguished from the instant case.

Eighth, the Defendant alludes to mixing-and-matching Plaintiff's disability discrimination complaints by falsely claiming that "28 C.F.R. Part 35 does not create any affirmative duties with respect to HUD's investigation of fair housing complaints such as Plaintiff's." Doc. No.15 at 38. Here, 28 CFR Part 35 provides both a "mandatory and unqualified" duty upon this Defendant. Supra. Additionally, the Defendant's failure to cite its authority to deny Plaintiff's application for Government benefits should be reviewed by this court for abuse of discretion. West Decl. at 2.

Notwithstanding, in the event that Title II of ADA does not reasonably apply to the federal government (Doc No. 15 at 38) … certainly the Fifth Amendment or Rehabilitation Act of 1973, as amended, or both, may apply to federal actors (or other applicable statute pertaining to federal government employees). See also Bivens. Here, the Defendant remains silent with regards to these facts despite being sued before (citations omitted). Moreover, Defendant's discriminatory practice of denying a qualified applicant's Government housing benefits should be reviewed under APA as "arbitray and capricious," or otherwise not in accordance with law, under 5 U.S.C. § 702 et seq.

Ninth, Defendant claims that the Fourteenth Amendment is inapplicable or "does not apply to the Federal Government." Doc. No. 15 at 39. As conceded above, here the Fifth Amendment may be fairly substituted in place of the Fourteenth Amendment. Therefore, the district court may invoke jurisdiction over Count III in this case.

In sum, there is a serious question whether HUD's alleged Fair Housing Act complaint files represented a reasonable response to the Plaintiff's FOIA requests. Here, it appears that the

Defendant collects information and materials, selects which documents the Government will use or enter its tracking system(s), and the HUD recorder then allegedly did not retain that portion of the Government Information s/he did not enter into its tracking system. Remarkably, there are no affidavits adduced by this Defendant that reflect any HUD employee responsible for entering incoming or outgoing documents and materials into HUD's tracking system(s). Additionally, the court should consider other factors as to whether the Government has made reasonable use of the information readily available to it, and whether there exists reasonable alternative methods that the Government failed to employ. Likewise, whether HUD discriminated against a qualified applicant raises a live Article III "case and controversy." These are questions that have yet been answered, and the district court should address.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this court grant Plaintiff motion to deny Defendant's motion to dismiss or, in the alternative, summary judgment,, to grant Plaintiff summary judgment because HUD's search in response to West's FOIA request was inadequate and unreasonable, and grant Plaintiff any other favorable relief fit in the premises.

*****

Respectfully submitted this _9th_ day of October 2007.


Michael West, *pro se*
P.O. Box 1935
St. Charles, MO 63302
No phone

## CERTIFICATE OF SERVICE

I certify that a true and complete copy of the foregoing motion, Declaration of Michael West and Exhibits, and Plaintiff's Disputed Facts were placed in the U.S. Mail, postage pre-paid, this 9th day of October 2007, to

Jeffrey Taylor
U.S. Attorneys Office
555 Fourth St., N.W., Rm E4816
Washington, D.C. 20530

16 of 16

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07-0727 (RMC) |
| | ) | |
| ALPHONSO JACKSON, Secretary | ) | |
| of the Department of Housing and | ) | |
| Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MICHAEL WEST

Michael West hereby declares as follows:

1.      I am the Plaintiff in this case and submit this declaration, pursuant to Federal Rules of Civil Procedure, in support of denying Defendant's motion to dismiss, or in the alternative, summary judgment. Summary judgment should be granted to Plaintiff in this case.

2.      Attachment A hereto is a true and complete copy of original discrimination Complaint, dated March 24, 2004, as received by Defendant HUD's Andrew Boedekker from Plaintiff West. Pursuant to the instant FOIA requests, Defendant improperly withheld these materials in violation of FOIA.

3.      Attachment B hereto is a true and complete copy of Request for Reconsideration e-mail materials, dated December 2, 2006, as received by Defendant HUD's Turner Russell from Plaintiff West. Pursuant to the instant FOIA requests, Defendant improperly withheld these materials in violation of FOIA.

4.      Attachment C hereto is a true and complete copy of original discrimination Complaint, dated December 4, 2006, as received by Defendant HUD's Turner Russell from

Plaintiff West.  Pursuant to the instant FOIA requests, Defendant improperly withheld these materials in violation of FOIA.

5.    Attachment D hereto is a true and complete copy of reply correspondence with regards to Plaintiff West's discrimination Complaint, dated December 4, 2006, dispatched from HUD's "Eddie [Warrts]" to "Turner [Russell]", which was inadvertently or mistakenly sent to Plaintiff West.  Pursuant to the instant FOIA requests, Defendant improperly withheld these materials in violation of FOIA.

6.    Attachment E hereto is a true and complete copy of "West v. HUD" correspondence, dated September 17, 2007, as received by Plaintiff West from Defendant HUD's trial counsel Christopher R. Opfer *via* e-mail in September 2007.  Pursuant to the instant FOIA requests, Defendant improperly withheld these materials in violation of FOIA.

7.    Plaintiff originally filed disability discrimination complaint(s) pursuant to Federal disability and discrimination laws, e.g., failure-to-accommodate claims under Section 504 of the Rehabilitation Act of 1973, discriminatory housing assistance application process, or alternatively Defendant's "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law" process needing judicial review pursuant to 10(e) of the APA, 5 U.S.C. 706.  See P.'s Exhibit  A .  A fair review of the attached complaint Exhibit A reflects that on March 24, 2004 a disability discrimination complaint was filed against HUD employee(s). Additionally, Plaintiff originally filed a disability discrimination complaint against HUD's administering agency pursuant to 28 CFR Part 35.  See Emails from and to HUD's Pam Kosuth. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof."  5 U.S.C. 702.  See 5 U.S.C. 551(13), 5 U.S.C. 701(b)(2).  On one hand, it appears that there is no

mention of these facts in Defendant's motion to dismiss (Doc. No. 15).  On the other hand, Defendant does not cite any authorities to grant or deny Plaintiff's housing assistance application and its program. Cf. 24 CFR § 982.552.

8.    Mr. Mraz was a prior investigator for HUD's administering agencies "failure to make reasonable accommodations" under Title II of ADA.  Russell Decl. at 3.  It appears that neither the Russell Decl., nor the Montgomery Decl. stated these irrefutable facts.

9.    Pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to Plaintiff's *first* "requests for reconsideration from Mr. West" to and from Mr. Russell's office "[b]eginning sometime in December 2004, and continuing through mid 2005" with regards to the Mraz investigation. Id.  Emphasis added.

10.    Defendant claims that it had "determined that no reasonable cause exists to believe that a discriminatory housing practice ha[d] occurred." Doc. No. 15 at 2-3, ¶ 3.  In contrast, HUD and its administering agency failed to make reasonable accommodations. Supra.

11.    Remarkably, HUD and its administering agents appear to regularly conduct unfair *ex parte* hearings in which Plaintiff was denied reasonable notice and opportunity to attend hearing -- despite Plaintiff West's property interests in receiving government housing benefits. See West's Request for Reconsideration -- forwarded through Mr. Eddie Wartts St. Louis HUD Office to Mr. Turner Russell D.C. HUD Office (2006).  Pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to these second requests for reconsideration.

12.    Defendant claims that the agency's final decision letter indicated "that Plaintiff could ask HUD to reconsider its determination by submitting a request in writing which set forth the specific reasons why he believed the determination to be erroneous." Doc. No. 15 at 3, ¶ 4.

13.    Additionally, Defendant claims that he "has not received any other requests for reconsideration from Plaintiff." Doc. No. 15, ¶ 5. In contrast, the Plaintiff submitted second requests for reconsideration with regards to the Montgomery investigation. See P.'s Exhibit  B .

14.    Upon information and belief, Mr. Russell's affidavit may be reasonably considered as false, misleading, or untrue because he clearly states that his "office has not received any other requests for reconsideration from Mr. Michael West." Russell Decl. at 3, ¶ 10. In contrast, on December 2, 2006, Mr. Russell apparently received Plaintiff's additional "request for reconsideration." Supra, P.'s Exhibit  B . Cf. P.'s Exhibit C & D.

15.    Pursuant to these instant FOIA requests, the Defendant failed to provide any and all materials responsive to Plaintiff's *second* "requests for reconsideration from [Mr. West]" with regards to the Montgomery investigation. Doc. No. 15 at 3, ¶ 5. Emphasis added.

16.    Defendant claims that "On January 24, 2007, Plaintiff sent a FOIA request via email to Mr. Turner Russell…" Doc. No. 15 at 3-4, ¶ 6. In contrast, Mr. Russell claims "that [he] did not receive also requesting that HUD provide…" Russell Decl. at 2, ¶ 4. Remarkably, Mr. Russell states only a conclusion without any supporting facts nor provides any verifiable and substantial evidence that his email was not working during this period of time (with regards as to why he allegedly did not timely receive an email sent to his personal attention and email address).

17.    Here, on December 4, 2006, Mr. Eddie Wartts of St. Louis HUD used the same email address of Mr. Russell that Plaintiff West utilized or employed.   To date, no one has indicated to Plaintiff West that HUD's email was not working properly on any particular date. In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all

materials responsive to communications of Mr. Eddie Wartts of St. Louis HUD with regards to

"Michael West." Russell Decl. at 2, ¶ 4. <u>See</u> P.'s Exhibit _D_ .

18.    Defendant claims that "HUD had not received copies of Plaintiff's January 24,

2007 [FOIA Appeal] letter until they arrived in HUD's offices as attachments to Plaintiff's

February 12, 2007 [FOIA] letter. Doc. No. 15 at 5, ¶ 8. In contrast, HUD's Mr. Turner timely

received these materials at the time that they were dispatched <i>via</i> email and first class U.S. mail.

19.    Upon information and belief, Plaintiff should not be faulted for any delays

attributed to or directly caused by Mr. Russell's failure to forward these FOIA materials to the

appropriate office, if it was indeed necessary. <u>Cf.</u> Russell Decl. 2, ¶ 6 ("In response to the FOIA

identified in Number 4 above, I conducted a thorough search....") <u>Cf.</u> <u>Id.</u> at 6, ¶ 11 ("Mr.

Russell conducted a thorough search...[but] did not however locate any document or record.")

<u>But see</u> Russell Decl. at 3, ¶ 9 ("Beginning sometime in December 2004, and continuing through

mid 2005, my office received requests for reconsideration from Mr. Michael West.") Pursuant to

the FOIA requests, to date, Plaintiff has not received any and all correspondence from Mr.

Russell's office related to these specific "requests for reconsideration." <u>Id.</u>

20.    Remarkably, within the Russell Declaration, Mr. Russell does not provide any

specific details of what he searched with regards to "paper" or "electronic" files with respect to

discrimination complaints filed against his subordinate employees. <u>See</u> P.s Exhibits A-D. Here,

the Russell declaration appears to provide only limited information and prohibitive narrowly

alleged search for "fair housing" materials. Russell Decl. at1.

21.    To date, Mr. Russell did not provide any responsive "acknowledgment" letter

directed to Plaintiff indicating that he was personally conducting a thorough search of the

requested FOIA materials in violation of FOIA.

22.    Plaintiff never received anything from HUD's Ms. O'Connor with regards to e-FOIA requests. Remarkably, the Defendant did not provide any material evidence that fairly reflects that Ms. O'Connor sent any reply e-mails to Plaintiff West. Additionally, Defendant does not provide any clear evidence that reflects that Ms. O'Connor sent Plaintiff anything *via* U.S. mail during this period of time with regards to the instant e-FOIA requests and appeals. Cf. Doc. No. 15 at 8, ¶ 16 ("Plaintiff received this delivery ... attached U.S. Mail delivery confirmation" from Mr. Opfer.)

23.    Defendant claims that a "Chron File" and "Teapots" track information. Doc. No. 15 at 5-6, ¶ 10. In contrast, as appears to Plaintiff West that Defendant does not claim that either Chron or Teapots track all of Mr. Wartt's or Mr. Russell's correspondence with regards to requests for reconsideration or disability discrimination complaints filed against HUD employees/agents, as well as all materials relevant to such matters. See P's Exhibits A-D. Moreover, there is no evidence adduced by the Defendant that reasonably demonstrates that the Wartts or Russell materials were ever logged into these information tracking systems.

24.    Defendant claims that by "letter dated April 24, 2007, Cynthia O'Connor of HUD notified Plaintiff ...." In contrast, as illustrated in paragraph 22 above, Plaintiff never received anything from Ms. O'Connor. Additionally, Defendant does not provide any clear and convincing evidence that reflects that Ms. O'Connor sent Plaintiff anything during this period of time with regards to the instant e-FOIA requests and appeals. Cf. Doc. No. 15 at 8, ¶ 16 ("Plaintiff received this delivery ... attached U.S. Mail delivery confirmation" from Mr. Opfer.)

25.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. However, as illustrated above, the Defendant failed to provide an adequate search of the

requested FOIA materials, with special notice provided to all communications from the HUD

Offices of Mr. Eddie Wartts or Mr. Turner Russell, or both, with regards to Plaintiff "Michael

West." Russell Decl. at 3. See P.'s Exhibit C.

26.    Defendant claims "that these documents are all of the documents in HUD's

possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. Pursuant

to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to

all communications of Mr. Andrew Boedekker of HUD with regard to "Michael West."

27.    Defendant claims "that these documents are all of the documents in HUD's

possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. Pursuant

to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to

all communications of Ms. Patricia A. Straussner of HUD with regard to "Michael West."

28.    Defendant claims "that these documents are all of the documents in HUD's

possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. Pursuant

to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to

all communications of Ms. Pam Kosuth of HUD with regard to "Michael West."

29.    Defendant claims "that these documents are all of the documents in HUD's

possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. Pursuant

to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to

all communications of Ms. Robbie Henderson of HUD with regard to "Michael West."

30.    Defendant claims "that these documents are all of the documents in HUD's

possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. Pursuant

to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to

all communications of Ms. Nelva Owens, HUD's administering agency employee, with regard to "Michael West."

31. Defendant claims that he did not receive Plaintiff's FOIA Appeal. Doc. No. 15 at 8, ¶ 18; See Generally, Ackerman Decl. In contrast, it appears that both HUD's Mr. Russell and Ms. O'Connor received a copy of Plaintiff's original FOIA Appeal materials. Upon information and belief, Plaintiff should not be faulted for HUD's failure to properly identify the February 12, 2007 correspondence as a "Freedom of Information Act Appeals." D.'s Ex. 5.

32. Before filing suit, Defendant failed to provide any responsive materials with regards to Plaintiff's January 24, 2007 *first or second* "Freedom of Information Act Requests." D.'s Ex. 3 & 4. Emphasis added.

33. Defendant now claims that it provided a thorough search of the requested FOIA materials. However, as illustrated above, the Defendant clearly failed to provide an adequate search and remains unresponsive in light of the non-exempt withheld or "missing" Boedekker, Henderson, Kosuth, Owens, Straussner, Russell, and Wartts materials and correspondence.

34. Upon information and belief, it cannot be said from this record that the Defendant did not receive the instant FOIA Requests and Appeal materials. Russell Decl. at 2, ¶ 4; D.'s Ex. 6.

35. Upon information and belief, it cannot be said from this record that the Defendant provided an adequate search and fairly responded to the instant FOIA requests with regards to the non-exempt improperly withheld correspondence and materials of HUD's Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts, illustrated above in violation of FOIA.

36. With respect to this instant lawsuit, Plaintiff also challenges HUD's "discriminatory practices" of unfairly:

A. refusing to make "reasonable accommodations";

B. refusing to grant Plaintiff's housing assistance program application;

C. conducting *ex parte* hearings without Plaintiff applicant's knowledge or consent;

D. refusing to provide Plaintiff with a timely administrative "request for reconsideration" procedure;

E. refusing to provide Plaintiff with a timely administrative "disability discrimination" complaint procedure;

F. refusing to timely respond to Plaintiff's e-mails or written correspondence with regards to routine business or investigative matters;

G. failing to investigate claims of "false or perjured evidence" offered in support of this federal agency's findings of fact and conclusions of law in violation of Due Process;

H. failing to correct its false or perjured evidence when substantial evidence refutes HUD's reported factual findings and conclusions of law in violation of Due Process.

I declare under the penalty of perjury that the foregoing is true and correct, or is based on my best information.

Executed this 9th day of October 2007.

Michael West

9 of 9

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL WEST,           )
                                 )
         Plaintiff,       )
v.                           )    Case No. 07-0727 (RMC)
                                 )
ALPHONSO JACKSON, Secretary   )
of the Department of Housing and   )
Urban Development,         )
                                 )
         Defendant.     )

## STATEMENT OF DISPUTED FACTS

Pursuant to Local Rule 7(h), Plaintiff submits his statement of disputed material facts as to which there is a genuine issue and controversy:

1.    The Defendant claims that a "Fair Housing Discrimination Complaint" was filed against its administering agency, NECAC. Doc. No. 15 at 1-2. In contrast, Plaintiff originally filed a disability discrimination complaint pursuant to Federal disability and discrimination laws, e.g., failure-to-accommodate claims under Section 504 of the Rehabilitation Act of 1973, or alternatively "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law" pursuant to 10(e) of the APA, 5 U.S.C. 706. A true and complete copy is attached and marked as P.'s Exhibit _A_. A fair review of the attached complaint reflects that on March 24, 2004 a disability discrimination complaint was filed against HUD employee(s). Additionally, Plaintiff originally filed a disability discrimination complaint against HUD's administering agency pursuant to 28 CFR Part 35. See Emails from and to HUD's Pam Kosuth. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. 702.

See 5 U.S.C. 551(13), 5 U.S.C. 701(b)(2). There is no mention of these facts in Defendant's motion to dismiss (Doc. No. 15).

2.    The Defendant implicitly claims that Franklin Montgomery originally investigated the disability discrimination complaint. Doc. No. 15 at 2. In contrast, Mr. Mraz was a prior investigator for HUD's administering agencies "failure to make reasonable accommodations" under Title II of ADA. Russell Decl. at 3. Neither the Russell Decl., nor the Montgomery Decl. stated these irrefutable facts.

3.    Mr. Russell claims that his "office received requests for reconsideration." Russell Decl. at 3, ¶ 9. In contrast, pursuant to the instant FOIA request, the Defendant failed to provide any and all materials responsive to Plaintiff's *first* "requests for reconsideration from Mr. West" to and from Mr. Russell's office "[b]eginning sometime in December 2004, and continuing through mid 2005" with regards to the Mraz investigation. Id. Emphasis added.

4.    Defendant claims that it had "determined that no reasonable cause exists to believe that a discriminatory housing practice ha[d] occurred." Doc. No. 15 at 2-3, ¶ 3. In contrast, as stated above, HUD and its administering agency failed to make reasonable accommodations. Supra.

5.    Remarkably, HUD and its administering agency conduct unfair *ex parte* hearings in which Plaintiff was denied reasonable notice and opportunity to attend hearing despite his property interests in government housing benefits. See West's Request for Reconsideration -- forwarded through Mr. Eddie Wartts St. Louis HUD Office to Mr. Turner Russell D.C. HUD Office (2006). In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to these second requests for reconsideration.

6.    Defendant claims that the agency's final decision letter indicated "that Plaintiff could ask HUD to reconsider its determination by submitting a request in writing which set forth the specific reasons why he believed the determination to be erroneous." Doc. No. 15 at 3, ¶ 4.

7.    Defendant claims that he "has not received any other requests for reconsideration from Plaintiff." Doc. No. 15, ¶ 5. In contrast, the Plaintiff submitted second requests for reconsideration with regards to the Montgomery investigation. A true and complete copy is attached and marked as P.'s Exhibit __B__.

8.    Moreover, Mr. Russell's affidavit may be reasonably considered as false, misleading, or untrue because he clearly states that his "office has not received any other requests for reconsideration from Mr. Michael West." Russell Decl. at 3, ¶ 10. In contrast, on December 2, 2006, Mr. Russell apparently received Plaintiff's additional "request for reconsideration." Supra, P.'s Exhibit __B__. Cf. Below, P.'s Exhibit C.

9.    Additionally, to date, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to Plaintiff's *second* "requests for reconsideration from [Mr. West]" with regards to the Montgomery investigation. Doc. No. 15 at 3, ¶ 5. Emphasis added.

10.    Defendant claims that "On January 24, 2007, Plaintiff sent a FOIA request via email to Mr. Turner Russell…" Doc. No. 15 at 3-4, ¶ 6. In contrast, Mr. Russell claims "that [he] did not receive also requesting that HUD provide…" Russell Decl. at 2, ¶ 4. Remarkably, Mr. Russell states only a conclusion without any supporting facts and does not provide any verifiable facts that his email was not working during this period of time as to why he did not receive an email sent to his personal attention and email address.

11.    Here, on December 4, 2006, Mr. Eddie Wartts of St. Louis HUD used the same email address of Mr. Russell with regard to Plaintiff.   Neither indicated that HUD's email was not working properly.  In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to communications of Mr. Eddie Wartts of St. Louis HUD with regard to "Michael West." Russell Decl. at 2, ¶ 4.  A true and complete copy of Mr. Wartts' email to Mr. Russell of Dec. 4th, 2006 is attached and marked as P.'s Exhibit _C_ .

12.    Defendant claims that "HUD had not received copies of Plaintiff's January 24, 2007 [FOIA Appeal] letter until they arrived in HUD's offices as attachments to Plaintiff's February 12, 2007 [FOIA] letter. Doc. No. 15 at 5, ¶ 8.  In contrast, HUD's Mr. Turner timely received these materials at the time that they were dispatched via email and first class U.S. mail.

13.    Surely Plaintiff should not be faulted for any delays attributed to or directly caused by Mr. Russell's failure to forward these FOIA materials to the appropriate office, if it was necessary.  Cf. Russell Decl. 2, ¶ 6 ("In response to the FOIA identified in Number 4 above, I conducted a thorough search....")  Cf. Id. at 6, ¶ 11 ("Mr. Russell conducted a thorough search...[but] did not however locate any document or record.")  But see Russell Decl. at 3, ¶ 9 ("Beginning sometime in December 2004, and continuing through mid 2005, my office received requests for reconsideration from Mr. Michael West.")

14.    To date, Mr. Russell did not provide a responsive letter directed to Plaintiff that he was conducting a thorough search of the requested FOIA materials in violation of FOIA.

15.    Despite Mr. Russell's alleged thorough search above and the fact that his office received requests for reconsideration, Defendant also claims that "HUD's Executive Secretary, Cynthia O'Connor, notified Plaintiff that HUD had received Plaintiff's February 12, 2007 FOIA request." Doc. No. 15 at 5, ¶ 9.  In contrast, Plaintiff never received anything from Ms.

4 of 7

O'Connor. Additionally, Defendant does not provide any clear evidence that reflects that Ms. O'Connor sent Plaintiff anything during this period of time with regards to the instant FOIA requests and appeal. Cf. Doc. No. 15 at 8, ¶ 16 ("Plaintiff received this delivery ... attached U.S. Mail delivery confirmation" from Mr. Opfer.)

16.    Defendant claims that a "Chron File" and "Teapots" track information. Doc. No. 15 at 5-6, ¶ 10. In contrast, Defendant does not claim that either Chron or Teapots track Mr. Wartt's or Mr. Russell's correspondence and the requests for reconsideration, as well as all materials relevant to such matters. Moreover, there is no evidence adduced by the Defendant that reasonably demonstrates that the Wartts or Russell materials were ever logged into these information tracking systems.

17.    Defendant claims that by "letter dated April 24, 2007, Cynthia O'Connor of HUD notified Plaintiff ...." In contrast, Plaintiff never received anything from Ms. O'Connor. Additionally, Defendant does not provide any clear and convincing evidence that reflects that Ms. O'Connor sent Plaintiff anything during this period of time with regards to the instant FOIA requests and appeal. Cf. Doc. No. 15 at 8, ¶ 16 ("Plaintiff received this delivery ... attached U.S. Mail delivery confirmation" from Mr. Opfer.)

18.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. However, as illustrated above, the Defendant failed to provide an adequate search of the requested FOIA materials, especially with special notice provided to all communications from the HUD Offices of Mr. Eddie Wartts or Mr. Turner Russell, or both, with regards to "Michael West." Russell Decl. at 3. See Supra, P.'s Exhibit C.

19.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to all communications of Mr. Andrew Boedekker of HUD with regard to "Michael West."

20.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to all communications of Ms. Patricia A. Straussner of HUD with regard to "Michael West."

21.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to all communications of Ms. Pam Kosuth of HUD with regard to "Michael West."

22.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to all communications of Ms. Robbie Henderson of HUD with regard to "Michael West."

23.    Defendant claims "that these documents are all of the documents in HUD's possession which are responsive to Plaintiff's FOIA requests." Doc. No. 15 at 7, ¶ 15. In contrast, pursuant to the instant FOIA requests, the Defendant failed to provide any and all materials responsive to all communications of Ms. Nelva Owens, HUD's administering agency employee, with regard to "Michael West."

24.    Defendant claims that he did not receive Plaintiff's FOIA Appeal. Doc. No. 15 at 8, ¶ 18; See *Generally*, Ackerman Decl. In contrast, it appears that both HUD's Mr. Russell and Ms.

O'Connor received a copy of Plaintiff's original FOIA Appeal materials. Surely, Plaintiff should not be faulted for HUD's failure to properly identify the February 12, 2007 correspondence as a "Freedom of Information Act Appeals." D.'s Ex. 5.

25. Defendant failed to provide any responsive materials with regards to Plaintiff's January 24, 2007 *second* "Freedom of Information Act Requests." D.'s Ex. 4. Emphasis added.

26. Defendant claims that it provided a thorough search of the requested FOIA materials. However, as illustrated above, the Defendant clearly failed to provide an adequate search and remains unresponsive in light of the non-exempt withheld or "missing" Boedekker, Henderson, Kosuth, Owens, Straussner, Russell, and Wartts materials and correspondence.

27. It cannot be said from this record that the Defendant did not receive the instant FOIA Requests and Appeal materials. Russell Decl. at 2, ¶ 4; D.'s Ex. 6

28. It cannot be said from this record that the Defendant provided an adequate search and fairly responded to the instant FOIA requests with regards to the non-exempt withheld materials of Boedekker, Henderson, Straussner, Russell, and Wartts illustrated above in violation of FOIA.

\*\*\*\*\*

Respectfully submitted this _9th_ day of October 2007.


Michael West, *pro se*
P.O. Box 1935
St. Charles, MO 63302
No phone

March 24, 2004

**<u>COMPLAINT</u>**

Dear Mr. Andrew B:

Greetings. The appropriate question is presented as to "Whether an adequate remedy is available in a lower administrative agency under HUD."

From January 2004 to the date of this complaint, I have repeated requested information.

In response to my inquiries, it appears to me that you have provided only partial or misleading material information. For example, you subject me to the state's "Sunshine Law", the equivalent to the Federal Freedom of Information Act, to request records and documents from a non-profit agency that is under HUD's direct control, supervision, or discipline. It is my opinion that under these circumstances that when reviewing your proffered answers and compare this to the undisputed fact that state law statutory records request do not apply to non-profit agencies.

Moreover, to the date of this complaint, you have not provided one iota of support for your attempt to send me on a time consuming "wild-goose chase." I do not appreciate this Andrew, as your present practice and you responsive answers appear to be based on fraud, deceit, or material misrepresentations.

Notwithstanding, I have reasonably requested documentary materials and information to back up your claims and you continually refuse. I am prejudiced because I need specific, identifiable information so that I can make a well-informed decision while participating in the HUD Housing application process. For example, I have requested for you to validate NECAC's present procedural steps in this process. However, you continually ignore this request.

In support of the instant complaint, I rely on past communications with you, Andrew, and Ms.Patricia A. Straussner, and the files, documents, and materials within your custody and control as available in the records of this HUD Applicant/Complainant, HUD Tenant Julie E. Stephens, and HUD landlord Christopher M. Kleewein, which are presently maintained or stored with NECAC official and subject to release under your authority derived under the powers and duties of the Secretary, HUD, and as permitted by federal law.

*****

In this case, a temporary stay or suspension on my housing assistance application should be issued forthwith until these issues are fairly resolved before I precede any further in this said process.

P.'s Exhibit A

In addition, the issuance of substance-in-kind in the form of cash payments in an amount that would be comparable to the amount of received housing benefits paid to an approved landlord, in lieu of monthly housing assistance, should be granted because of this HUD agency's practice of unwarranted delays that are directly attributed solely by HUD and its administrating agencies, such as NECAC - a non-state agency.

IF I do not receive your personal reassurance that I will immediately receive accurate information and documentary materials to support your claims by the close of business toady, I will prepare a discrimination complaint against you and the HUD Secretary for her negligence.

IF you were not clear on these issues raised above, I would begin to imagine whether or not you are fully qualified for the position you hold with HUD.

I look forward to hearing from you.

Respectfully yours,

Michael

**MAIL**
Classic

Print - Close Window

**Date:**     Sat, 2 Dec 2006 14:33:36 -0800 (PST)

**From:**     "j s" <harleyd_ok4u@yahoo.com>

**Subject:**  Request for Reconsideration

**To:**       Turner_Russell@hud.gov

**CC:**       Franklin_Montgomery@hud.gov

Mr. Russell:

Previously, I requested information pertaining to whether HUD Investigator Franklin Montgomery - or anyone else for that matter - would be investigating Julie Stephens for her willful deception, participation and activity of making false, misleading, or untrue statements to federal authorities during its investigation in violation of federal law. 18 U.S.C. 1001.

In turn, to date, Mr. Montgomery refuses to provide the requested information. As such, I am left to assume that his answer is "no."

Under the circumstances, I believe that this may illustrate or be a discriminatory practice not to investigate her active role in "making false statements to federal authorities" as rested upon HUD's practice of sex discrimination.

Alternatiively, I believe HUD's practice above may be unfair based on physical disability discrimination as previously raised in my written response for reconsideration to the November 2005 Final Report prepared by Mr. Montgomery above.

For these reasons, this request for reconsideration follows.

In the event that I do not hear from you within the next ten business days, I will be left to assume that the decision below stands. I will then file suit in federal court.

If I did not make myself clear, or you do not understand anything presented above, please do not hesitate to contact me at your earliest convenience. Thank you for your courtesies.

Respectfully,


Michael West

Everyone is raving about the all-new Yahoo! Mail beta.

P's Exhibit 3



 **MAIL** Classic

Print - Close Window

**Date:**    Sun, 3 Dec 2006 14:08:36 -0800 (PST)

**From:**    "j s" <harleyd_ok4u@yahoo.com>

**Subject:**    Physical Disability Discrimination Complaint

**To:**    Turner_Russell@hud.gov

**CC:**    Eddie_Wartts@hud.gov

Michael West
P.O. Box 1935
St. Charles, MO 63302

December 4, 2006
Mr. Turner Russell
HUD Headquarters
Washington, D.C.
Turner_Russell@hud.gov
West v. North East Community Action Corporation, et. al
Inquiry No. 170989
HUD Case No.: 070408728 & 070408724 & 07040872D

Re: Physical Disability Discrimination Complaint

Dear Mr. Turner:
Thank you for Mr. Wartts' letter of November 30, 2006. This reply serves as a physical disability discrimination complaint. In the alternative, it serves as a sex discrimination complaint. In support the following is provided:
1. HUD entered its written findings of fact and conclusions of law in its Final Report, dated November 9, 2005. Upon review of the "No Reasonable Cause" finding, on February 14, 2006, an amended complaint was requested and forwarded to HUD officials.
2. As a matter of substance, this same amended complaint reply document that was forwarded to HUD explicitly or implicitly represents a motion for reconsideration. Here, it is undisputed that a motion for reconsideration was authorized. *See* Final Report, above.
3. Notwithstanding, on November 20, 2006, a follow-up letter was forwarded to HUD because there had no reasonable action taken with respect to the reply materials.
4. On November 30, 2006, Mr. Eddie Wartts dispatched his letter that stated:
(1) that "[t]he administrative process is complete," and (2) "the determination is final."
5. Both of the Wartts' statements are false, misleading, and untrue in light of the authorized "request for reconsideration" administrative procedure.
6. The request for reconsideration was premised upon the undisputed fact that HUD, once again, closed it investigation without providing a full and fair proceeding.

*P's Exhibit C*

7. Similarly, the request for reconsideration illustrated the fact that, once again, that HUD authorities closed an investigation based on false, perjured, or untrue evidence which flies in the face of administrative due process under the Fourteenth Amendment to the U.S. Constitution.

8. Upon information and belief, it is Mr. Wartts' discriminatory practice or custom to provide physically disabled individuals with false, misleading, or untrue information with respect to HUD activities or investigations

.

9. Such practices of Mr. Wartts above may constitute physical disability discrimination which is against federal law.

10. Additionally, since no responsive materials have been provided by the Director of Enforcement located in Washington, D.C., it may be reasonable to infer that HUD did not direct the motion for reconsideration to the proper office for its full and fair consideration.

11. Upon information and belief, it is HUD's additional discriminatory practice to deny individuals with physical disabilities a fair, prompt, and meaningful opportunity with respect to a request for reconsideration.

12. Additionally, Mr. Wartts claims that "should you wish to further pursue this matter, you may commence a civil action in a United States DistrictCourt not later than two years after the occurrence or the termination of the alleged discriminatory housing practice.

13. As noted above with respect to the authorized request for reconsideration procedure, this is false, misleading, or untrue.

14. As stated above, it is Mr. Wartts' discriminatory practice or custom to provide physically disabled individuals with false, misleading, or untrue information with respect to HUD activities or investigations.

15. Such practices of Mr. Wartts may constitute physical disability discrimination which is against federal law.

In the event you need any additional information or materials, please do not hesitate to contact me at your earliest convenience. In the event that I do not receive a timely response within the next ten business days, I will be left t assume that no proper action will be taken for this separate matter. A complaint will then be filed in the U.S. District Court against HUD.

If my memory serves me correct, Mr. Wartt is the HUD employee that approves of its investigator(s) using false or perjured evidence to "close" HUD investigations.  Incredible, to say the least.

Respectfully submitted this 4<u>th</u> day of December 2006.


<u>/s</u> .
Michael West


cc: Eddie_Wartts@hud.gov

Cheap Talk? Check out Yahoo! Messenger's low PC-to-Phone call rates.



Print - Close Window

**Subject:**   Re: Physical Disability Discrimination Complaint

**To:**   "j s" <harleyd_ok4u@yahoo.com>

**From:**   eddie_l._wartts@hud.gov

**Date:**   Mon, 4 Dec 2006 11:47:12 -0600

Turner,
I hadn't seen this before I sent my email.

Ed

*J's Exhibit D*

 **MAIL** Classic

Print - Close Window

**Date:**     Mon, 17 Sep 2007 14:24:23 -0700 (PDT)

**From:**     "j s" <harleyd_ok4u@yahoo.com>

**Subject:**  Re: West v. HUD

**To:**       Christopher.R.Opfer@hud.gov

Why were the original *emailed* version of disability discrimination complaint against NECAC missing from the FOIA materials that you recently sent, please?

*j s <harleyd_ok4u@yahoo.com>* wrote:
Mr. Opfer:

I do not understand, please explain?

*"Opfer, Christopher R" <Christopher.R.Opfer@hud.gov>* wrote:
Mr. West,

Please contact me as soon as possible to discuss the status of your Complaint against HUD filed in the U.S. District Court for D.C. Thanks.

202-708-0300 x5027

Chris Opfer
Trial Attorney
U.S. Department of Housing and Urban Development
Office of Litigation
451 7th Street S.W., Washington , DC 20410
(202) 708-0300
(202)708-3351 (fax)

Take the Internet to Go: Yahoo!Go puts the Internet in your pocket: mail, news, photos & more.

Building a website is a piece of cake.
Yahoo! Small Business gives you all the tools to get online.