# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0727 (RMC) |
| | ) | |
| ALPHONSO JACKSON, Secretary | ) | |
| of the Department of Housing | ) | |
| and Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## INTRODUCTION

This case concerns actions and decisions of both the Department of Housing and Urban Development ("HUD") and a not-for-profit entity known as the Northeast Community Action Corporation ("NECAC") which provides affordable housing through its housing rental assistance program to citizens in 12 counties in Missouri and receives funding from HUD through the section 8 program.  See http://www.necac.org/; West v. Jackson, 448 F. Supp. 2d 207, 209 (D.D.C. 2007); St. Charles County v. A Joint Bd. or Commission and NECAC, 184 S.W.3d 161, 163-64 (Mo. App. E.D. 2006); Docket Entry No. 15, Defendant's Memorandum of Points and Authorities in Support of his Motion to Dismiss, or in the Alternative for Summary Judgment ("Def.'s MTD/MSJ") at 3-4.  As mentioned in Defendant's opening brief, the Housing Act gives local pubic housing authorities, like NECAC, the discretion to select applicants, make eligibility determinations, and otherwise to manage the day-to-day affairs of the subsidized housing

projects.[1]  The events set forth in the following three paragraphs gave rise to this action, and are

particularly relevant to the third count of Plaintiff's Complaint.

For two years, Plaintiff, Michael West, improperly resided in one of NECAC's housing

units located at 46 Vanguard Ct., O'Fallen, Missouri with his then girlfriend Julie Stephens.  She

was a legitimate participant in a section 8 program, but he was not on the lease during this

period.[2]  On or about December 1, 2003, Plaintiff requested that NECAC's St. Charles County

---

[1]  See, e.g., 42 U.S.C.A. § 1437 ("[i]t is the policy of the United States" to provide for affordable housing for low income families, and to "vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration, with appropriate accountability to public housing residents, localities, and the general public.") (emphasis added); 42 U.S.C. §§ 1437d(C)(3), 42 U.S.C. § 1437f(o); 24 C.F.R. § 960.202(a) (requiring the Public Housing Authority to establish policies for the admission of tenants); see also Nat'l Leased Housing Ass'n v. U.S. Dept. of Housing and Urban Development, 2007 WL 148829, *1 (D.D.C. 2007) (observing that "[t]he primary distribution system for Section 8 housing assistance funds is the Housing Choice Voucher Program," and that "[a]t the national level, the [HUD] . . . oversees distribution of funds appropriated by Congress," but "[a]t the local level, roughly 2600 Public Housing Authorities . . . conduct eligibility determinations, disbursement of funds, inspections of subsidized housing units, and related duties") (emphasis added, citing 42 U.S.C. § 1437f(o)); Edwards v. Dist. of Columbia, 628 F.Supp. 333, 336 (D.D.C. 1985) (observing that "[t]he actual development, maintenance, and management of public housing . . . resides with the local authorities" and that "the scheme designed by Congress contemplates that the local authorities retain primary control over public housing in their respective jurisdictions").

[2]  See, e.g., Exhibit ("Ex.") 5 attached hereto (Plaintiff's Application for Housing Choice Voucher Program, acknowledging that he had resided with Ms. Stephens for over two years at this address, and March 2004 letter from Nelva Owens of NECAC denying the application in part on this basis); Ex. 3 attached hereto (e-mail exchange between Plaintiff and Mr. Boeddeker of HUD); Ex. 4 attached hereto (July 25, 2005 letter from Donald Patrick of NECAC to Frank Montgomery of HUD explaining this was one reason for the denial of Plaintiff's application for section 8 rental assistance, August 19, 2004 letter from Mr. Patrick to Barbara Rellman of HUD's Office of Fair Housing, describing the circumstances surrounding the denial of Plaintiff's application); see also Def.'s MTD/MSJ at 4-5, Ex. 1 (Plaintiff's July 27, 2004 Fair Housing Discrimination Complaint), Ex. 10 at ¶¶ 3-4 (Declaration of Franklin Montgomery, concerning the NECAC hearing that was conducted concerning the issue of "whether Ms. Stephens had defrauded NECAC by allowing Plaintiff to live at her home without notifying NECAC").

Service Center provide him with an application for Section 8 Rental Assistance.  In December

2003, Plaintiff completed an application, and returned it to the NECAC St. Charles County

Service Center.[3]  In his December 2003 application, Plaintiff acknowledged that he had

previously "lived with" Ms. "Jule Stephens (Kleewein), AKA J. Stephens" at the property

located at "46 Vanguard Ct., O'Fallen, Missouri 63366 (St. Charles)" for "two years plus."[4]

After NECAC became aware of this fraudulent arrangement, it held a hearing regarding the

termination of housing assistance for Ms. Stephens.[5]  At issue in the hearing was whether Ms.

Stephens had defrauded NECAC by allowing Plaintiff to live at her home without notifying

NECAC.  Id.  To the best of Defendants' knowledge, no HUD employees or officials were

present at the NECAC hearing and HUD was in no way involved with the administration of the

hearing or the rendering of a decision or findings regarding the matter at issue in the hearing.  Id.

   In a letter dated March 1, 2004, NECAC informed Plaintiff that his application for the

section 8 housing choice voucher program was being denied in part based on his admission that

he had committed fraud by improperly residing with Ms. Stephens, a Section 8 housing

participant, for two years while she received federal assistance.[6]  In the March 1, 2004 letter,

---

   [3] See, e.g., Ex. 5 attached hereto (Plaintiff's Application); see also Ex. 4 attached hereto; Docket Entry No. 3, Complaint ("Compl." ) ¶ 24; Def.'s MTD/MSJ at 4-5; Def.'s MTD/MSJ, Ex. 1 (Plaintiff's July 27, 2004 Fair Housing Discrimination Complaint) at 1-2.

   [4] See, e.g., Ex. 5 attached hereto (Plaintiff's Application, and the denial thereof); see also Ex. 4 attached hereto (correspondence adverting to this fact).

   [5] See Def.'s MTD/MSJ at 5; Def.'s MTD/MSJ, Ex. 10, Declaration of Franklin Montgomery ("Montgomery Decl.") at ¶¶ 3-4.

   [6] See, e.g., Ex. 5 attached hereto; see also Ex. 3 attached hereto; Ex. 4 attached hereto; Def.'s MTD/MSJ at 4-5; Def.'s MTD/MSJ, Ex. 1 at 2.

NECAC further advised Plaintiff that "[i]f [he] wish[ed] to appeal this decision, he had the right to an informal hearing," but that "[t]he request [for an informal hearing] must be submitted to this agency in writing within 15 working days from the date of this letter," and warning him that if "[his] request is not received within the [15 working day] time frame," he would "waive [his] right to a hearing and [NECAC's] decision to deny [his] application [would] become final." <u>See</u> Ex. 5 attached hereto. He was also advised of this fact in a May 21, 2004 e-mail from Andrew Boeddecker of HUD. <u>See</u> Ex. 3 attached hereto. Nevertheless, Plaintiff did not request that NECAC provide him with this informal hearing. <u>See</u> Ex. 4 attached hereto, August 19, 2004 letter at 2.

On or about July 27, 2004, Plaintiff filed an administrative (fair housing) complaint with HUD alleging that NECAC had discriminated against him by refusing to process his application for participation in the Section 8 program.[7] In that fair housing complaint, Plaintiff claimed that the NECAC had "discriminated against him by refusing to process his application for participation in the Section 8 program," on the basis that they had "evidence that he had committed fraud" by living in section eight housing with his then girlfriend Julie Stephens without being on the lease. <u>See</u> Def.'s MTD/MSJ, Ex. 1 at 2 and Ex. 10, ¶ 3. HUD's Office of Fair Housing conducted an investigation of Plaintiff's allegations, and on November 9, 2005, HUD determined that reasonable cause did not exist to believe that discriminatory housing practice had occurred.[8] On or about January 24, 2007, Plaintiff submitted two separate

---

[7]  <u>See</u> Def.'s MTD/MSJ, Ex. 1; <u>see also</u> Def.'s MTD/MSJ at 4-5; Compl. ¶ 24.

[8]  <u>See</u> Def.'s MTD/MSJ at 5-6; Def.'s MTD/MSJ, Exhibits ("Exs.") 2 and 10 at ¶¶ 1-3; <u>see also</u> Ex. 4 attached hereto; Compl. ¶ 26.

misaddressed Freedom of Information Act ("FOIA") requests to HUD, and multiple rounds of thorough agency searches and responses (but no FOIA appeals by Plaintiff challenging those responses) then followed.[9]

This action has two major components.  First, Plaintiff complains about the processing of the two FOIA requests which he sent to HUD on or about January 24, 2007.  See Compl., Counts I and II.  Second, Plaintiff points to various purported infirmities in the hearing which NECAC conducted concerning Julie Stephens's continued eligibility to section 8 housing rental assistance, contends that NECAC violated his due process rights when it purportedly conducted the hearing without giving him notice and an opportunity to be heard concerning her continued participation in the program, and contends that HUD's determination that NECAC had not discriminated against him in denying him participation in their section 8 program was unlawful. See Compl., Count III.

On September 4, 2007, Defendant filed a Motion to Dismiss, or in the Alternative, for Summary Judgment.  In this motion, Defendant explained, among other things, that: (1) Plaintiff failed to properly exhaust under his FOIA claim in several ways; (2) Plaintiff's FOIA claims are moot because he has already received the documents he requested; (3) venue is improper as to Plaintiff's fair housing claims; (4) neither the Mandamus Act, nor the Administrative Procedure Act ("APA"), nor the Fair Housing Act ("FHA") provide this Court with jurisdiction over Plaintiff's fair housing allegations; (5) Plaintiff has not established that he is entitled to the extraordinary relief of a writ of mandamus; (6) Plaintiff's allegations with respect to 28 C.F.R.

---

[9]  See Ex. 1 attached hereto, Declaration of Cynthia O'Connor ("O'Connor Decl.") ¶¶ 3-6; see also Compl. ¶¶ 7, 15; Def.'s MTD/MSJ at 6-13, 21-23, 26-28, 30; Def.'s MTD/MSJ Exs. 3, 4, 5, 6, 7, 11, 12, 13, and 14.

Part 35 fail to state a claim upon which relief can be granted; and (7) the Fourteenth Amendment is inapposite.  See Def.'s MTD/MSJ at 15-39.

On October 11, 2007, Plaintiff filed an Opposition in which he: (1) improperly made several new claims and arguments which he had not raised in his Complaint; and (2) made numerous factual representations and legal arguments in support of his previously asserted claims which require a response.  Defendant, Alphonso Jackson, Secretary of HUD, by and through undersigned counsel, respectfully files this Reply in support of his Motion to Dismiss, or in the Alternative, for Summary Judgment and in response to Plaintiff's opposition.

## **ARGUMENT**

I.    **It is Improper for Plaintiff to Assert Claims for the First Time in His Opposition Now that Defendant has Filed a Motion to Dismiss, or in the Alternative for Summary Judgment, and this Court Should Not Consider these New Claims**

Plaintiff has attempted to raise a series of new claims and legal arguments for the first time in his Opposition brief and accompanying Statement of Disputed Facts and Declaration, which he did not raise in his Complaint.  These newly raised contentions and legal theories include: (1) a new claim under Bivens v. Six Unknown Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971) ("Bivens"); (2) a newly raised claim that Defendant has violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 et. seq., as amended ("Rehabilitation Act"); and (3) a new allegation that Defendant has violated the Fifth Amendment to the U.S. Constitution. See Docket No. 18, Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp.") at 1-2 (making Fifth Amendment claims), 11 (same), 12 (invoking the Fifth Amendment, Bivens, and the Rehabilitation Act), 14 (same), 13

6

(citing the Fifth Amendment); see also Declaration of Michael West ("West Decl.") at 2, ¶ 7; Statement of Disputed Facts ("Pl.'s SDF") at 1, ¶ 1.

This is all improper. It is well established that a "plaintiff cannot raise new claims for the first time in an opposition brief."[10] Plaintiff's effort to use his Opposition brief as a vehicle for putting new claims and legal theories before this Court, and by this contrivance surreptitiously amending his Complaint, is improper. See, e.g., Sharp, 496 F. Supp. 2d 93, n. 3; Calvetti, 346 F. Supp.2d at 107; Arbitraje Casa de Cambio, S.A. de C.V., 297 F.Supp.2d. at 170; Coleman, 94 F.Supp.2d at 24, n. 8. This Court should not consider these new claims in adjudicating the instant Motion to Dismiss, or in the Alternative for Summary Judgment. See, e.g., College Sports Council, 421 F.Supp.2d at 71, n. 16; Arbitraje Casa de Cambio, S.A. de C.V., 297 F.Supp.2d. at 170. Considering such arguments would not only be "unfair . . . but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." See McBride v. Merrell Dow and Pharmaceuticals, Inc., 800 F.2d 1208, 1211 (D.C. Cir. 1986) (internal citations omitted). To the extent that the Court considers these newly asserted claims, the Court should reject them for the reasons set forth in the next section.

---

[10] See Sharp v. Rosa Mexicano, 496 F. Supp. 2d 93, n. 3 (D.D.C. 2007) (also noting that "plaintiff may not, through summary judgment briefs, raise . . . new claims . . ."); see also DSMC, Inc. v. Convera Corp., 479 F.Supp.2d 68, 84 (D.D.C. 2007); College Sports Council v. Government Accountability Office, 421 F.Supp.2d 59, 71, n. 16 (D.D.C. 2006) ("the Court does not, and cannot, consider claims first raised in the plaintiff's opposition"); Calvetti v. Antcliff, 346 F. Supp.2d 92, 107 (D.D.C. 2004) ("[i]t is clear that the plaintiffs are now, through their pleadings, attempting to amend their complaint" to allege a new claim, but that "[t]his tactic is clearly impermissible"); Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F.Supp.2d. 165, 170 (D.D.C. 2003).

## II.     In Any Event, Plaintiff's Newly Raised Claims are Unavailing

### A.     The Court Lacks Jurisdiction Over Plaintiff's <u>Bivens</u> Claim, and Plaintiff Fails to State a <u>Bivens</u> Claim Upon Which Relief Can be Granted

In his Opposition, Plaintiff for the first time attempts to assert a <u>Bivens</u> claim against HUD.  <u>See</u>, <u>e.g.</u>, Pl.'s Opp. at 12, 14.  He does not explain or elaborate upon his newly raised <u>Bivens</u> claim, but he appears to raise it in conjunction with his equally belated contention that HUD violated his Fifth Amendment rights.  <u>Id</u>.  The Supreme Court's decision in <u>Bivens</u>, which arose in the specific context of an alleged Fourth Amendment violation, established that a citizen suffering a compensable injury to a constitutionally protected interest had an implied right to bring an action in federal district court for monetary damages against the responsible federal official.  <u>See</u>, <u>e.g.</u>, <u>Bivens</u>, 403 U.S. at 396-97; <u>see also</u> <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001); <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 484 (1994); <u>Davis v. Passman</u>, 442 U.S. 228, 234 (1979).

<u>Bivens</u> claims can only be brought in rare circumstances, provided certain preconditions are satisfied.  First, it is well settled that a <u>Bivens</u> claim may only be brought against individual federal employees, and does not extend to claims against federal agencies.  <u>See</u>, <u>e.g.</u>, <u>Drake v. F.A.A.</u>, 291 F.3d 59, 72 (D.C. Cir. 2002) (recognizing that "[i]t is of course well-settled that Bivens liability cannot be imposed on an agency of the Federal Government") (internal citation omitted).  Second, it is established that a plaintiff who sues an agency official in his or her *official* capacity, rather than as an individual, fails to state a cause of action under <u>Bivens</u>.  <u>See</u>, <u>e.g.</u>, <u>Majhor v. Kempthorne</u>, 2007 W.L. 3171818, *16 (D.D.C. 2007) (noting that "'a <u>Bivens</u> action may be maintained against a defendant only in his or her individual capacity, and not in

8

his or her official capacity.'") (citing <u>Pollack v. Meese</u>, 737 F.Supp. 663, 666 (D.D.C. 1990)); <u>id.</u> at *27, n. 12.  Third, <u>Bivens</u> relief is also inappropriate where "any alternative, existing process for protecting the interest" exists.  <u>See</u>  <u>Wilkie</u>, 127 S.Ct. at 2598 (citing <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983)).  Fourth, "[e]ven in the absence of an alternative, a <u>Bivens</u> remedy is a subject of judgment."  <u>Id</u>. at 2598.  "'[T]he federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation'"  <u>Id</u>. (citing <u>Bush</u>, at 378).  The Supreme Court has noted that "in most instances we have found a <u>Bivens</u> remedy unjustified."  <u>See</u> <u>Wilkie v. Robbins</u>, 127 S. Ct. 2588, 2597 (2007); <u>see also</u> <u>Correctional</u>, 534 U.S. at 61 (stating that "[i]n 30 years of <u>Bivens</u> jurisprudence we have extended its holding only twice . . . ").

Here Plaintiff sues the Secretary of HUD in his official capacity only, and seeks relief that can only be provided by HUD.  <u>See</u> Civil Docket Sheet, caption; Compl.  Plaintiff has not asserted in his Complaint or Opposition that Secretary Jackson has <u>personally</u> violated Plaintiff's Constitutional rights.  <u>See</u> Compl. *generally*; Pl.'s Opp. *generally*.  Moreover, several alternative processes exist by which Plaintiff may protect the interest at issue.  <u>See</u> Def.'s MTD/MSJ at 34, 37.  Thus, no <u>Bivens</u> action can lie.

**B.    In Any Event, Plaintiff has Failed to State a Fifth Amendment Claim Upon Which Relief Can be Granted**

Plaintiff appears to assert both substantive and procedural due process violations by HUD.  First, Plaintiff asserts that HUD violated his due process rights by supposedly "grant[ing] NECAC permission to hold *ex parte* hearings without notifying all interested parties."  <u>See</u> Pl.'s

Opp. at 3; <u>see also</u> Compl. ¶¶ 31, 37 (complaining about "an administrative investigative hearing" that was held "without providing [P]laintiff with any prior notice and fair opportunity to attend.")  Second, Plaintiff alleges that HUD and NECAC violated his due process rights by purportedly failing "to provide all materials and evidence used in support of its adverse agency action denying Plaintiff West's application for housing benefits."  <u>See</u> Pl.'s Opp. at 13.  Third, Plaintiff asserts that he "maintains a property interest in receiving HUD housing benefits under its section 8 program . . ."  <u>See</u> Pl.'s Opp. at 3.  Plaintiff has failed to state a claim upon which relief may be granted under either <u>Bivens</u> or the Fifth Amendment because he has failed to establish that HUD violated his due process rights.

"By its terms, the Due Process Clause does not apply unless an individual can show that the government action at issue deprives him [or her] of an actual interest in life, liberty, or property."  <u>See</u> <u>Fried v. Hinson</u>, 78 F.3d 688, 691-92 (D.C. Cir. 1996) (internal citation omitted).  Plaintiff claims that he has a property interest in becoming a participant in the Section 8 program and receiving section 8 assistance, <u>see</u> Pl.'s Opp. at 3, but this claim is easily disposed of as he falls quite short of the required showing.  It is well understood that, under the Fifth Amendment Due Process clause, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it," but "must, instead, have a legitimate claim of entitlement to it."  <u>See</u> <u>Town of Castle Rock v. Gonzales</u>, 125 S. Ct. 2796, 2803 (2005) (internal quotations and citations omitted); <u>Roth v. King</u>, 449 F.3d 1272, 1285 (D.C. Cir. 2006) (same).  The NECAC reasonably concluded that Plaintiff was not entitled to the benefit of section 8 housing in part because, by his own account, he had improperly resided with a section 8 participant for two years.  <u>See</u> Exs. 2, 4, and 5 attached hereto; Def.'s MTD/MSJ at 4-

5, Ex. 1 at 2.[11]  Moreover, it is well established that "the Due Process [c]lauses generally confer

no affirmative right to governmental aid, even where such aid may be necessary to secure life,

liberty, or property interests."  See Deshaney v. Winnebago County Dep't of Social Services, 489

U.S. 189, 196 (1989); see also LRL Properties v. Portage Metro Housing Authority, 55 F.3d

1097, 1108 (6th Cir. 1995) (agreeing with the defendant in that case that "there is no property

interest in a 'unilateral desire to participate in a federal program where plaintiffs acknowledge

that discretion is vested with the Housing Authority to determine whether the proposal meets the

threshold requirements for further consideration.'"); id. at 1111 (observing that "[t]he right to

participate in a federal housing funds program simply does not rise to the level of a right 'so

rooted in the traditions and conscience of our people as to be ranked as fundamental.'")

     In any event, due process ordinarily requires "that an individual be given an opportunity

for a hearing before he is deprived of any significant property interest," but "[t]he formality and

procedural requisites for the hearing can vary, depending upon the importance of the interests

involved and the nature of the subsequent proceedings."  See, e.g., Boddie v. Connecticut, 401

U.S. 371, 378-79 (1971); CNG Transmission Corp. v. F.E.R.C., 40 F.3d 1289, 1295 (D.C. Cir.

1994).  The "ordinary principle" is that "something less than ... [a formal] evidentiary hearing is

sufficient prior to adverse administrative action."  See Mathews v. Eldridge, 424 U.S. 319, 343

(1976); CNG Transmission Corp., 40 F.3d at 1295.  Here, as previously stated, Plaintiff had both

---

[11]  See also Gholston v. Housing Authority of City of Montgomery, 818 F.2d 776, 781 (11
Cir. 1987) (noting that "[t]he administration of local housing authorities is a difficult task,
particularly because the number of applicants greatly exceeds the available housing" and that
"[c]onsequently, the scope of judicial review of a local housing authority's policies and practices
is limited, and we will not view its actions as a violation of the Housing Act or HUD regulations
unless it abused its discretion.")

notice and an opportunity to be heard at a hearing before the determination was made, in accordance with the "essential requirements of due process," See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).  He has no one but himself to blame for the fact that he did not take advantage of the opportunity he was provided to request a hearing before the NECAC on its section 8 housing determination, as he was notified that he could do so on more than one occasion.  See Ex. 5 attached hereto; Ex. 4 attached hereto, August 19, 2004 letter, at 2. Furthermore, HUD advised him on more than one occasion that if he felt that he had been discriminated against by NECAC, that he "should contact the Fair Housing and Equal Opportunity Office."  See, e.g., Exs. 2 and 3 attached hereto.  He exchanged countless e-mails with various HUD officials concerning his housing-related complaints.  See, e.g., Exs. 2 and 3 attached hereto; West Decl. ¶¶ 2-4; West Decl., Exs. A, B, and C.  Certainly, it cannot be said in this case, that either NECAC or HUD denied him notice and an opportunity to be heard.

Additionally, any housing assistance to which Plaintiff may have been entitled was denied, if at all, by NECAC, not HUD, and a due process or other claim Plaintiff may have based on such denial is properly brought against NECAC, not HUD.  Plaintiff complains about "an administrative investigative hearing" that was held "without providing [P]laintiff with any prior notice and fair opportunity to attend."  See Compl. ¶¶ 31, 37.  To date however, HUD has not held a hearing regarding Plaintiff's fair housing complaint or otherwise concerning Plaintiff.  It appears that Plaintiff refers to a hearing held by NECAC, a private entity, concerning its termination of Julie Stephens's "housing assistance."[12]  See Compl. ¶ 32; Def.'s MTD/MSJ, Ex.

_____

[12] Plaintiff certainly has no property interest in his girlfriend's housing assistance; especially given that he was never on her lease.

12

10, ¶ 3.  Since HUD was not involved in the hearing that Plaintiff alleges was constitutionally

deficient, Plaintiff has failed to state a claim that HUD denied any due process right Plaintiff may

have and, therefore Plaintiff has failed to state a Fifth Amendment claim upon which relief may

be granted.  The mere fact that NECAC receives funds from HUD and is regulated by HUD does

not cause NECAC's actions to be attributable to the Federal Government for Fifth Amendment

purposes.[13]

Furthermore, NECAC's section 8 housing eligibility determinations and its choice of

procedures for hearings aimed at determining such eligibility are simply not decisions made by

HUD or any other arm of the federal government: they are decisions made by NECAC, a non-

profit public housing entity.  See 42 U.S.C. §§ 1437, 1437d(C)(3), 42 U.S.C. § 1437f(o); 24

C.F.R. § 960.202(a); Nat'l Leased Housing Ass'n, 2007 WL 148829, *1; Edwards, 628 F.Supp.

at 336; San Francisco Arts, 483 U.S. at 547.  There is no evidence that the Federal Government

coerced or encouraged the NECAC in the exercise of its rights as to these matters.  See San

Francisco Arts, 483 U.S. at 547.

---

[13]  See, e.g., San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee, 483 U.S. 522, 546 (1987) (noting that "this Court has held that a government 'normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government].'") (emphasis added and internal citations omitted); Brug v. Nat'l Coalition for Homeless, 45 F.Supp.2d 33, 43 (D.D.C.1999) (noting that "the mere fact that the government regulates and funds a private entity does not mean that there is state action").

C.    **Plaintiff Fails to State A Claim upon Which Relief May be Granted Under the Rehabilitation Act, and has Failed to Exhaust his Rehabilitation Act Claims Against HUD**

In his Opposition Brief, Plaintiff also for the first time in this action asserts a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, based on HUD's alleged "failure to provide 'reasonable accommodations' with regard[] to its application process . . ." See Pl.'s Opp. at 13; id. at 2, 14. Section 504 provides that

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

See 29 U.S.C. § 794(a). This Section applies to any program or activity receiving Federal financial assistance from HUD in its provision of housing or related services and to HUD itself in its conduct or Department programs and activities. See 24 C.F.R. §§ 8.1(a), 8.2, 8.4(b)(1)(i), 9.102. It prohibits a federal agency or recipient of federal funds from failing or refusing to provide an individual with a disability who participates or wishes to participate in a federal program or activity with a reasonable accommodation. "To state a claim under section 504, a plaintiff must (1) be an individual with a disability (2) who is 'otherwise qualified' for participation in a program or activity (3) of an Executive agency, and who is (4) 'denied the benefits of' or 'subjected to discrimination under' that program or activity." See American Council of the Blind v. Snow, 311 F.Supp. 2d 86, 88 (D.D.C. 2004). One of the things that a Plaintiff must demonstrate to make out a prima facie case under section 504 is that she or "he has been excluded 'solely' because of his handicap." See McKelvey v. Turnage, 792 F.2d 194, 203-04 (D.C. Cir. 1986) (emphasis added); see also Hinson v. Merritt Educ. Ctr., 2007 WL 3341843,

*6 (D.D.C. 2007) ("a plaintiff must show that he or she was discriminated against <u>solely</u> by reason of his or her handicap.") (internal citation omitted, and emphasis added).

Plaintiff cannot even come close to making this showing. First of all, he has failed to establish that he is an "individual with a disability" for purposes of the Rehabilitation Act. "'It is the plaintiff's burden to prove that [he] is disabled' within the meaning of the Rehabilitation Act." <u>See</u>, <u>e.g.</u>, <u>Stewart v. St. Elizabeth's Hosp.</u>, 2007 WL 2257220, *13 (D.D.C. 2007); <u>Haynes v. Williams</u>, 392 F.3d 478, 482 (D.C. Cir. 2004). "'[M]erely having an impairment does not make one disabled,' and 'it is insufficient for individuals attempting to prove disability status to merely submit evidence of a medical diagnosis of an impairment." <u>See</u> <u>Stewart</u>, 2007 WL 2257220 at *13 (citing <u>Toyota v. Williams</u>, 534 U.S. 184, 195 and 198 (2002)).

Second, Plaintiff has failed to show that he was qualified to participate in NECAC's Section 8 assistance program. In fact, in the fair housing complaint he filed with HUD, Plaintiff admitted that NECAC's stated reason for denying his assistance application was a finding that Plaintiff had previously defrauded the program. <u>See</u> Def.'s MTD/MSJ, Ex. 1 at 2; Exs. 4 and 5 attached hereto. Third, Plaintiff has failed to allege that HUD denied him benefits of or subjected him to discrimination solely because of his purported disability. While Plaintiff asserts that HUD refused to provide him with a "reasonable accommodation[]," <u>see</u> Pl.'s Opp. at 13; West Decl. at 9, ¶ 36A., he does not identify the accommodation he allegedly sought or the HUD office or employee to which he submitted the accommodation request. If HUD was never requested to provide an accommodation, it could not fail to provide one. As mentioned, it was

NECAC not HUD that made the decision to deny Plaintiff's section 8 application.[14]  Thus, Plaintiff has failed to establish the elements necessary to state a claim under the Rehabilitation Act.

Furthermore, Plaintiff has also failed to exhaust his administrative remedies against HUD. A claimant is arguably required to exhaust the available administrative remedies under Section 504 before bringing his claims in district court.[15]  HUD regulations implementing Section 504 provide an administrative avenue for an individual claiming to have been discriminated against by the department on the basis of disability.  See 24 C.F.R. § 9.170.  That regulation allows such individuals to file a complaint to the Assistant Secretary for Fair Housing and Equal Opportunity ("FHEO"), but requires that such complaint be filed within 180 days of the alleged act of

---

[14]  Plaintiff has filed with this Court a copy of an e-mail he sent to Mr. Turner Russell of HUD in which Plaintiff alleges, among other things, that "it is [HUD Equal Opportunity Specialist Mr. Eddie] Wartts' discriminatory practice to provide physically disabled individuals with false, misleading or untrue information with respect to HUD activities or investigations" and that it is HUD's additional discriminatory practice to deny individuals with physical disabilities a fair, prompt, and meaningful opportunity with respect to a request for reconsideration."  See Pl.'s Opp., Ex. C.  However, Plaintiff does not allege in his Complaint that Mr. Wartts discriminated against Plaintiff or that HUD discriminated against Plaintiff with respect to the reconsideration of his fair housing complaint, nor does he provide evidence in support of such allegations.  See Compl. *generally*.

[15]  See, e.g., Milbert v. Koop, 830 F.2d 354, 356-57 (D.C. Cir. 1987) (observing in dicta that "in order to give effect to *both* the House and the Senate 1978 amendments finally enacted, we must read the exhaustion of administrative remedies requirement of section 501 into the private remedy recognized by both section 501 and section 504 for federal government handicap discrimination"); but see Jones v. University of Dist. of Columbia, 2007 WL 2332311 (D.D.C. 2007) (observing that § 794 of the Rehabilitation Act proscribes discrimination by executive agencies and federally funded entities and provides remedies set forth in Title VI, which does not explicitly require the exhaustion of administrative remedies).

16

discrimination.  See 24 C.F.R. § 9.170(d).[16]  Plaintiff has filed a document which appears to be a

letter or email to Andrew Boeddeker, the Director of the Office of Public Housing in HUD's Kansas

City Regional Office, in which he threatens to file a discrimination complaint against both Mr.

Boeddeker and HUD Secretary Alphonso Jackson, should he not receive an adequate response to his

various communications with Mr. Boeddeker.  See Pl.'s Opp., Ex. A at 2.  In response to several

similar emails from Plaintiff, Mr. Boeddeker directly indicated to Plaintiff "you should contact the

Fair Housing and Equal Opportunity Office at 1-800-743-5323."  See Exs. 2 and 3 attached hereto

(emphasis in original).  Yet, while Plaintiff ultimately filed a complaint with FHEO alleging that

NECAC had unlawfully discriminated against him in denying his Section 8 application, Plaintiff did

not allege that HUD, its officers or employees, engaged in such discrimination.  See Def.'s

MTD/MSJ, Ex. 1 at 1-2.  Accordingly, Plaintiff's claims under the Rehabilitation Act should be

dismissed for failure to exhaust administrative remedies.

**III.    Plaintiff's Newest Arguments in Support of his Previously Raised Claims are also Unavailing**

    **A.    Plaintiff's Newest Arguments in Support of Counts I and II of his Complaint (His FOIA-related Counts) Lack Merit**

In Defendant's opening brief, Defendants explained that Counts I and II of Plaintiff's

Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies under

the FOIA inasmuch as he (1) addressed and mailed his January 24, 2007 FOIA requests to the wrong

office; (2) submitted a premature appeal of HUD's response to his FOIA requests; and (3) failed to

---

[16]  FHEO is required to investigate all complaints filed with the Office and over which it has jurisdiction and issue a letter of findings, including findings of fact, conclusions of law and remedies for each violation found.  See 24 C.F.R. § 9.170(g)(1) & (3).  A party may file an appeal of these findings with the HUD Secretary within 90 days of receipt of the letter.  See 24 C.F.R. § 9.170(h)(1).

bring a timely appeal after he received HUD's FOIA response.  See Def.'s MTD/MSJ at 15-23.

Defendants also explained that Counts I and II should be dismissed because HUD conducted an

adequate search and responded reasonably to Plaintiff's FOIA request.  See id. at 23-29.  Defendants

also noted that Counts I and II are moot insofar as HUD has provided Plaintiff with all of the

documents in HUD's possession which may be responsive to Plaintiff's FOIA requests.  See id. at

29-30.  In his Opposition, and other related filings, Plaintiff makes several arguments concerning

these two counts.  These arguments are easily dispensed with.

Plaintiff claims that he was unaware of his failure to exhaust because HUD failed to provide

him adequate notice of appeal rights.  See Pl.'s Opp. at 7.  In fact, HUD directly informed Plaintiff

of his right to file an appeal in its April 24, 2007 response to Plaintiff's FOIA request.  See Def.'s

MTD/MSJ at 10, Ex. 7;  Ex. 1 attached hereto.  Moreover, it is clear that Plaintiff was aware of the

FOIA exhaustion requirements, including the requirement that a request be submitted to the

appropriate HUD employee and that a timely appeal be filed, at the time that he filed the present

action because a previous FOIA action by Plaintiff against HUD was dismissed by this very Court

on precisely these grounds, among others.[17]  Consequently, dismissal of Counts I and II for failure

to exhaust the administrative remedies available under FOIA is appropriate.[18]

---

[17]  See West v. Jackson, 448 F. Supp. 2d 207, 211-212 (RMC) (D.D.C. 2006) ("The
request was not submitted to the proper address or individual and did not comply with agency
regulations.  Therefore, Mr. West has failed to exhaust on this basis as well").

[18]  Plaintiff also claims that HUD never sent him an acknowledgment letter.  See Pl.'s
Opp. at 4-5.  In fact, HUD sent him an Acknowledgment letter on February 23, 2007.  See Def.s'
MTD/MSJ at 8 & 22; Def.'s MTD/MSJ, Ex. 6; Ex. 1 attached hereto.

Plaintiff now claims that HUD unreasonably withheld "the Boeddekker (sic), Henderson[19], Kosuth, Straussner, Russell and Wartts materials relevant to Plaintiff's FOIA requests." <u>See</u> Pl.'s Opp. at 5. It appears that Plaintiff refers to these "materials" according to the last name of the HUD employee possessing the materials. <u>See, e.g.,</u> Pl.'s SDF ¶¶ 19-21. However, Plaintiff did not request these materials in either of these FOIA requests, implicitly or explicitly, and should not now be heard to complain that HUD failed to read his mind.[20]

To the extent that the "Russell materials" refer to records in HUD employee Turner Russell's control, Mr. Russell's declaration indicates that he conducted a thorough search of the relevant HUD records in response to Plaintiff's request and did not locate any documents or records meeting the criteria set forth in Plaintiff's requests. <u>See</u> Def.'s MTD/MSJ, Ex. 12 ¶¶ 2-7. It is well settled that "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." <u>See</u> <u>Blanton v. United States DOJ</u>, 63 F. Supp. 2d 35, 41 (D. D.C. 1999). Furthermore, "[a]n agency's declarations are accorded 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the

---

[19]    According to Plaintiff, the "Henderson" materials refers to "any and all materials responsive to all communications of Ms. Robbie Henderson of HUD with regard to [Plaintiff]." Pl.'s SDF ¶ 22. However, there is no HUD employee named "Robbie Henderson." Moreover, Plaintff did not identify these materials in his FOIA requests.

[20]    <u>See, e.g.,</u> Def.'s MTD/MSJ, Exs. 3 and 4; <u>Assassination Archives & Research Ctr., Inc. v. CIA</u>, 720 F. Supp. 217, 219 (D.D.C. 1989) (observing that "it is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested" and "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters."); <u>Yeager v. Drug Enforcement Admin.</u>, 678 F.2d 315, 326 (D.C. Cir. 1982) ("[t]he linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested'").

existence and discoverability of other documents.'" See West v. Barnhart, 2006 U.S. Dist. LEXIS

12958 (D.D.C. 2006) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Plaintiff's naked, unsubstantiated assertions that "Mr. Russell's affidavit may be reasonably

considered as false, misleading, or untrue", see, e.g., Pl.'s SDF ¶ 8, and "should not be afforded

much weight," see Pl. Opp. 8, do not overcome this presumption.

Plaintiff additionally argues that HUD's search should have included "special notice provided

to all communications from the HUD Offices or Mr. Eddie Wartts to Mr. Turner Russell…with

regards (sic) to 'Michael West'". See Pl.'s SDF ¶ 18. However, Plaintiff did not specifically request

these documents. See Exs. 3 and 4. Similarly, although Plaintiff claims that HUD unreasonably

withheld records to which Plaintiff refers as the "Kosuth materials," see, e.g., Pl.'s Opp. at 5,

Plaintiff did not specifically request these records, despite his apparent knowledge of them, and does

not identify the nature of these records. See Exs. 3 and 4.

The remaining materials which Plaintiff claims that HUD unreasonably failed to provide, the

"Boeddekker (sic)" and "Straussner" materials, are not responsive to Plaintiff's FOIA requests. It

appears that these records, if any, concern Plaintiff's communications with Andrew Boddeker and

Patricia Straussner, employees in the Office of Public Housing in HUD's St. Louis, Missouri office,

regarding NECAC's denial of Plaintiff's Section 8 application. Plaintiff, however, expressly limited

his first FOIA request to "communications originated by or dispatched to" the ESD. See Def.'s

MTD/MSJ, Ex. 3. Mr. Boeddeker and Ms. Straussner do not work in the ESD, and there is no

reason to believe that any communications between them and Plaintiff would be "originated by or

dispatched to" the ESD. Moreover, even if Plaintiff had not limited his request to the ESD, he

specifically requested documents related to the investigation of his fair housing complaints, See Ex.

20

3, and HUD had no reason to search for documents outside the control of FHEO, the office under which the ESD operates, and which investigates all fair housing complaints filed with the Department.[21]

Finally, to the extent Plaintiff asserts that his FOIA requests were intended to include records concerning NECAC's denial of Plaintiff's Section 8 assistance application[22], such records are not "agency records" subject to disclosure under FOIA. "Agency records" are records that are: 1) either created or obtained by an agency; and 2) under agency control at the time of the FOIA request. <u>Tax Analysts</u>, 492 U.S. at 144-45. Here, NECAC made the decision to deny Plaintiff's Section 8 application and, as a result, any and all records concerning this decision were likely created by NECAC and are under its control. The fact that HUD provides housing assistance funding to NECAC does not render NECAC's records concerning its operation of the assistance programs "agency records."[23] Accordingly, Plaintiff has failed to establish that HUD performed an unreasonable or inadequate search with respect to his FOIA requests.

**B.    Plaintiff's Newest Arguments in Support of Count III of his Complaint (His FOIA-related Counts) Lack Merit**

Defendant respectfully refers the Court to the arguments he made in his opening brief

---

[21] <u>Kowalczyk v. Dep't of Justice</u>, 73 F.3d 386, 389 (D.C. Cir. 1996) (because FOIA request made no reference to New York or the FBI's New York field office, the request did not enable the FBI to determine that the New York field office had responsive records).

[22] Plaintiff asserts in his Statement of Disputed facts that HUD "failed to provide any and all materials responsive of Ms. Nelva Owens, HUD's administering agency employee.." See Pl.'s SDF ¶ 23. However, Ms. Owens is an employee of NECAC.

[23] <u>See Forsham v. Harris</u>, 445 U.S. 169, 177 (1980) ("data generated by a privately controlled organization which has received grant funds from an agency, but which data has not at any time been obtained by the agency, are not 'agency records' accessible under the FOIA").

concerning Count III of Plaintiff's Complaint.  See Def.'s MTD/MSJ at 32-39.  Plaintiff's newest

arguments concerning that Count lack merit.  He misconstrues the relevant law concerning the filing

of discrimination complaints with HUD, asserting that he "filed a discrimination complaint under

DOJ's 28 C.F.R. Part 35", see Pl.'s Opp.at 2, and that HUD "covertly converted the instant

complaint into a Fair Housing Complaint without Plaintiff's written waiver or knowledge of specific

procedural rights as guaranteed under 28 C.F.R. Part 35."  See Pl.'s Opp. at 3.   Apparently,

Plaintiff's letter to Andrew Boeddeker is the "discrimination complaint" to which Plaintiff refers.

See Pl. Opp. at 3; Pl.'s SDF ¶ 1.  In this document, Plaintiff complains of NECAC misconduct in

the handling of his housing assistance application and requests documents related to NECAC's

decision to deny assistance.

        Despite Plaintiff's claims, 28 C.F.R. Part 35 does not provide a cause of action against HUD,

nor does it authorize or require HUD to investigate a discrimination claim.  Part 35 implements

subtitle A of Title II of the Americans with Disabilities Act of 1990 ("ADA").  See 28 C.F.R. §

35.101.  However, neither Part 35 nor Title II, which prohibit discrimination by a public entity or in

connection with the services, programs, or activities of a public entity, apply to the federal

government.[24]  As a result, Plaintiff cannot state a cause of action against HUD based on either Title

II or Part 35.

        Plaintiff also incorrectly states that part 35 "prescribes HUD's duties once a charge [of

discrimination] is filed."  See Pl.'s Opp. at 11.  In fact, HUD's sole authority to investigate

discrimination complaints is provided under the Fair Housing Act, 42 U.S.C. §3601 et seq., (FHA),

_____

    [24] See 42 U.S.C. § 12132; 28 C.F.R.§ 35.130(a).  ("[t]he term 'public entity' means . . .
any State or local government" or "any department, agency, special purpose district, or other
instrumentality" thereof); 28 C.F.R. § 35.104.

and The Rehabilitation Act of 1973, 29 U.S.C. § 794. HUD investigated plaintiff's discrimination complaint against NECAC under this authority[25] and any duty that Plaintiff claims that HUD owes him with respect to his discrimination complaint is, necessarily, based on these statutes.

Plaintiff claims that HUD "failed to provide any meaningful review" of his fair housing complaint against NECAC and, additionally, failed to provide an "adequate, effective, and meaningful reconsideration" of its investigative findings, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. ("APA"). See Pl.'s Opp. 2-3. APA review is limited to a cause of action in which there is "no other adequate remedy in a court," and for which the agency action at issue is not "committed to agency discretion by law." See 5 U.S.C. §§ 701(a)(2), 704; Bennett v. Spear, 520 U.S. 154, 161-62 (1997); id. at 175; see also Darby v. Cisneros, 509 U.S. 137, 143 (1993).

Plaintiff's reliance on United States v. Gaubert, 499 U.S. 315 (1991) in support of his assertion that HUD has an affirmative, non-discretionary duty to take certain action in the course of its investigation, see Pl.'s Opp. at 11-12, is misplaced. First, as Defendant showed in his opening brief, HUD's investigation of fair housing complaints is committed to agency discretion by law. See Def.'s MTD/MSJ at 34-35. Second, the Court's holding in Gaubert concerned the discretionary function exception to federal liability under the Federal Tort Claims Act, 28 U.S.C. 1346(b) ("FTCA"), not the APA. See Gaubert, 499 U.S. 322; 28 U.S.C. § 2680(a). Finally, even under the test set forth in Gaubert, it is clear that HUD's investigation of fair housing complaints is a

---

[25] Despite Plaintiff's assertions to the contrary, Pl. Opp. 2, both the Rehabilitation Act and FHA apply to NECAC. The Rehabilitation Act prohibits discrimination by a recipient of federal funds, 29 U.S.C. § 794(a), while the FHA prohibits discrimination in the rental or sale of housing, generally. NECAC receives federal funding and is engaged in the rental of housing and, therefore, is subject to both the FHA and Rehabilitation Act.

discretionary function.  See Gaubert, 499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).

Plaintiff also argues that HUD violated the APA in its "failure to cite its authority to deny Plaintiff's application Government benefits."  See Pl.'s Opp. at 14.  As explained in detail above, the decision to deny Plaintiff's Section 8 application was made solely by NECAC pursuant to 42 U.S.C. § 1437f(o)(j) and, consequently, Plaintiff has failed to state a claim against HUD based on the denial of his Section 8 application.  Finally, the FHA itself also does not provide the Court with subject matter jurisdiction over Count III.  While the FHA "authorizes judicial review when the Secretary charges discriminatory housing practices, . . . it confers no right to review when . . . the Secretary declines to issue a charge."[26]  Thus, the Court lacks subject matter jurisdiction over Count III pursuant to either the APA or FHA.

Plaintiff argues that venue is appropriate with respect to his claims because "HUD's Headquarters and Mr. Turner Russell's office are situated within the venue of this district court, in which this court has close access to direct [HUD's] release of improperly withheld FOIA materials."  See Pl.'s Opp. at 11.  However, this assertion concerns venue with regard to Counts I and II of Plaintiff's Complaint, which raise claims regarding the various FOIA requests submitted by Plaintiff to Mr. Russell at HUD's Headquarters in Washington D.C.  Plaintiff has not established that venue is proper with respect to Count III of the Complaint.  In particular, Plaintiff has failed to address the D.C. Circuit's holding in Godwin v. HUD, 356 F. 3d 310 (D.C. Cir. 2004), that venue with respect to fair housing claims, such as those set forth in Count III, lies "in the judicial district in which the

---

[26]  See Godwin v. Sect'y of HUD, 356 F. 3d 310, 312 (D.C. Cir. 2004) (the Fair Housing Act neither creates an explicit cause of action or an implicit right of action in that circumstance).

discriminatory housing practice is alleged to have occurred." See 42 U.S.C. § 3612(i)(2); Godwin, 356 F. 3d 310, 311.  The alleged discriminatory acts that were the subject of Plaintiff's fair housing complaint, the denial of Plaintiff's application for housing assistance, occurred in the St. Louis, Missouri metropolitan area and, the HUD office involved in the investigation of this complaint is also located in St. Louis.  As a result, venue lies in the Eastern District of Missouri.

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court grant his Motion, and dismiss the Complaint.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

__/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Chris Opfer, Trial Attorney
U.S. Department of Housing and Urban Development
Office of Litigation
451 7th Street S.W.,
Washington, DC 20410

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 4th day of December, 2007, the foregoing *Defendant's*

*Reply in Support of Defendant's Motion to Dismiss or, in the alternative, for Summary*

*Judgment*, and the accompanying Exhibits, were served upon the *pro se* Plaintiff by first class

mail, postage prepaid mail addressed as follows:

   Michael West
   P.O. Box 1935
   St. Charles, MO 63302

         __/s/_____
         JONATHAN C. BRUMER, D.C. BAR # 463328
         Special Assistant United States Attorney
         555 Fourth Street, N.W., Room E4815
         Washington, D.C. 20530
         (202) 514-7431
         (202) 514-8780 (facsimile)

# EXHIBIT   1

Declaration of Cynthia O'Connor

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHAEL WEST, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CV 07-0727 RMC |
| V. | ) | |
| | ) | Declaration of Cynthia |
| ALPHONSO JACKSON, Secretary | ) | O'Connor |
| of the United States Department | ) | |
| of Housing and Urban Development, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DECLARATION OF CYNTHIA O'CONNOR

I, Cynthia O'Connor, declare and state as follows:

1.  I am currently employed as the Executive Secretary of the United States Department of Housing and Urban Development ("HUD"). I have been employed in this position for approximately two years and nine months.

2.  As part of my job duties, I prepare correspondence on behalf of HUD concerning requests for records submitted to HUD pursuant to the Freedom of Information Act ("FOIA").

3.  On February 23, 2007, I sent a letter to Mr. Michael West, P.O. Box 1935, St. Charles, MO 63302-1935, via U.S. Mail. In this letter, I confirmed that HUD's FOIA Office received Mr. West's January 24, 2007 FOIA requests and his additional correspondence regarding the requests, dated February 12, 2007, on February 21, 2007. I also indicated that, based on HUD's current inventory of FOIA requests, it would take approximately 45 days to process Mr. West's FOIA requests.

4.  To this date, I have not been notified by the United States Postal Service that my February 23, 2007 letter to Mr. West was returned to HUD for any reason.

5.  On April 24, 2007, I sent a letter to Mr. Michael West, P.O. Box 1935, St. Charles, MO 63302-1935, via U.S. Mail. I again confirmed that HUD's FOIA Office had received Mr. West's January 24, 2007 FOIA requests and his additional correspondence regarding the requests, dated February 12, 2007, on February 21, 2007. I also informed Mr. West that a search of HUD

Headquarters' records failed to locate documents responsive to Mr. West's requests.

6.    To this date, I have not been notified by the United States Postal Service that my April 24, 2007 letter to Mr. West was returned to HUD for any reason.

I, Cynthia O'Connor, declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

_Cynthia O'Connor_

CYNTHIA O'CONNOR
Executive Secretary
U.S. Department of Housing &
Urban Development

# EXHIBIT   2

February 28, 2004 E-mail from the Plaintiff Michael West to
Andrew L. Boeddeker of HUD, and
March 5, 2004 E-mail from Mr. Boeddeker
to the Plaintiff

**From:** Andrew L. Boeddeker [mailto:andrew.l.boeddeker@hud.gov]
**Sent:** Friday, March 05, 2004 1:12 PM
**To:** j s
**Cc:** Straussner, Patricia A; Bedlington, Laurie A; Lois M. Hoover/OGC/KAN/HUD
**Subject:** Re: Federal Question Complaint and FOIA Act Request of Feb. 28th

Michael West:

See the answers to your questions in bold below.  Further, if Ms. Stephens or Mr. Kleewein feel that they have been unfairly treated by NECAC, they should contact NECAC to address the issue.  I do not have any complaint from Ms. Stephens or Mr. Kleewein that they have been unfairly treated.  They are also welcome to contact me or Ms. Straussner directly.  If you feel that you have been discriminated against by NECAC regarding these issues, you, **you should contact the Fair Housing and Equal Opportunity Office at 1-800-743-5323**

Regarding your FOIA Act Request of February 28th, we do not maintain records of individual HAP Contracts, rather these records are maintained by the Housing Authority and the release of these records are covered under state law.  We are only required to release records that we maintain under the Freedom of Information Act.

It is considered a denial of information when an agency is unable to provide all of the requested information because some of the information is either not available or not maintained in the agency's system of records.  For that reason, you have the right to a review of this denial of information by the Office of General Counsel.  In order to exercise such a right, your request should be made within 30 days of the issuance of this letter.  The request should include a copy of your original request and a copy of this denial letter as well as a statement of the circumstances, reasons or arguments advanced in support of full disclosure.  Your letter, as well as the envelope, should be clearly marked "Freedom of Information Act Request for Review," and sent to the following:

Assistant General Counsel for Training and Administrative Law
U.S. Department of Housing and Urban Development
451 Seventh St, S.W., Room 10246
Washington, D.C.  20410.

Again, I believe that further discourse will not be fruitful to you or the Department.

Sincerely,

Andrew L. Boeddeker
Director
Kansas City Hub Office of Public Housing

j s <<u>harleyd_ok4u@yahoo.com</u>>

02/28/2004 02:02 PM

To:   <u>andrew_l._boeddeker@hud.gov</u>
cc:   <u>patricia_a._straussner@hud.gov</u>
Subject: Federal Question Complaint and FOIA Act Request

Mr. Boeddeker:

I am sorry that you feel that I have taken too much of your time. Additionally, you state that I "wish to twist...the rules." Here, I do not understand and am trying to obtain material information relevant to this program and as may applicable to my pending HAP application.

In further response, I feel I am at a disadvantaged because your present refusal to provide me with relevant confirmation and verification of "approved" procedural and policy information implicitly suggests that "granting" or "denying" an application for HUD's housing assistance program are made on an abusive, arbitrary or capriscious manner. Under these circumstances, I believe it is rather easy to discern how am I am prejudiced, as well as others that are similarly situated.

I believe it was Feb. 11th that NECAC reported in the St. Charles Journal newspaper that over 1,200 applicants are presently on the "waiting list." In comparison, I have uncovered a procedural flaw that allows applicants and landlords to circumvent the well-established "no HUD approved renting or leasing from a family member" rule. Which raises the significant question as to how many other landlords are presently receiving a HUD money or check while violating this provision of law.

Here, I am not to blame Ms. Stephens nor Mr. Kleewein for their questionable activities because HUD's tacit approval of the present qualification process and/or failure to adequately implement a "better" procedure for NECAC to make a reasonable inquiry into such matters made it quite easy for both Ms. Stephens and Mr. Kleewein to become unfair "prey of HUD." I believe I fairly used the word "prey" because the following facts and events reflect that Ms. Stephens may have been unfairly coerced or lured into doing something that she would not have even considered as part of a "remedy" to cure the cramped, past living arrangements.

Ms. Stephens does not own many material possessions. So this was not a matter of her having too many personal items or being overcrowed by material possession.

Moreover, Ms. Stephens had repeatedly expressed her fair demand to NECAC for a bigger residence to live because the living conditions were too small for Julie, and growing ten and eight year old daughters. I

personally know of this fact because I had seen the where she was living. Additionally, one can review Ms. Stephen's casefile materials and see that she had used every legal means available to move out of the "too small and cramped" quarters under HAP. I personally reviewed HUD's regulations and helped her research most of the administrative matters and "waiver" actions she had requested.

Recently, however, I personally discovered evidence that reflects that NECAC may have unfairly withheld significant information as to available resources of UNDISCLOSED participating landlords that would have rented two and three bedroom houses to Julie under HAP.

In January 2004, I independently discovered this fact immediately above from a participating HUD landlord. In this discovery, a NECAC representative contacted the landlord on behalf of the applicant, instead of the applicant being provided with weekly or bi-weekly "updated" list of participating landlords either houses, apartments, or other better living conditions.

The present NECAC practice is to prepare a monthly list of available landlords which is of no great benefit, because ot lists only the "repeat players" list consisting of the landlords that have several units available on a routine basis. Some landlords do not make it on the list because NECAC has carefully chosen not to place them on the list for "unknown" reasons, or because the list is not updated more than once a month, which deprive several participating members of HAP from moving into better living conditions as well as providing, generally speaking, "better quality of life."

Under these cicumstances, and despite better judgment, I believe Ms. Stephens was only do what any loving mother would do...and that was to find a "bigger and better place" and more suitable living conditions to raise her growing two daughters.

I have known Julie for over twenty years and what she had recently done by omitting or indicating her direct relationship with her landlord brother is out of her easily identifiable and respective character. In other words, she was "lured" into this because of present certification process and the circumstances presented immediately above.

In fact, it had been previously brought to my attention that a NECAC representative had expressed to Ms. Stephens that they DO NOT check on the background and relationships of the participating landlords as part of its HAP approval process. I was sitting besides Ms. Stephens when she received a telephone call from NECAC representaive pertaining to this fact during Summer 2003.

In either case of whether NECAC withheld this information or not, the fact remains that there are no procedural safeguards in place because "certifying" a fact is not the same as HUD or NECAC making a reasonable investigation into a material fact that would have a substantial effect on whether to grant or deny a HAP applicant or someone else, as in Ms. Stephen's case, who is already participating in this program.

As provided for in prior communications below, I had previously provided to you and listed certain procedural steps that are generally followed on a daily, routine basis by NECAC during this administrative process. However, I feel distressed, less worthy, and am now becoming somewhat concerned because you will not completely address these matters of fact and procedural issues.

First, you mention that "all of those things combined do not mean that HAP Payments have been made, nor HAP contract was executed..."

Second, you also mention that there is no HAP contract on this unit in question.  The following is submiited for your consideration in response to these two claims.

*****

What you failed to mention is the fact that it is NECAC's routine practice is to execute a HAP contract, which in terms of "execution" is complete on the same date of "passing" the statutory imposed HUD housing inspection for suitability.  The HAP contract is prepared and signed by the landlord prior to the suitabitily inspection. This practice is not questioned because it may have potential financial savings and reduce the operating costs incurred in administering and implementing HUD/NECAC this housing assistance program.

Several relevant questions demand your attention, such as:

1.  What date does NECAC records reflect for this event of its inspection on the questioned unit?   As a matter of present NECAC procedure, this date will clearly establish an approved and executed HAP contract date.

**We do not maintain records of individual HAP Contracts, rather these records are maintained by the Housing Authority and the release of these records are covered under state law.  You would need to contact NECAC.**

2.  Is NECAC still implicitly claiming (1) no responsibility for procedural irregularities nor discrimination in this matter; and (2) NECAC has "no record" of Ms. Stephen's HAP contract of Dec. 2003 for questionable and identified unit of "167 Green Acres Drive" in this matter?

**No, they have explicitly stated that they have not executed a HAP Contract for the identified unit.   And if there is no HAP Contract executed, there are no irregularities nor has there been any discrimination in this matter.**

3.  What intervening events are you suggestion took place to revoke, rescind, or otherwise void the HAP contract established and/or executed in Dec. 2003 on this unit in question?

**I am not suggesting any events.  NECAC has explicitly stated to me that there is no executed HAP Contract on the identified unit and there is no reason for me to question this.**

If there are none, then state there are "none."

4.  All of NECAC's records are under your direct control, supervision, or maintenance.  Do you dispute this fact?

**NECAC's records are not under my direct control, supervision or maintenance.  NECAC is not part of HUD, rather they are the Contract Administrator of the Housing Choice Voucher Program for the Lincoln County Public Housing Agency.**

5.  Since this matter was orginally referred to both your attention and Ms. Patricia Straussner of the St. Louis HUD office, as a practical matter consisting of a reasonable HUD investigation, was an investigation ever initiated and/or completed?

**We do not comment on the initiation or completion of investigations.**

Upon available information and belief, HUD authorities do not have an unblemished record pertaining to its past *illegal* operations and activities. Should I say more?

**I do not know what you are referring to regarding this.**

With your responsibilites and present case load, is there anyone else that may have a better understanding and interest of these facts presented immediately above, or do you think you can find time in your busy schedule to address only the relevant facts and provide me with the specific information that I am requesting above under FOI Act and fully address the underlying complaint?

**The relevant facts have been addressed in my previous e-mails.  I believe that I have addressed your FOI Act requests and you have a right to seek a review as noted above.  I believe your complaint has been addressed but you are unwillingly to accept the facts.**

I look forward to hearing from you because these facts and matters raised above are of a matter of public interest and are appropriate for review by U.S. Congress...as congress would more likely than not be interested in these facts... and not the purported "personal" and unrelated matters that you have repeatedly tried to controvert this matter into.

In closing, may I suggest that your time would be better spent on addressing these narrowly focused issues and reasonably provide me with the information that I seek above rather than averring to separately identifiable issues and irrelevant matters that are of no legal significance or consequence to HUD.

Respectfully,

-Michael

# EXHIBIT   3

May 18, 2004 E-mail from the Plaintiff Michael West to
Andrew L. Boeddeker of HUD, and
May 21, 2004 E-mail from Mr. Boeddeker
to the Plaintiff

**From:** Andrew L. Boeddeker [mailto:andrew.l.boeddeker@hud.gov]
**Sent:** Friday, May 21, 2004 4:14 PM
**To:** j s
**Cc:** Straussner, Patricia A
**Subject:** Re: Complaint of Denied Access to HUD Services Due to Physical Disabilities

Dear Mr. West - You needed to send a letter to the Housing Authority requesting an informal hearing regarding the disposition of your application.   Your letter from Ms. Owens would have given specific instructions as how to request a hearing, including the timeframes for the request.  If you failed to follow those instructions, there is nothing further we can do to address your concerns.

If you feel you have been discriminated against by NECAC, you should contact the Office of Fair Housing and Equal Opportunity at 1-800-743-5323.

Sincerely,

Andrew L. Boeddeker
Director
Kansas City Hub Office of Public Housing

j s <harleyd_ok4u@yahoo.com>

05/18/2004 07:33 PM

To:     andrew_l._boeddeker@hud.gov
cc:
Subject: Complaint of Denied Access to HUD Services Due t

Dear Mr. Boedderker:

Please find the time to investigate as to why Ms. Nelva Owens of NECAC, Bowling Green, Missouri unreasonably refuses to respond to my written inquiries regarding housing assistance under HUD program.  To better illustrate, Ms. Owens sent me a letter back in March 2004.  In April 2004, I replied with relevant qustions pertaining to her allegations that I was part of a fraud.  To date, I have not reviewed a response.  Subsequently, two follow up letters were addressed to her offices attention.  These remain unanswered as well.

Based on the foregoing facts, I do not believe that I am afforded a fair administrative process and the present NECAC practice violates Title II under federal disability law.  Thus, I am making an informal request for your office to look into this matter.

I look forward to hearing from you soon.

Sincerely,

Michael West

Do you Yahoo!?

<u>SBC Yahoo!</u> - Internet access at a great low price.

# EXHIBIT   4

August 19, 2004 Letter from Donald D. Patrick of NECAC to
Barbara Rellman of the Office of Fair Hearing, and
July 25, 2005 Letter from Mr. Patrick to Frank Montgomery
of the Office of Fair Hearing & Equal Opportunity

# NECAC

**NORTH EAST COMMUNITY ACTION CORP.**

*a not-for-profit*
**Community Action Agency**

**Chairman of the Board**
Lyndon Bode *of Marion County*

**Executive Director**
Don Patrick

**Vice-Chairman**
Cindy Suter *of Randolph County*

**Secretary-Treasurer**
D. Randall Cone *of Pike County*

**Trustees**
Helen Keith *of Ralls County*
Fred Vahle *of Warren County*
Mike Bridgins *of St. Charles County*

## CENTRAL ADMINISTRATION OFFICE

16 NORTH COURT STREET, P.O. BOX 470
BOWLING GREEN, MISSOURI 63334-6470

Telephone: (573) 324-2231
TDD: 1-800-735-2966  VOICE: 1-800-735-2466

July 25, 2005

*Emailed*
*7/25*

U. S. Department of Housing & Urban Development
Attn: Frank Montgomery
Office of Fair Housing & Equal Opportunity
1222 Spruce Street - 3rd Floor
St. Louis, MO 63103

SUBJECT: West v. Northeast Community Action Corporation
07-04-0872-8; 07-04-0872-4

Dear Mr. Montgomery,

This correspondence is in response to your request for information regarding above case.
I am attaching August 19, 2004 correspondence to the HUD Office of Fair Housing. This
correspondence is a response to the housing discrimination complaint originally filed by
Mr. Michael West. This document explains everything that occurred through August 19,
2004.

After the August 19, 2004 correspondence was sent to the HUD Office of Fair Housing,
NECAC received a Determination on August 24, 2004. The Determination stated "the
Office of Fair Housing had completed its investigation of the subject complaint which
was filed under the Act. Based on the evidence obtained during the investigation, the
**Department has determined that reasonable cause does not exist to believe that a
discriminatory housing practice has occurred.**"

Mr. Michael West continued using Nelva Owens name on documents. The Missouri
Department of Revenue sent a notice to Michael West, % Nelva Owens, 16 N Court St,
Bowling Green, MO and was received at the North East Community Action Corporation
administrative offices. Nelva Owens has contacted the Missouri Department of Revenue
to advise them to remove her name from any correspondence for Michael West.



NECAC IS NOT A GOVERNMENT AGENCY
An Equal Opportunity / Affirmative Action Employer. Services provided on a nondiscriminatory basis.

When Mr. Michael West made a preliminary housing application at the St. Charles
NECAC Service center, he failed to provide county residency documentation or provide
social security documentation. These items were requested from him. His application
could not be accepted without documentation that is required from each applicant.
Although his application was denied because he lived with someone on Section 8
program, he failed to provide documentation which made his application invalid.

If you should require additional information regarding this case, please feel free to
contact Nelva Owens, Housing Rent-Assistance Programs Director, at (573) 324-2055.

Sincerely,

Donald D. Patrick
Executive Director

DDP/NO

attachments



Lyndon Bailey of Marion County

**Executive Director**
Don Patrick

**Vice-Chairman**
Cindy Suter *of Randolph County*

**Secretary-Treasurer**
D. Randall Canu *of Pike County*

**Trustees**
Helen Keith *of Halls County*
Fred Vahle *of Warren County*
Mike Bridgins *of St. Charles County*

## CENTRAL ADMINISTRATION OFFICE

16 NORTH COURT STREET, P.O. BOX 470
BOWLING GREEN, MISSOURI 63334-6470

Telephone: (573) 324-2281
TDD: 1-800-735-2966   VOICE: 1-800-735-2466

August 19, 2004

U.S. Department of Housing & Urban Development
Attention: Barbara Rellman
Office of Fair Housing
Robert A. Young Federal Building
1222 Spruce Street – 3rd Floor
St. Louis, MO 63103-2836

RE: HUD Case No. 07-04-0872-8   Inquiry No. 170989

Dear Ms. Rellman,

This letter is a response to the housing discrimination complaint filed against NECAC by Michael West. The following is a recapitulation of the facts regarding the alleged violation:

- Michael West requested an application for Section 8 rental assistance from the NECAC St. Charles County Service Center. The application was either mailed from the NECAC St. Charles County Service Center or picked up by Michael West at the same office December 1, 2003. The application is signed by Darlene Harkins. Along with the application, Michael West received a fact sheet which stated the documentation that was required to verify residency preference along with a copy of the social security card. Michael West completed the application for Section 8 rental assistance, dated it December 29, 2003, and returned it to the NECAC St. Charles county service center.

- When the application is received at a NECAC office, it is checked for completeness. When the application is complete, it can then be sent to the NECAC Administration Office for data entry and be placed on the waiting list. Because Michael West did not provide a copy of his social security card or proof of local residency preference, the file was held in the St. Charles office attempting to receive the required documentation from Mr. West. Marion Brown, a Title V worker employed in the St. Charles office was the employee attempting to get the required documentation in order to complete the application process.



NECAC IS NOT A GOVERNMENT AGENCY
An Equal Opportunity / Affirmative Action Employer. Services provided on a nondiscriminatory basis.

- On a December 29, 2003 letter that was attached to Michael West application for Section 8 rental assistance Michael West stated, quote: "That he was presently homeless and please provide referrals, which include cash. So that I can request a social security card for your administrative purposes. Additionally, since you do not accept a drivers license as proof of residency and the fact that all utility bills and lease was under Julie (Stephen's) name, may I suggest that you take my word as a future officer of the court or contact either Julie (Stephens) at her new Old Monroe residence or Cindy LaBeau, Julie (Stephen's) past landlord."

- Michael West stated on the Section 8 rental assistance application that he resided at 46 Vanguard, O'Fallon, MO. He stated that he lived there two years with Julie Stephens – a participant in the Section 8 program.

- The application was received at the Bowling Green administrative housing offices on February 9, 2004 without the local residency preference.

- March 1, 2004, a letter was sent to Michael West advising him that his application for the housing choice voucher program had been denied. Denial of assistance was based on his admission that he resided with Julie Stephens, a Section 8 housing participant, for two years while she received federal assistance. By Mr. West's own admission he resided with Ms. Stephens and was party to fraud committed by them.

- Michael West was given the information that he could apply for an informal hearing within 15 working days from the letter dated March 1, 2004.

- Michael West did not request an informal hearing.

**The above is the information regarding Michael West's application for rental assistance.**

**The following information is regarding other correspondence and contacts made by Michael West to NECAC officials, various county courts and officials, to HUD staff in St. Louis and Kansas City.**

- Beginning on December 2, 2003, NECAC and the Department of Housing & Urban Development office in St. Louis and Kansas City began receiving email messages and U.S. Mail from Michael West regarding his conflict with Julie Stephens and Christopher Kleewein. Mr. Kleewein is Julie Stephens brother. Michael West alleged that Ms. Stephens and Mr. Kleewein were – quote: "are/were actively involved in a scheme to defraud the U.S. Government via HUD Housing/Rental Assistance Program. Michael West contacted the St. Louis HUD office saying he was a legal studies student. He requested information regarding restrictions on who can own a rental property for a tenant to rent. On

January 7, 2004, Michael West was reporting to HUD officials that he resided with Julie Stephens during the time she received Section 8 rental assistance.

- During the time period December 2, 2003 and continuing through June 2004, NECAC staff received numerous mailings/HUD forwarded emails from Michael West including:

  - o Numerous email conversations with HUD officials
  - o Letters sent to Jack Banas, St. Charles County Prosecuting Attorney's office, January 13, 2004 – subject: **"Credibility Issues of Complaining Witnesses/Court's Want of Jurisdicition"**; and January 19, 2004 – subject: **"Supplement to Jan. 13, 2004 letter "Credibility Issues of Complaining Witnesses/Court's Want of Jurisdiction"**. Both letter listed Nelva Owens, NECAC, 16 North Court Street, Bowling Green, MO as the return address.
  - o The above documents prompted calls from Mr. Jack Banas to Nelva Owens, requesting the relationship between herself and Michael West, why he was using Nelva Owens as a return address.
  - o A January 23, 2004 letter from the Family Court of St. Charles County mailed to Michael West, % Nelva Owens, 16 North Court Street, Bowling Green, MO. Subject: **Response to January 19 and January 13, 2004 letter – "Judges are not allowed to have a one-sided communication with a party. Generally, judges are allowed to speak to people about a case only in court, when the other side also has an opportunity to participate. Consequently, Judge Briscoe cannot respond to the letters that you sent." Ending with" please send no further correspondence directly to him, as he is not allowed to respond to such letters." Signed by JoAnn Gust, Clerk, Division 4, with a copy sent to Chris Kleewein.**
  - o February 2, 2004 correspondence was sent to myself regarding Michael West's relationship with Julie Stephens. Subject: **"Whether NECAC's failure to provide a prompt, effective and meaningful agency investigation and enforcement program is the result of an arbitrary decision or constitutes an abuse of agency discretion."**
  - o March 8, 2004 correspondence sent by Michael West to Julie Stephens – returned to NECAC, as he used NECAC Adminstrative office address for return address. Subject – **" Request for Admissions"** Attached was a 15 page document titled **"REQUEST FOR ADMISSIONS."**
  - o March 18, 2004 correspondence from Washington University Parking Services regarding parking fines and addressed to: West Michael and Nelva Owens, 16 N. Court Street, Bowling Green, MO.

o  March 23, 2004, after the advise of NECAC legal council, Nelva
   Owens filed a complaint with the Bowling Green post office of a
   possible postal law violation. Michael West has been sending
   letters, even certified with a return address of 16 N. Court Street,
   Bowling Green, MO. Also, using Nelva Owens name for return
   mail.

o  March, 2004 a police officer from Bowling Green was attempting
   to deliver a subpoena to Michael West. He brought the subpoena
   to Nelva Owens. This was for a restraining order requested by
   Julie Stephens. At that time, staff was not aware which court the
   subpoena had been filed.

o  April 2, 2004 correspondence received from Michael West.
   Subject: **Housing Assistance**. In the letter he stated, **"requesting
   a hearing will not provide me with the necessary information
   that I need to make a well-informed decision or not to appeal."**
   He requested that Nelva Owens send him a few postage prepaid
   envelopes and supporting facts and evidence.

o  April 5, 2004 correspondence from Michael West to Nelva Owens.
   Subject : **Discriminatory practices for housing assistance.
   "Does not set forth in so many words any instruction other
   than "you can request a hearing", the giving of which is
   regarded by this applicant as erroneous".** There was again
   reference to Michael West relationship with Julie Stephens and Mr.
   Kleewein.

o  May 5, 2004 correspondence form Michael West. Subject: **"Ten-
   Day notice-Discriminatory Practices for Housing Assistance."**
   And **"requesting written responsive correspondence pertaining
   to the issues fairly raised within my housing assistance
   request."**

o  May 21, 2004 email correspondence with HUD officials, Michael
   West stated that he had asked relevant questions pertaining to the
   allegations and had not received a response. The HUD officials
   responded that he needed to follow the instructions in the letter
   regarding requesting an informal hearing.

o  June 9, 2004 a St. Charles circuit court subpoena was issued to
   Nelva Owens to appear in St. Charles circuit court and bring
   documents sent to NECAC from Michael West regarding
   Christopher Kleewein and Julie Stephens. After discussion with
   the NECAC legal council, the documentation was faxed to the
   circuit court.

o  June 21, 2004 a subpoena was issued to the NECAC Lincoln
   County staff to provide agreements between Julie Stephens and
   NECAC to Michael West. This case was rescheduled.

My Housing staff has expended an enormous amount of time on this case. Michael West did not request an informal hearing as were the instructions of the March 1, 2004 letter denying his application for rental assistance. In no way has NECAC discriminated against Mr. West. Documentation is on file to support the above details. If you should have any questions regarding the information provided, please feel free to contact Nelva Owens, Section 8 Rent Assistance Program Director, at (573) 324-2055.

Sincerely,

Donald D. Patrick
Executive Director

DDP:NO/no

Cc:    Nelva Owens, Housing Director

# EXHIBIT   5

Plaintiff's December 2003 Initial Preliminary
Application for participation in the Section 8
Housing Choice Voucher Program,
and March 1, 2004 Letter from Nelva Owens of NECAC
to Plaintiff concerning that Application

# LINCOLN COUNTY PUBLIC HOUSING AGENCY

## INITIAL PRELIMINARY APPLICATION

CIRCLE COUNTY APPLYING FOR:

LEWIS    MONROE    RANDOLPH
LINCOLN    MONTGOMERY    ST. CHARLES
MACON    PIKE    SHELBY
MARION    RALLS    WARREN

AFA Number: _____

HEAR PROGRAM NAME: _____

USE LEGAL NAMES ONLY:

| | Head of Household | | Sex | Relationship to Head | Social Security No. | Date of Birth | Monthly Income | Source of Income |
|---|---|---|---|---|---|---|---|---|
| Race: ☒ White ☐ Black ☐ American Indian or Alaskan ☐ Native Asian or Pacific Islander | MICHAEL (First) | H/H | M | | | | |

Ethnicity: ☐ Hispanic ☒ Non-Hispanic

| Other Adults (Last, First, M.I.) | Sex | Relationship to Head | Social Security No. | Date of Birth | Age | School | Source of Income | Birthplace |
|---|---|---|---|---|---|---|---|---|
| n/a | | | | | | | | |
| n/a | | | | | | | | |
| n/a | | | | | | | | |

Minors (Last, First, M.I.)

Present mailing address: P.O. Box 1935

Live/worked: _____

Landlord: Cindy and Dave

NOTICE:
YOU ARE REQUIRED TO NOTIFY THE HOUSING AUTHORITY (IN WRITING) OF ANY CHANGES OF ADDRESS. IF WE CANNOT CONTACT YOU AT THE ABOVE ADDRESS, YOUR NAME MAY BE REMOVED FROM THE WAITING LIST, AND YOU WILL HAVE TO REAPPLY.

Have you ever violated a previous family obligation in connection with a HUD program?   ☐ Yes ☒ No
Do you owe any money to a Public Housing Authority?   ☐ Yes ☒ No
Have you ever been involved in drug-related criminal activity (including the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use a controlled substance)?   ☒ Yes ☐ No
Have you ever been involved in any type of criminal activity?   ☒ Yes ☐ No

I DO HEREBY CERTIFY THAT ALL INFORMATION I HAVE PROVIDED IS COMPLETE AND ACCURATE.

Signature: _____    Date: 12/09/2003    Time: 12:01

Staff person taking application: _____

HSG:

09/12/2006 MON 09:52 FAX 573 32ª 2361    NECAC-HOUSING







**CENTRAL ADMINISTRATION OFFICE**

16 NORTH COURT STREET, P.O. BOX 470
BOWLING GREEN, MISSOURI 63334-0470

Telephone: (873) 324-3231
TDD: 1-800-735-2966   VOICE: 1-800-735-2466

March 1, 2001

Michael West
% Ms. West
P. O. Box 1935
St. Charles, MO 63302

Dear Mr. West,

This letter is to advise you that your application for the housing choice voucher program
has been denied. Denial of assistance is based on your admission that you resided with
Julie Stephens, a Section 8 housing participant, for two years while she received federal
assistance. By your own admission that you resided with Ms. Stephens, you were party
to the fraud that was committed by both persons.

If you wish to appeal this decision, you have the right to an informal hearing. The
request must be submitted to this agency in writing within 15 working days from the date
of this letter. Your request should be submitted to me.

If your request is not received within the time period indicated above, you will waive
your right to a hearing and our decision to deny your application for rental assistance will
become final.

Sincerely,

Nelva Owens
Housing Director

Cc:    Carla Potts, Deputy Director
       Susan Duncan, Assistant Housing Director
       Reba Cooper, Lincoln Supervisor



NECAC IS NOT A GOVERNMENT AGENCY
An Equal Opportunity / Affirmative Action Employer. Services provided on a nondiscriminatory basis.