UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL WEST,                    )

                Plaintiff,        )

v.                               )          Case No. 07-0727 (RMC)
                                 )
ALPHONSO JACKSON, Secretary       )
of the Department of Housing and  )
Urban Development,               )
                                 )
                Defendant.        )

*Let this be filed. R. M. Colley! 2/21/08*

## PLAINTIFF'S REPLY TO DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COMES Now Plaintiff Michael West, *pro se*, and moves this court with Plaintiff's Reply to Defendant's Rely in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. The Plaintiff denies each and every allegation stated within its reply in support of motion to dismiss except as expressly provided for below. See Doc. No. 22. In support of Plaintiff's Reply, the following is provided:

1. Contrary to defendant's introduction, this case concerns several due process and abuse of discretion claims against defendant and its representative agency – NECAC. See West's Decl, 9 pages.

2. Additionally, the defendant argues that it representative does not have to provide due process or fair hearing opportunities despite its unsupported sole reliance on the Fair Housing Act. See 24 C.F.R. § 103.5 ("In addition to the Fair Housing Act, other civil rights authorities may be applicable in a particular case.")

# RECEIVED

FEB 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3.  As repeatedly stated within West's pleadings and papers, the underlying controlling federal statute in this case pertains to Department of Justice's 28 C.F.R. Part 35 *et seq.* and not the Fair Housing Act as defendant falsely claims. See West's Decl. at 2.

4.  The defendant claims a series of events pertaining to West's application for housing benefits, in which West contends are false, misleading, or untrue. Importantly, West requested "reasonable accommodations" during his housing application process (West's Decl. at 3, 9). In contrast, the defendant does not rebut this claim with any substantial evidence showing otherwise. These facts and evidence states a live Art. III case and controversy for these due process and Title II of ADA claims.

5.  Similarly, a live case and controversy remains with regards to defendant and its representative agency's due process violations consisting of, but not limited to: (1) their *ex parte* hearing process, (2) their failure to provide timely reconsideration process, (3) their failure to provide timely "reasonable accommodations", (4) sustaining adverse agency actions without any substantial supporting evidence, i.e., no credible evidence that West "committed fraud by improperly residing with Ms. Stephens." Cf. Doc. No. 22 at 3.

6.  To date, the defendant does not deny that its representative housing agency, NECAC, conducts unlawful *ex parte* hearings in violation of due process under the Fifth Amendment. Doc. No. 22 at 3.

7.  Similarly, to date, the defendant has not taken any corrective action with regards to these abusive, unconstitutional administrative practices against claimant West. Here, the defendant offers no substantial evidence to the contrary.

8.  Additionally, the defendant falsely claims that West did not request a hearing with regards to his Section 8 housing application. See e.g. West's Decl at 3. Cf. Doc No.22 at 4.

9. In contrast, the defendant conceded that West had requested all materials used in support of its adverse agency action to be used at the alleged informal hearing. West's Decl. at 9; P's Oppos. to D.'s mot. to dismiss, or in the alternative, for summary judgment at 10. Cf. Doc. No. 22 at 4.

10. It is irrefutable that, to date, neither defendant or its administering agency (NECAC) have provided West all materials used in support of adverse agency action of denial of his housing application, which clearly states another due process claim.

11. As demonstrated above, plaintiff will not rehash the defendant's several other unsupported claims with regards to this case and Rule 8 of the Federal Rules of Civil Procedure, such as the defendant's claim that West "due process" is a new claim because it has been properly corrected to read as a "fifth" amendment violation instead of fourteenth amendment as reflected within the original complaint. See West's Complaint, as amended.

12. After reviewing defendant's reply and motion to dismiss, the defendant asserts no prejudice with respect to West due process violations claims raised within the original complaint whether enumerated as a fifth amendment or fourteenth amendment claim.

13. Just as remarkable, the defendant's declaration(s) should be given little or no weight because they are clearly "undated." See D.'s Exhibit 1. Notwithstanding, as clearly stated within West's declaration, this "Plaintiff never received anything from HUD's Ms. O'Connor with regards to e-FOIA requests." West's Decl. at 6. This is further demonstrated by the irrefutable fact that HUD officials regularly used *e-mail* to correspond with West. See D.'s response to P.'s "Request for a true and complete copy of D.'s reply brief in response to P.'s opposition" at 2.

14. The record shows that the defendant attached no documentary materials that HUD sent anything with regards to FOIA request via email nor attached a copy of any return receipt provided by U.S. Postal authorities showing delivery confirmation.

15. Moreover, the defendant failed to file evidence with this Court with regards to at least "two follow up letters" pertaining to West's Section 8 housing application. D.'s Exhibit 3 at 2. Under these circumstances, West believes discovery is necessary to fairly reveal this evidence for the Court's proper consideration. West contends these unfairly withheld materials within defendant's control or possession pertained to his evidentiary hearing requests.

16. Similarly, there is no mention of the West's "two follow up letters" within defendant's Exhibit 4. Id.

17. Under these circumstances, the defendant's case law authorities do not apply.

18. Moreover, the defendant falsely claims that West does not have a legal recognizable interest in receiving government housing benefits. See Doc. No. 22 at 10.

19. Moreover, the defendant's arguments and evidence keeps changing like the weather because on one day the defendant claims that West did not reside with Julie Stephens. See D's MTD/MSJ.

20. On a different day West resided with Julie Stephens for two years. See Doc. No. 22 at 10.

21. To date, there is no evidence provided by HUD (or its representative) that they ever contacted the "landlord" Cindy Le Beau listed on West's application for housing assistance. Cf. D.'s Exhibit 5 at 2.

attaches no evidence to support its claims, which may be patently false in light of the statutory provisions under 28 C.F.R. Part 35 discrimination claims.

23. Under these circumstances, West's need for all materials used in support of the HUD's and its administering agency's adverse housing benefits action was even more significant to protect him from further "arbitrary and capricious" and discriminatory agency actions.

24. Moreover, the defendant's practice to withhold these requested materials further infringed on West's due process right to an impartial hearing under 24 C.F.R. § 982.555. Cf. Doc. No. 22 (Defendant does not address or mention the withheld materials wrongfully kept from West's review).

25. Additionally, defendant claims that West has no property interest in his girlfriends housing assistance. Doc No. 22 at 12. However, West contends that he has an interest in all evidence and claims that the agency used in support of adverse agency action denying West's application for Section 8 housing benefits.

26. As demonstrated above, the defendant maintains that West housing assistance was denied because he had been living with Ms. Stephens. See D.'s Exhibit 3 at 3.

27. However, the *ex parte* hearing – without West being properly notified nor allowed to submit evidence - of these important facts that directly pertained to West and his alleged occupancy at the Stephens residence fails to properly consider this evidence in light of West's very own application in which he clearly has an identifiable interest in receiving said benefits.

28. To date, West has not received any correction letter from HUD or its administering agency that shows that the HUD agency's records had been corrected with regards to its original claim that West had resided with Stephens. Cf. D.'s Exhibit 3, above.

29. Nevertheless, as a qualified applicant, the defendant failed to proffer any evidence as to why Julie Stephens did not reasonably list West on her separate housing application, which may have timely provided West independent and subsequent housing assistance under HUD's federally funded programs.

30. As West believes, this discriminatory practice above is similar to HUD's administering agency's failure to respond to housing assistance inquiries. See D.'s Exhibit 3.

31. Remarkably, despite the fact that the due process violations were reported to HUD officials, the defendant attaches no evidence of any written factual findings with regards to those fairly reported disability discrimination allegations in further violation of due process under the Fifth Amendment and federal disability laws. Cf. D.'s Exhibit 3.

32. Remarkably, the respondent concedes that West contacted defendant's regional offices identifying several due process violations committed against West. See Doc. No. 22 at 12; D.'s Exhibit 3.

33. According to this record, it can be said that West was repeatedly denied due process, denied a timely reconsideration administrative process, as well as, being denied fair notice and full opportunity for an impartial hearing.

34. Moreover, as illustrated above, these facts represent a pattern of defendant's "abuse of discretion" in the Section 8 housing program that warrant judicial review. At a minimum, the available evidence shows that the defendant's program clearly abused its discretion: (1) by denying West access to the material evidence used in support of initial denial determination, and (2) by denying West a full and fair hearing opportunity to challenge the adverse agency action.

35. Regardless of the defendant's ever changing story, the defendant affirmatively fails to properly address the West's "reasonable accommodation", Rehab Act, and Title II of ADA

claims by failing to file the received West's request for accommodations from the outset. <u>See</u> D's Exhibit 3 at 2. ("These remain unanswered as well.")

36. Remarkably, similar to West's prior FOIA case against this same defendant, the defendant is *again* sand-bagging this Court by withholding documents and then simultaneously claim the same materials were not received. In the present case, the defendant falsely claims that West did not make any request for accommodations, while simultaneously withholding at least two "follow up letters" addressing West's written, requested accommodations. <u>See</u> Doc. No. 22 at 15 ("he does not identify the accommodation he allegedly sought"); <u>Cf.</u> D's Exhibit 3 at 2.

37. Notwithstanding, HUD retains coercive power over NECAC to support West's Fifth amendment claims which readily distinguished San Francisco Arts and from the instant case.

38. It is undisputed that HUD controls, supervises, or disciplines its subordinate agencies whether non-profit or not...including NECAC. In fact, the defendant implicitly or expressly claims that HUD has no control over its administering agency's "informal hearing procedures." <u>See</u> Doc. No. 22 at 13. However, as its own regulations show, the defendant retains coercive power or substantial encouragement over NECAC.

39. Additionally, here NECAC is not limited to receiving federal HUD funds for housing assistance programs conducted by defendant but its hearings are also controlled by HUD's regulations as well. <u>See</u> 24 C.F.R. § 982.555 ("A PHA must give a participant family an opportunity for an informal hearing to consider whether the following PHA decisions relating to the individual circumstances of a participant family are in accordance with the law, HUD regulations and PHA policies.") <u>Cf.</u> Doc. No. 22 at 13.

40. Moreover, the defendant failed to produce the discrimination complaint materials directed to its regional offices, which clearly contradicts defendant's claim that West did not

allege any discriminatory practices committed by defendant and his subordinates.  See e.g. West's Exhibit A.  Moreover, it is undisputed that defendant did in fact receive allegations pertaining to the discriminatory practices of HUD employees regardless of whether HUD's Boeddeker was unable to forward these complaint allegations to the appropriate office or not under 28 C.F.R. Part 35.  See also Letters from HUD's Henderson and Kosuth.  In contrast, the "Defendant fails to reasonably explain why the reconsideration materials may have been directed to Mr. Turner Russell and all related correspondence would be sent back to and archived at the HUD Kansas City office." P.'s Memo in Opposition at 9.

41. It is respectfully suggested that discovery may be needed to fairly resolve these Rehabilitation Act/Due Process claims and whether or not they were fairly presented to defendant's agency before proceeding in this federal court.  See West's Complaint at 1.

42. Here, the defendant also falsely claims that West did not request the "Boeddeker, Henderson, Kosuth, Straussner, Russell, and Wartts" materials under the present FOIA requests. See Doc. No. 22 at 19.  However, as stated in plain English language, West requested all materials that pertain to him or alleged impartial investigations, which would generally include all communications from these HUD's employees that directly or indirectly mentioned West. See West's Complaint, as amended.  Are these materials not archived within the defendant's Chron files, as defendant previously claimed?  See D.'s MTD/MSJ.

43. Nevertheless, defendant claims that Robbie Henderson is not employed by HUD. Conversely, defendant filed no affidavit or other credible evidence to support this claim.  Cf. Doc. No. 22 at 19.

44. Under the defendant's false, misleading, or untrue misrepresentations, West believes it is time for the defendant and his attorneys "to set the crack pipe down, and return to reality." Here

the defendant relies on <u>Godwin v. HUD</u>, 356 F.3d 310 (DC Cir 2004). In light of the fact that West filed a separate 28 C.F.R. Part 35 discrimination complaint, <u>Godwin</u> is also readily distinguished as shown immediately below.

45. As mentioned from the outset, the instant Complaint, as amended, pertains to several "due process" violations committed by defendant with regards to the underlying 28 C.F.R. Part 35 complaint, as well as West's several claims against defendant for due process violations under the Rehabilitation Act.

46. Furthermore, as shown in one of the several e-mails that West contends that defendant failed to produce in accordance with West's instant FOIA request, this document may suggests that Mr. Wartts and Turner Russell may have unlawfully conspired to deny West's constitutional rights to due process, in light of West's requests for reconsideration. As West partially shows with previously filed evidence with this federal Court, Wartts and Russell regularly communicate <i>via</i> email with matters pertaining to West. <u>See</u> West's Exhibits B and C.

47. Here, Mr. Russell's office is unquestionably located within the jurisdiction of this court. After three years, West has not received proper factual findings with respect to the matters raised within his HUD reconsideration request…an egregious due process violation, to say the least.

48. Additionally, the defendant claims that it derived its 28 C.F.R. Part 35 authority to investigate discrimination complaint comes from the Fair Housing Act. <u>See</u> Doc.No. 22 at 22. However, a careful and thorough review of Part 35, this statute does not reflect this fact, nor does the defendant show how it came to this conclusion. Additionally, the defendant's "failure to investigate" practice reasonably states an independent due process violation, in which is subject to judicial review under APA and the authorities cited in Plaintiff's memo in opposition and below.

49. Most recently, on December 12, 2007 the Court of Appeals for the District of Columbia reviewed a defendant's similar claim of "unreviewability." <u>Cody v. Cox</u>, No. 06-5253 (DC Cir. 2007).

50. In <u>Cody</u>, the Court of Appeals for the District of Columbia explained:

> In 2006, Congress amended section 413, mandating specific measures regarding physicians, dentists, and transportation, and requiring the COO to issue uniform standards to ensure access to care. The district court found that these amendments rendered plaintiffs' claims moot and granted defendants' motion to dismiss the case. See Cody v. Rumsfeld, 450 F. Supp. 2d 5, 9-11 (D.D.C. 2006).
>
> ***
>
> The mootness doctrine ensures that federal courts only decide ongoing cases and controversies. Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc). For a case to become moot, it must be "impossible for the court to grant 'any effectual relief whatever.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).
>
> When plaintiffs filed their complaint, subsection 413(a) provided that a resident at the Home "shall receive the services authorized by the Chief Operating Officer." 24 U.S.C. § 413(a) (Supp. I 2001)). Subsection (b) was the only limitation on the COO's discretion and mandated that the Home "shall provide for the overall health care needs of residents in a high quality and cost-effective manner, including on site primary care, medical care, and a continuum of long-term care services." § 413(b) (emphasis added).
>
> ***
>
> Defendants claim subsection (b)'s "high quality and cost effective" health care requirement is exempted from judicial review under the Administrative Procedure Act because the COO's decision is "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2).3 To prevail, defendants must rebut the presumption that agency action is judicially reviewable by showing "the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" Lincoln v. Vigil, 508 U.S. 182, 191 (1993) (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)). Defendants have failed to satisfy this burden.

<u>Id.</u> The Court of Appeals relied upon <u>Heckler v. Chaney</u>, 470 U.S. 821 (1985) to reach its conclusion in <u>Cody</u> above.

51. Petitioner also relies on <u>Heckler</u> in support of this Court's reviewability with respect to the instant case, the due process and Rehab Act violations. <u>Dunlop v. Bachowski,</u> 421 U. S. 560 (1975).

52. In <u>Heckler</u>, the U.S. Supreme Court explained:

> Dunlop v. Bachowski, 421 U. S. 560 (1975), relied upon heavily by respondents and the majority in the Court of Appeals, presents an example of statutory language which supplied sufficient standards to rebut the presumption of unreviewability. Dunlop involved a suit by a union employee, under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481 et seq. (LMRDA), asking the Secretary of Labor to investigate and file suit to set aside a union election. Section 482 provided that, upon filing of a complaint by a union member,
>
> "[t]he Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation . . . has occurred . . . he shall . . . bring a civil action. . . ."
>
> After investigating the plaintiff's claims, the Secretary of Labor declined to file suit, and the plaintiff sought judicial review under the APA. This Court held that review was available. It rejected the Secretary's argument that the statute precluded judicial review, and, in a footnote, it stated its agreement with the conclusion of the Court of Appeals that the decision was not "an unreviewable exercise of prosecutorial discretion." 421 U.S. at 567, n. 7. Our textual references to the "strong presumption" of reviewability in Dunlop were addressed only to the § (a)(1) exception; we were content to rely on the Court of Appeals' opinion to hold that the § (a)(2) exception did not apply. *The Court of Appeals, in turn, had found the "principle of absolute prosecutorial discretion" inapplicable, because the language of the LMRDA indicated that the Secretary was required to file suit if certain "clearly defined" factors were present.* The decision therefore was not "beyond the judicial capacity to supervise.'" Bachowski v. Brennan, 502 F.2d 79, 87-88 (CA3 1974) (quoting Davis § 28.16, p. 984 (1970 Supp.)).

<u>Heckler</u>, 470 U. S. 833-34.  (Emphasis added).

53. Under <u>Heckler</u>, here the defendant should not be afforded absolute prosecutorial discretion with respect to the "shall" provisions of 28 CFR Part 35 *et seq.* and its supporting federal statutory authorities. <u>See</u> P.'s Memo in Opposition.

54. Moreover, the defendant fails to follow his own regulations, as previously illustrated, which states an additional due process claim. <u>See</u> West's Decl.

55. Nevertheless, the "abuse of discretion" standard may be applied in this case against defendant under APA. 5 U.S.C. §§ 701-706 provides any person "adversely affected or aggrieved" by agency action, see § 702, includes a "failure to act," is entitled to "judicial review thereof." Cf. Heckler, 470 U. S. at 829.

56. Here, in part, the instant case pertains to a reasonable "investigation" action claim invoked by DOJ's procedural rules promulgated under 28 CFR Part 35. Under these irrefutable facts, the likelihood and/or fair administration of secretary's agency "enforcement action" authorities is misplaced because the defendant is attempting "to put the cart in front of the horse." For these reasons, Heckler's limiting language may be distinguished from the instant case. Id., 470 U.S. at 831. Under these circumstances, the instant defendant exceeded "its statutory powers." Id., 470 U. S. at 832.

57. Moreover, Plaintiff West contends that the present administrative practice is fundamentally unfair especially in light of the fact that the defendant does not provide any evidence as to "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." Heckler, 470 U. S. at 831.

58. Here, several allegations of discrimination and retaliation have not been reasonably investigated in violation of DOJ's controlling regulations and defendant's ministerial duty to investigate disability discrimination complaints, which fairly states a due process claim against defendant. See West's Complaint, as amended; 29 C.F.R. 35.171 et seq. Cf. Doc. No. 22 at 22 (Defendant HUD argues that 28 CFR Part 35 does not require HUD to investigate discrimination claim). Defendant does not cite any authorities in support of the proposition that Part 35 does

not require HUD to investigate, in which no other federal agency had ever argued that U.S. DOJ's regulations do not apply to them. How absurd.

59. Moreover, the defendant fails to show how defendant's very own discriminatory acts and due process violations committed by this HUD District of Columbia defendant and his higher level officials, *i.e.* Mr. Turner Russell, against West does not reasonably fall under this Court's venue and jurisdiction, as illustrated above. Cf. Doc. No. 22 at 24-25.

For these reasons, the Court should not hesitate to deny defendant's motion to dismiss/motion for summary judgment, and grant any other relief fit in the premises.

**************

Respectfully submitted this <u>30th</u> day of January 2008.

Michael West, *pro se*
P.O. Box 1935
St. Charles, MO 63302
No phone

## **CERTIFICATE OF SERVICE**

I certify that a true and complete copy of the foregoing motion was placed in the U.S. Mail, postage pre-paid, this <u>30th</u> day of January 2008, to

Jeffrey Taylor
U.S. Attorneys Office
555 Fourth St., N.W., Rm E4816
Washington, D.C. 20530