**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MICHAEL WEST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-727 (RMC)** |
| | ) | |
| **ALPHONSO JACKSON, Secretary,** | ) | |
| **Department of Housing and Urban** | ) | |
| **Development,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Michael West, proceeding pro se, sued Alphonso Jackson, Secretary of the
Department of Housing and Urban Development ("HUD"), in his official capacity. Counts 1 and 2
of the Complaint allege violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and
Count 3 asserts a claim regarding HUD's response to a fair housing complaint that Mr. West filed.
Mr. West's Complaint alleged that Northeast Community Action Corporation ("NECAC")
discriminated against him based on his disability by denying him Section 8 housing. HUD has
moved to dismiss or for summary judgment. Def.'s Mot. to Dismiss or for Summ. J. [Dkt. #15]. As
explained below, HUD's motion will be granted.

**I. FACTS**

The NECAC is a nonprofit community organization which delivers a variety of social
service programs to low income, handicapped and other disadvantaged individuals through grants
and contractual agreements with federal, state and local governments. NECAC provides Section 8
rental assistance and administers Section 8 housing in twelve counties in Missouri. "Section 8

housing" was created by the Housing Act of 1937, 42 U.S.C. §§ 1437-1440.  Under the Section 8

program, tenants make rental payments based on income and ability to pay and HUD, in turn, makes

assistance payments to private landlords to make up the difference between the tenant's contribution

and a contract rent agreed upon by the landlord and HUD.  *Cisneros v. Alpine Ridge Group*, 508 U.S.

10, 12 (1993) (citing 42 U.S.C. § 1437f(a)).   While HUD oversees the distribution of funds

appropriated by Congress, local public housing authorities such as NECAC make eligibility

determinations and disburse funds.  *See Nat'l Leased Housing Ass'n v. HUD*, No. 03-1509, 2007 WL

148829, at *1 (D.D.C. 2007) (citing  42 U.S.C. § 1437f(o)).

On December 29, 2003, Mr. West submitted an application to NECAC for Section

8 rental assistance.  Def.'s Reply, Exs. 4 & 5.  Mr. West stated on his application that he lived at 46

Vanguard, O'Fallon, Missouri, with Julie Stephens, a Section 8 participant.  *Id*.  On March 1, 2004,

NECAC Housing Director Nelva Owens sent Mr. West a letter indicating that his application was

denied based on his admission that he had resided with Ms. Stephens for two years while she

received federal Section 8 assistance.[1]  *Id*., Ex. 5.  The letter stated "[b]y your own admission that

you resided with Ms. Stephens, you were a party to the fraud that was committed."  *Id*.  Further, the

application also was denied because Mr. West failed to provide required social security or county

residency documentation.  *Id*., Ex. 4.

On February 28, 2004, Mr. West emailed Andrew Boeddeker, Director of the Kansas

City Hub Office of Public Housing, HUD, requesting NECAC records and complaining of unfairness

to Ms. Stephens because her housing assistance had been terminated.  *Id*., Ex. 2.  Mr. Boedekker

---

[1] Ms. Owens letter also indicated that Mr. West could request an informal hearing, but he did not do so.  Def.'s Reply, Exs. 4 & 5.

responded that HUD does not maintain NECAC records, NECAC does; also, HUD had not received

a complaint from Ms. Stephens. *Id*. On May 18, 2004, Mr. West again emailed Mr. Boedekker.

This time he requested that HUD investigate "why Ms. Nelva Owens of NECAC, Bowling Green,

Missouri unreasonably refuses to respond to my written inquires regarding housing assistance under

HUD [sic] program." *Id*., Ex. 3. Mr. West explained:

> Ms. Owens sent me a letter back in March 2004 [denying housing
> assistance due to fraud]. In April 2004, I replied with relevant
> questions pertaining to her allegations that I was part of a fraud. To
> date I have not received a response.

*Id*. Mr. Boeddeker responded:

> Dear Mr. West – You needed to send a letter to the Housing Authority
> requesting an informal hearing regarding the disposition of your
> application. Your letter from Ms. Owens would have given specific
> instructions as how to request a hearing, including the time frames for
> the request. If you failed to follow those instructions, there is nothing
> further we can do to address your concerns. If you feel that you have
> been discriminated against by NECAC, you should contact the Office
> of Fair Housing and Equal Opportunity at 1-800-743-5323.

*Id*.

On July 27, 2004, Mr. West filed an administrative complaint with HUD's office of

Fair Housing and Equal Opportunity ("FHEO"). In his complaint he claimed that NECAC refused

to process his application to participate in Section 8 housing, and that while NECAC indicated that

its refusal was based on Mr. West' prior fraud, Mr. West alleged that such refusal in fact was based

on Mr. West's disability. Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mot."), Ex. 1. HUD

assigned Franklin Montgomery, an Equal Opportunity Specialist, to investigate Mr. West's charge

of discrimination. *Id*., Ex. 10, Decl. of Montgomery. During his investigation, Ms. Owens told Mr.

Montgomery that NECAC had held a hearing regarding the termination of housing assistance for

Julie Stephens. *Id*. ¶ 3. The issue at the hearing was whether Ms. Stephens had defrauded NECAC

by permitting Mr. West to live at her home without notifying NECAC. *Id*. No HUD representatives

were involved in the hearing or the decision. *Id*. ¶ 4. On November 9, 2005, HUD notified Mr. West

by letter that it had determined that no reasonable cause existed to believe that a discriminatory

housing practice had occurred. Def.'s Mot., Ex. 2.

Over a year later, on January 24, 2007, Mr. West submitted a FOIA request to Turner

Russell, Director of FHEO's Enforcement Support Division at HUD headquarters. Mr. West

requested the following records:

> All communications originated by or dispatches to this HUD
> Enforcement Support Division enumerated above pertaining to:
>
>
> a. this instant requestor, Michael West;
>
> b. the Mraz investigation; and
>
> c. the Montgomery investigation.[2]

Def.'s Mot., Ex. 3. On the same date, Mr. West sent a second FOIA request seeking:

> [A]ll policies, or the like, that allow this federal agency:
>
> a. to use false or perjured evidence [to] close an investigation without
> providing a full and fair investigation into the merits of a complaint.
> See Mraz investigation.
>
> b. to base its investigative findings of fact and conclusions of law on
> false or perjured evidence. See Montgomery investigation.
>
> c. to ignore its statutory duty by not providing a full and fair agency
> review action upon this Director's office receiving [a]ppeal materials
> (Feb. 2006) pertaining to underlying investigations, in which [it]
> violates administrative due process under Administrative Procedure
> Act, 28 C.F.R. Part 35, and Fourteenth Amendment to the United

---

[2] Mr. West did not describe or define the Mraz or the Montgomery investigations.

States Constitution.  See Final Report (Nov. 2005).

*Id.*, Ex. 4.

Then, in a letter dated February 12, 2007, Mr. West complained that despite his two FOIA requests he had "not received HUD's cooperation in this matter or the specific requested materials" as reflected in the attached copies of his January 24, 2007 requests.  *Id.*, Ex. 5.  Mr. West indicated that he considered his February 12 letter an appeal.[3]  *Id.*  On February 23, 2007, HUD advised Mr. West that it had received his February 12 letter and began to process the FOIA requests as "FOIA Control No. FI-461783."  *Id.*, Ex. 6.

Mr. Russell conducted a search of the Enforcement Support Division's chronological file, called the "Chron File." The Division maintains a Chron File relating to its review of fair housing investigations performed by FHEO staff in its field offices.  *Id.*, Ex. 12, Decl. of Russell ¶ 2.  The Enforcement Support Division regularly reviews such investigations, but it does not review all investigations. *Id.*  Mr. Russell also searched the FHEO's Title Eight Automated Paperless Office Tracking System ("TEAPOTS"), a detailed system for tracking fair housing complaints, including the date received, the parties' names, and the status of complaints.  *Id.* ¶ 3.  Although he searched for the documents requested by Mr. West — "[a]ll communications originated by or dispatches to this HUD Enforcement Support Division" relating to Mr. West, the "Mraz investigation," and the "Montgomery investigation" —  Mr. Russell did not locate any documents.  *Id.* ¶ 7.  On April 24,

_____

[3] HUD contends that Mr. West's February 12, 2007 letter was not a proper appeal because it was not until HUD received that letter that it became aware of Mr. West's original January 24, 2007 requests.  The Court treats it as an appeal and reaches the merits of the case.  Even if the Court determined that Mr. West had failed to exhaust his administrative remedies, the Court could review the merits of Mr. West's claim because the FOIA exhaustion requirement is a prudential consideration, *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); it is not jurisdictional.  *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).

2007, HUD notified Mr. West that its search had failed to locate any records. *Id*., Ex. 7.

The day before HUD sent its response to Mr. West, on April 23, 2007, Mr. West filed this suit. The Complaint contains three counts. Counts 1 and 2 of the Complaint allege claims under FOIA, and Count 3 complains about HUD's response to Mr. West's discrimination charge, relying on the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.; the Mandamus Act, 28 U.S.C. § 1291; 28 C.F.R. Part 35; and the Fourteenth Amendment. In preparing to defend on this Complaint, counsel for HUD determined that if HUD had any documents relating to Mr. West's FOIA request, such documents would be archived in HUD's FHEO Kansas City, Kansas Regional Office. Def.'s Mot., Ex. 14., Decl. of Opfer ¶ 4. HUD counsel, Chris Opfer, prompted a search of such records by Jocelyn Gibson, Equal Opportunity Specialist at the Kansas Regional Office. *Id*. ¶ 5; Def.'s Mot., Ex. 13, Decl. of Gibson ¶ 5. Ms. Gibson searched for "any and all information regarding a fair housing complaint filed by or otherwise involving Mr. Michael West," but no such records were located. *Id*., Ex. 13, Decl. of Gibson ¶ 6. Ms. Gibson also contacted the National Records Center and requested all records relating to Mr. West. *Id*. ¶ 7. Responsive records were located there, and on August 17, 2007, Mr. Opfer sent them to Mr. West. *Id*., Ex. 14., Decl. of Opfer ¶ 8.

HUD moves to dismiss or for summary judgment [Dkt. #15], Mr. West responded [Dkt. ##18, 29, 32], and HUD replied [Dkt. #22]. Accordingly, the motion is ripe and ready for decision.

## II.  STANDARD OF REVIEW

If, in considering a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and

disposed of as provided in Rule 56[.]" *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). Where matters outside the pleadings are presented in a motion to dismiss, as in this case, the court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b)(6).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

### III. ANALYSIS

#### A. Counts 1 and 2 – FOIA

To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004). A suit is only authorized under the FOIA against federal agencies and injunctive relief available to remedy an agency's improper withholding of information. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136,

150 (1980); *see also* 5 U.S.C. § 552(a)(4)(B) & (f)(1).

Summary judgment must be granted in favor of HUD on Counts 1 and 2 because Mr. West has not shown that HUD improperly withheld agency records. HUD submitted affidavits indicating that it in good faith conducted a reasonable and adequate search. The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents." *Id.* There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Blanton v. Dep't of Justice,* 182 F. Supp. 2d 81, 84 (D.D.C. 2002).

Mr. Russell searched the Chron File at HUD's Enforcement Support Division and FHEO's TEAPOTS tracking system but did not find any responsive documents. Mr. West's requests were sent to HUD headquarters, and HUD was not obligated to guess which field offices or records centers might have responsive documents. *See Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) (when FOIA request was made to headquarters, agency is not required to search field offices). Even so, in an effort to accommodate Mr. West, counsel for HUD instigated a search at FHEO Kansas City, Kansas Regional office. No documents were located there either. Finally, HUD counsel contacted the National Records Center, which located documents. These documents were turned over to Mr. West. The Court has no basis to discredit HUD's sworn affidavits. Since HUD

did not withhold any documents, Mr. West does not have a viable FOIA claim against the agency.[4]

Mr. West's second January 24, 2007 FOIA request sought "policies" regarding HUD Section 8 housing. An agency is not required to provide copies of federal regulations or perform legal research for the requester. *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003). Accordingly, HUD cannot be liable for failing to turn over such policies.[5]

### B.  Count 3 – Claims Regarding NECAC's Alleged Discrimination

The Court lacks subject matter jurisdiction over Count III, asserting allegations under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.; the Mandamus Act, 28 U.S.C. § 1291; 28 C.F.R. Part 35; and the Fourteenth Amendment.

The APA does not provide an independent basis for subject matter jurisdiction. *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999) (APA is not an independent grant of jurisdiction). The APA provides that a final agency action is subject to judicial review *unless* there is no other adequate remedy. 5 U.S.C. § 704. Mr. West has the right to bring an action against NECAC for the alleged discrimination. *See* 29 U.S.C. § 794(a) (Rehabilitation Act); 42 U.S.C. § 3613 (unfair housing practices). This right of action is adequate to redress discrimination and, therefore, precludes a remedy under the APA. *Wash. Legal Found. v. Alexander*, 984 F.2d 483,

---

[4] In response to HUD's motion, Mr. West asserts that HUD failed to turnover the "Boedekker, Henderson, Kosuth, Straussner, Russell, and Wartts materials." Pl.'s Resp. at 5, 8, & 10 [Dkt. #18]. It is not clear to what Mr. West refers. Mr. West did not submit a FOIA request for materials so designated.

[5] Moreover, because HUD released all records requested by Mr. West, Counts 1 and 2 of the Complaint are moot. Once the requested records have been produced there is no longer a case or controversy and the FOIA action becomes moot. *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996); *Trueblood v. Dep't of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996); *see also Associated Gen'l Contractors of Am. v. City of Columbus*, 172 F.3d 411, 419 (6th Cir. 1999) (no justiciable controversy is presented when parties seek an advisory opinion or when the question sought to be adjudicated has been mooted by subsequent developments).

487 (D.C. Cir. 1993).

Like the APA, the Mandamus Act also does not provide an independent basis for subject matter jurisdiction. *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (mandamus statute does not waive sovereign immunity). Moreover, mandamus relief is not a proper remedy for Mr. West's claims. Title 28, Section 1361 provides that "[t]he district court shall have jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A writ of mandamus is an extraordinary remedy to be utilized only under exceptional circumstances. *Chaplaincy of Full Gospel Churches v. Johnson*, 276 F. Supp. 2d 82, 83 (D.D.C. 2003) (citing *Haneke v. Sec'y of Health, Educ. & Welfare*, 535 F.2d 1291, 1296 (D.C. Cir. 1976)). In order to obtain mandamus relief, a plaintiff must show that (1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Swan*, 100 F.3d at 977 n.1; *Atl. Tele-Network, Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 131 (D.D.C. 2003).

In the absence of a clear and certain duty to act by the public official, there can be no mandamus relief. *N. State Power Co. v. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997). Determining if a defendant has a "clear duty to act" depends on the nature of the duty at issue, whether it is ministerial or discretionary. Mandamus is only available where "the duty to be performed is ministerial and the obligation to act peremptory and clearly defined." *13th Reg'l Corp. v. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). A ministerial duty is one that is nondiscretionary. *Swan*, 100 F.3d at 977. The courts do not have authority under the mandamus statute to order *any* government official to perform a discretionary duty. *Id.* An agency's enforcement decision is a matter of discretion. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

Because HUD, in its discretion, determined that there was no reasonable cause to believe that NECAC discriminated against Mr. West, Mr. West is not entitled to mandamus relief.

Mr. West erroneously alleges that 28 C.F.R. Part 35 creates a nondiscretionary duty for HUD to investigate all allegations of discrimination, and that HUD failed to comply with the regulation. Part 35 implements subtitle A of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. *See* 28 C.F.R. § 35.101. It does not create any duties with respect to HUD's investigation of fair housing complaints. Further, the ADA does not apply to the federal government, it only applies to state and local governments. 42 U.S.C. § 12131(1).[6]

Mr. West also erroneously asserted a due process claim under the Fourteenth Amendment. The federal government is subject to the restrictions of the Fifth Amendment, not the Fourteenth. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). Mr. West concedes this point in his response. Pl.'s Resp. at 11 & 14 [Dkt. #18].

In response to the motion to dismiss or for summary judgment, Mr. West asserts for the first time three entirely new claims — (1) a claim under *Bivens v. Six Unknown Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971); (2) a due process claim under the Fifth Amendment; and (3) a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. Given that Mr. West is proceeding pro se in this matter, the Court will construe Mr. West's allegations as a motion to amend to add these claims, governed by Federal Rule of Civil Procedure 15(a). Rule 15(a) provides:

> A party may amend the party's pleading once as a matter of course at
> any time before a responsive pleading is served . . . . Otherwise, a
> party may amend the party's pleading only by leave of court or by

---

[6] Mr. West concedes that the ADA does not apply. Pl.'s Resp. at 14 [Dkt. #18].

written consent of the adverse party; and leave shall be freely given
when justice so requires.

A court may deny a motion to amend if it finds "undue delay, bad faith or dilatory motive on part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue

prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, denial of

leave to amend based on futility is warranted if the proposed claim would not survive a motion to

dismiss. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Robinson v. Detroit*

*News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). Mr. West's proposed additional claims would

not survive a motion to dismiss, and the Court will deny his request to amend as futile.

Mr. West's *Bivens* claim is unavailing. A *Bivens* action may only be brought against

individual federal employees in their individual capacities, not against agencies. *Drake v. FAA*, 291

F.3d 59, 72 (D.C. Cir. 2002). No *Bivens* claim can be asserted here, as Mr. West sues Alphonso

Jackson, Secretary of HUD, in his official capacity.

Mr. West fails to state a claim under the Fifth Amendment. The Fifth Amendment

protects against the deprivation of property without due process. There is no affirmative right to

government aid. *Deshaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196 (1989);

*see also LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995) (there

is no property interest in housing assistance where the housing authority has the discretion to

determine threshold requirements). Thus, Mr. West cannot state a claim for a due process violation.[7]

---

[7] Also, HUD did provide Mr. West an opportunity to be heard. HUD indicated that Mr. West
had a right to contact FHEO if he felt that he had been discriminated against, and Mr. West did so.
HUD investigated the complaint and found it to be without basis. While Mr. West complains that
NECAC did not give him notice and opportunity to be heard at the hearing regarding the termination
of housing assistance to Ms. Stephens, there is no basis to find that Mr. West had any right to know
about, or participate in, a hearing relating to someone else's housing.

Mr. West's claim under the Rehabilitation Act is also futile. The Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination under any program or activity . . . conducted by any Executive Agency . . . ." 29 U.S.C. § 794(a). To establish a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that he is a qualified person with a disability, that he is otherwise qualified to participate in the government program or activity at issue, and that he was excluded due to his disability. *Am. Council of the Blind v. Snow*, 311 F. Supp. 2d 86, 88 (D.D.C. 2004). Critically, Mr. West cannot show that he was "otherwise qualified" to participate in the Section 8 program, as his application was denied due to his fraud. Moreover, it was NECAC who denied Mr. West's application, not HUD.

Because it would be futile to permit Mr. West to amend his Complaint to state these three additional claims, Mr. West's request to amend the Complaint will be denied.

### IV.  CONCLUSION

Defendant's motion to dismiss or for summary judgment [Dkt. #15] will be granted. As a result, Mr. West's motion to compel subpoena [Dkt. #31] will be denied as moot. Further, Mr. West's request to amend his Complaint to add additional claims will be denied, and the Complaint will be dismissed. A memorializing order accompanies this Memorandum Opinion.

DATE: March 10, 2008                    _____/s/_____
                                        ROSEMARY M. COLLYER
                                        United States District Judge